SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------X
AZHAR JAFFRI,

       Plaintiff,

     against

SHELLEY SOUZA, individually
and as Co-Administrator of the
Estate of Francis Newton Souza,
JEFFREY S. GREENER, individually and
as Co-Administrator of the Estate of
Francis Newton Souza, FRANCESCA SOUZA,
individually, and the ESTATE OF
FRANCIS NEWTON SOUZA,

       Defendants.
------------------------------------X

INDEX NO. 07 600 955
**Complaint and
Jury Demand**

NEW YORK
COUNTY CLERK'S OFFICE

MAR 23 2007

NOT COMPARED
WITH COPY FILE

       Plaintiff Azhar Jaffri ("Jaffri" or "Plaintiff") by his
attorneys Beldock Levine & Hoffman LLP, for his complaint,
alleges against the defendants Shelley Souza, Jeffrey S. Greener
("Jeffrey Greener"), Francesca Souza, and the Estate of Francis
Newton Souza ("the Estate") (together, "Defendants"), as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff brings this action as a collector and owner of art
    created by the late modern Indian artist Francis Newton
    Souza ("Souza") in the late 1980s and early 1990s.
    Plaintiff consigned eight of these works for sale at
    Sotheby's, Christie's and Bonhams in March and April 2006.
    Without legal justification, Shelley Souza, as co-
    administrator of the Estate of Souza, wrote to and spoke
    with the auction houses, falsely informed them that the

1

works consigned by Plaintiff were not by Souza although they are, and demanded that the works be withdrawn from the auctions, which they were.  Later, two additional works consigned by Plaintiff to Christie's South Kensington were also withdrawn.  By these and other like acts, rendering it impossible for Plaintiff to readily market his artworks by Souza, Defendants for unlawful ends have attempted to destroy the value of Plaintiff's Souza collection, as well as his reputation in the international art community.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction over this matter as a court of general jurisdiction in the county in which the acts giving rise this action occurred.

3.  Venue is proper in this action because New York County is the county of residence for at least one of the defendants pursuant to CPLR Sec. 503(a) and (b), and acts which give rise to this complaint occurred in this county.

### FACTUAL INFORMATION

**A.    PARTIES**

4.  Plaintiff Azhar Jaffri is a citizen of Singapore.

5.  Jaffri is a collector of modern Asian art, including paintings and other works by Souza, an Indian artist who worked from the mid-twentieth century through his death in 2002.

2

6.  Defendant Estate is the estate of Souza who died intestate as a domiciliary of New York County on March 28, 2002. Letters of administration for the Estate were issued by the Surrogate's Court of the State of New York, New York County, on May 27, 2004 to Shelley Souza and Jeffrey Greener. At the time the letters of administration were requested for the Estate, the value of the personal property in the Estate was estimated in court papers to be $400,000.

7.  Defendant Shelley Souza is a daughter of Souza. She is Co-Administrator of the Estate and a distributee of the Estate. On information and belief, she is a citizen of the United Kingdom and a resident alien of the United States. On information and belief, she resides at 15A West 73rd Street, New York, New York 10023.

8.  Defendant Jeffrey Greener is Co-Administrator of the Estate. He is an attorney admitted to practice in the State of New York and the State of Connecticut. On information and belief, he resides in Great Neck, New York.

9.  Defendant Francesca Souza is also a daughter of Souza and a distributee of the Estate. On information and belief, she is a citizen and domiciliary of England, United Kingdom.

10. On information and belief, Shelley Souza, Jeffrey Greener and Francesca Souza do not have any formal training or expertise in the field of art.

3

B.    **THE ARTIST FRANCIS NEWTON SOUZA**

11.    During his life and since his death, Souza has become one of
the most venerated Indian artists of the 20th century.    His
career had a seminal influence on modern Indian artists.

12.    Souza was born in Goa in 1924.

13.    In or about 1947, he was a founding member of the Bombay
Progressives Artist Group which greatly shaped modern Indian
art.

14.    Souza first gained recognition in the 1950s and 1960s in
London.    In the late 1960s, Souza moved to New York City and
continued his artistic career.

15.    In 1975, and again in the late 1980s and early 1990s, Souza
traveled several times to India and Pakistan, where he
continued to paint.

16.    During the 1990s, galleries in India and Pakistan hosted
exhibits of Souza's works.

17.    For example, in Pakistan, as early as 1975, exhibitions of
Souza's works were held at the Indus Gallery in Karachi,
Pakistan.

18.    Souza died in 2002 in Mumbai, India.

19.    Since his death, exhibitions of Souza's work have been held,
around the world, including a show at the Tate Britain in
London.

20.    Several leading auction houses, including Sotheby's,

4

Christie's and Bonhams, have auctioned Souza's work in recent years.

**C.    PLAINTIFF'S PURCHASES OF SOUZA ARTWORKS**

21.  Jaffri is the owner of a collection of works created by Souza between 1987 and 1994.

22.  These works by Souza are a significant part of Jaffri's collection of modern Asian artworks.

23.  Jaffri became acquainted with Souza's work when Jaffri lived in Pakistan in the late 1980s and early 1990s. While in Pakistan, he was introduced to Souza.

24.  Jaffri had several personal meetings with Souza in the late 1980s and early 1990s in Karachi, Pakistan.

25.  Jaffri visited art galleries in Pakistan, including the Indus Gallery, which was Souza's exclusive gallery representative in Pakistan.

26.  During this time, Jaffri purchased many pieces by Souza for his art collection. He purchased some art directly from Souza. He purchased other Souza pieces from the Indus Gallery and from friends and colleagues of Souza.

27.  Jaffri received as a gift from Souza two "chemical" drawings on magazine paper and one sketch on paper.

28.  The works of art by Souza acquired by Jaffri in Pakistan in the late 1980s and 1990s are authentic Souza works of art painted or created by Francis Newton Souza.

29. On information and belief, neither Shelley Souza nor Francesca Souza visited Souza in Pakistan in the late 1980s or the early 1990s. Unlike Jaffri, they have no personal knowledge of Souza's painting or working in Pakistan during this period.

30. In 2005, Jaffri consigned four of his Souza artworks to Christie's in Hong Kong. At the May 29, 2005 Christie's auction, they sold for approximately US$215,000.

## D.    PLAINTIFF'S ANTICIPATED SALE OF SOUZA PAINTINGS IN 2006

### a.    Sotheby's

31. On November 23, 2005, Jaffri consigned three of his Souza paintings for auction at Sotheby's March 29, 2006 Indian and Southeast Asian art sale in New York.

32. Sotheby's catalogue for its March 29, 2006 show listed Jaffri's Souzas, specifically:

   a.    Untitled oil on canvas signed and dated Souza '92 (Red Building), lot 104, estimate US$35,000-45,000;

   b.    Untitled acrylic on paperboard signed and dated Souza '94, lot 106, estimate US$25,000-35,000;

   c.    Time Will Tell, acrylic on canvas, signed and dated Souza '94, lot 111, estimate US$100,000-120,000.

### b.    Christie's

33. In 2006, Jaffri consigned three of his Souza paintings to Christie's in New York for inclusion in its March 30, 2006

6

auction of modern and contemporary Indian art.

34.  Christie's catalogue for its show listed Jaffri's Souzas, specifically:

   a.   Untitled (Red Houses in Landscape), acrylic on paper, signed and dated Souza 94, lot 115, estimate US$30,000-40,000;

   b.   Untitled, acrylic on canvas, signed and dated Souza 92, lot 116, estimate US$100,000-150,000;

   c.   Untitled (still life), acrylic on canvas, signed and dated Souza/94, lot 147, estimate US$80,000-100,000.

c.  **Bonhams**

35.  Jaffri consigned two Souza paintings to Bonhams in London for inclusion in its Islamic and Indian Art Part II, London Sale, on April 6, 2006.

36.  Bonhams's catalogue included Jaffri's Souzas, specifically:

   a.   Portrait of a man, oil on canvas, signed and dated Souza '94, lot 289, estimate UK£30,000-60,000 (approximately US$59,000-118,000 at February 2007 exchange rates);

   b.   Landscape with church, oil on canvas, signed and dated Souza 94, lot 294, estimate UK£40,000-60,000 (approximately US$78,700-118,000 at February 2007 exchange rates).

37.  The works consigned by Jaffri to Sotheby's, Christie's and

Bonhams respectively were accepted by each auction house as authentic works by Souza.

38. Jaffri's consignment of works to Sotheby's, Christie's and Bonhams respectively created contracts between Jaffri and each auction house.

E.  **DEFENDANTS' WRONGFUL INTERFERENCE WITH THE AUCTION SALES**

a.  **Jaffri's Communications With Defendants**

39. On or about March 24, 2006, shortly before the March/April auctions, Jaffri learned that Shelley Souza had contacted Sotheby's and raised questions about the authenticity of his paintings.

40. On or about March 25, 2006, Jaffri contacted Shelley Souza who told him to withdraw one of the paintings consigned to Sotheby's because she did not believe it was an authentic work by Souza.

41. Jaffri informed Shelley Souza about his dealings with Souza in Pakistan, providing assurances to Shelley Souza that the work in question and Jaffri's other works at Sotheby's were painted by her father.

42. Jaffri requested a meeting with Shelley Souza, which she mutually agreed to but subsequently cancelled.

43. She then told Jaffri that she intended to contact Sotheby's and Christie's to tell them that she believed that the paintings consigned by Jaffri were not authentic and to

8

demand that the auction houses withdraw Jaffri's Souzas from the scheduled sales.

44.  On information and belief, Defendants did not conduct due diligence regarding the information provided by Jaffri to Shelley Souza.

45.  On information and belief, Defendants, inter alia, did not attempt to verify Jaffri's account of his interactions with Souza in Pakistan or his purchases from Souza, from Souza's colleagues and friends, and from Indus Gallery; did not have an independent art expert evaluate the authenticity of the paintings; and did not ask or attempt to have the paintings scientifically examined.

46.  Upon information and belief, Defendants without sufficient participation gave insufficient regard and credit to attribution of the Indian art experts at Sotheby's, Christie's and Bonhams who had accepted Jaffri's Souzas for auction.

b.  **Communications By Defendants With Sotheby's**

47.  On March 24, 2006, Robin Dean, the Director of Sotheby's New York Indian and Southeast Asian Department, sent Jaffri an email, stating, inter alia:

> I am sorry to have to inform you that we have received a signed document from the Souza Estate that questions the authenticity of all three of the lots you have consigned to our March 29th sale. The document states that they do not believe these works to be by

9

Francis Newton Souza. Since the Estate will
be bringing out the Catalogue Raisonne on
Souza's works later this year they stress
that if these were later shown to the estate
for the Catalogue that they would not be
authenticated or included in the catalogue –
if we offer these works for auction then we
would be legally obliged to notify all
potential buyers at the time of the auction
that the estate will not authenticate the
work.

48. On or about March 27th or 28th, 2006, Jaffri met with
representatives of Sotheby's in New York. They informed him
that, in sum and substance, Shelley Souza had told Sotheby's
that the artworks consigned by Jaffri were not by Souza,
that Sotheby's "should take them off the walls", and that
she would cause problems if the auction house did not agree
to withdraw the paintings from the sale. Jaffri provided
Sotheby's with information to confirm the authenticity of
the paintings.

49. Sotheby's told Jaffri that it could not include the
paintings in the sale because of Shelley Souza's threats,
and that it would withdraw the paintings from the sale.

50. By letter dated March 29, 2006, Michael Dupin, Senior Claims
Administrator at Sotheby's, wrote to Jaffri, stating, inter
alia,

I am writing in regard to the above
referenced property (the "Property") at the
request of Robin Dean, the Director of
Sotheby's Indian and Southeast Asian Art
Department. Pursuant to your earlier
conversations with Mr. Dean, as well as our

10

telephone conversation this morning, this
will confirm that Sotheby's,
Inc.("Sotheby's") has received the attached
letters from Ms. Shelley Souza.

As you will see, Ms. Souza represents
herself as an Administrator acting on behalf
of the Estate of Francis Newton Souza (the
"Estate"). Ms. Souza goes on to question the
attribution of the Property, affirm that the
Estate will not authenticate the Property,
and request that the Property be withdrawn
from our auction.

As we discussed, the Estate's opinion
contradicts the Property's attribution to
Francis Newton Souza as published in our
auction catalogue. While we appreciate that
supplemental materials you have shared with
us regarding your relationship with Mr.
Souza, Sotheby's cannot offer the Property
for sale under our Terms of Guarantee in the
present circumstances, and has withdrawn the
Property from auction.

We encourage you to contact Ms. Souza
and the Estate to discuss this matter.
* * *

51.  Robin Dean's letter enclosed three letters written on Estate

letterhead signed by Shelley Souza and addressed to Robin

Dean and Anu Ghosh-Mazumadar of Sotheby's, each dated March

28, 2006.  Those letters stated, inter alia:

Letter Regarding Lot #104

I am writing to confirm that, in the opinion
of the Estate of Souza, lot #104 in the
forthcoming March 29, 2006 sale at Sotheby's
in New York, which is attributed to Souza,
was not made by him.
* * *
We believe the consignor of lots 104, 106 and
111 to be the same person who "authenticated"
the replica painting that Unicorn Gallery
approached the estate to authenticate.
* * *
At this time, we must request that lot #104

11

be withdrawn from auction. If you choose to
auction the work, potential buyers must be
notified before its purchase that the estate
will not authenticate this work, for the
reasons stated in this letter.

## Letter Regarding Lot #111

Further to our meeting yesterday, I am writing to
confirm that, in the opinion of the Estate of
Souza, lot #111 in the forthcoming March 29, 2006
sale at Sotheby's in New York, which is attributed
to Souza, was not made by him.
As we discussed in front of the painting, the
line, brushwork, composition and signature
are not consistent with his work; while these
elements varied over the 60 years he produced
art, always remained recognizably and
distinctly "Souza." This fact was
highlighted by the surrounding paintings in
the gallery, made by my father, spanning some
40 years: all of them demonstrated the
consistency of image making I'm referring to.
There is also the troubling "titling" of the
painting. The consignor claims that my
father named the painting as he was handing
it over. But this is also not consistent
with my father's personality. Souza was
careful in titling his painting and the
absence of a title is as significant as a
work that has been titled. In the case of
this painting, even if Souza had suddenly
been inspired to name that painting as he was
delivering it to the consignor, his impulsive
nature would have compelled him to
immediately pick up a brush or other writing
instrument and inscribe the title on the back
of the work.
At this time, we must request that lot #111
be withdrawn from auction. If you choose to
auction the work, potential buyers must be
notified before its purchase that the estate
will not authenticate this work.

## Letter Regarding Lot #106

I am writing to confirm that, in the opinion
of the Estate of Souza, lot #106 in the

forthcoming March 29, 2006 sale at Sotheby's
in New York, which is attributed to Souza,
was not made by him.
Given that the painting has been consigned by
the same person who has a number of disputed
works in the forthcoming auctions at
Sotheby's Christie's and Bonham's at this
time, we must request that lot #106 be
withdrawn from the auction. If you choose to
auction the work, potential buyers must be
notified before its purchase that the estate
will not authenticate this work, for the
reasons stated in this letter.

52.  On information and belief, Defendants orally made these same

or similar defamatory statements to employees and/or agents

of Sotheby's.

c.  **Communications By Defendants With Christie's**

53.  On or about Friday, March 24, 2006, Shelley Souza sent an

email regarding lot #116 to Yamini Mehta at Christie's,

Jeffrey Greener and Francesca Souza, stating, inter alia:

Further to our meeting today, I am writing to
confirm that, in the opinion of the Estate of
Souza, lot #116 in the forthcoming March 30,
2006 sale at Christites [sic] in New York,
which is attributed to Souza, was not made by
him.
As we discussed in front of the painting, the
line, brushwork, composition, use of colour,
and signature are not consistent with his
work; while these elements varied over the 60
years he produced art, always remained
recognizably and distinctly "Souza." This
fact was highlighted by the surrounding
paintings in the gallery, made by my father,
spanning some 40 years: all of them
demonstrated the consistency of image making
I'm referring to.
At this time, we must request that lot #116
be withdrawn from the auction. If you choose
to auction the work, potential buyers must be

>        notified before its purchase that the estate
>        will not authenticate this work.
>        I will bring a letter to Christies [sic]
>        tomorrow afternoon, which contains the above
>        information; so that Christies [sic] will
>        have a copy of this text, with my handwritten
>        signature on behalf of the Estate, on record.
>        A copy of this email has been sent to
>        Francesca Souza and to Jeffrey S. Greener,
>        the Estate's attorney.

54. On or about March 25, 2006, Yamini Mehta of Christie's

    forwarded the email to Jaffri.

55. Shelley Souza, on Estate letterhead, wrote three letters to

    Yamini Mehta of Christie's.  Two letters were undated while

    the third was dated March 25, 2006.  They stated, <u>inter</u>

    <u>alia</u>:

<u>Letter Regarding Lot #116</u>

>        Further to our meeting today, I am writing to
>        confirm that, in the opinion of the Estate of
>        Souza, lot #116 in the forthcoming March 30,
>        2006 sale at Christites [sic] in New York,
>        which is attributed to Souza, was not made by
>        him.
>        As we discussed in front of the painting, the
>        line, brushwork, composition, use of colour,
>        and signature are not consistent with his
>        work; while these elements varied over the 60
>        years he produced art, always remained
>        recognizably and distinctly "Souza."  This
>        fact was highlighted by the surrounding
>        paintings in the gallery, made by my father,
>        spanning some 40 years: all of them
>        demonstrated the consistency of image making
>        I'm referring to.
>        At this time, we must request that lot #116
>        be withdrawn from the auction.  If you choose
>        to auction the work, potential buyers must be
>        notified before its purchase that the estate
>        will not authenticate this work.

Letter Regarding Lot #115

I am writing to confirm that, in the opinion
of the Estate of Souza, lot #115, in the
forthcoming Christie's Sale on March 30,
2006, which is attributed to Souza, was not
made by him.
* * *

We believe the consignor of lots 104, 106 and
111 to be the same person who "authenticated"
the replica painting that Unicorn Gallery
approached the estate to authenticate.[1]
* * *

At this time, we must request that lot #115
be withdrawn from auction.  If you choose to
auction the work, potential buyers must be
notified before its purchase that the estate
will not authenticate this work, for the
reasons stated in this letter.

Letter Regarding Lot #147

I am writing to confirm that in the opinion
of the Estate of Souza, lot #147, in the
forthcoming Christie's Sale on March 30,
2006, which is attributed to Souza, was not
made by him.

While the use of colour appears to be more
substantial than that used in lot 116, upon
close inspection, the line and signature are
not consistent with Souza's work; which,
while these elements varied over the 60 years
he produced are, always remained recognizably
and distinctly "Souza."  This fact was
highlighted by other paintings at Christie's
made by my father, spanning some 40 years:
all of them demonstrated the consistency of
masterful image making I'm referring to.

At this time, we must request that lot #147
be withdrawn from auction.  If you choose to
auction the work, potential buyers must be
notified before its purchase that the estate

---

[1] The reference to lots 104, 106 and 111 appears to be a
reference to the Sotheby's lot numbers, rather than the
Christie's lot numbers underscoring the formulaic nature of the
Estate's correspondence.

will not authenticate this work, for the
reasons stated in this letter.

56. Shelley Souza also sent an undated letter to Yamini Mehta at
Christie's about lot #115 at Christie's and lot #104 at
Sotheby's, suggesting that these works were not made by
Souza.

57. On information and belief, Defendants orally made these same
or similar defamatory statements to employees of and/or
individuals associated with Christie's.

58. On or about March 27th or 28th, 2006, Jaffri visited
Christie's in New York. Representatives of Christie's told
him that, in sum and substance, Shelley Souza had told
Christie's that the artworks consigned by Jaffri to
Christie's were not made by Souza, that Christie's "should
take them off the walls", and that she would cause problems
if Christie's did not agree to withdraw the paintings from
the auction. Christie's told Jaffri that they had also
received written communications from the Estate and Shelley
Souza.

59. Christie's told Jaffri they would have to withdraw the
paintings from the auction because of Shelley Souza's
threats. As a direct result of the Defendants'
communications, Jaffri's Souza works were withdrawn from the
Christie's auction.