d. **Bonhams**

60. By email on or about March 28, 2006, Shelley Souza wrote to

Bonhams in London, stating, inter alia:

> I am writing to inform you that, in the
> opinion of the Estate of Souza, lots 289 and
> 294, in the forthcoming April 6, 2006, sale
> at Bonham's, in London, which are attributed
> to Souza, were not made by him.
> Francesca Souza reviewed the paintings in the
> frame shop in March 25. In her opinion, the
> line, brushwork, composition and signature
> are not consistent with Souza's work; which,
> while these elements Pls s varied over the 60
> years he produced art, always remained
> recognizably and distinctly "Souza." The
> consistency of image-making to which I'm
> referring is clearly demonstrated in other
> Souza works that appear in Bonham's catalogue
> for this auction.
> At this time, we must request that lots 289
> and 294 be withdrawn from the auction. If
> you choose to auction these works, potential
> buyers must be notified before the sale that
> the estate will not authenticate these works.
> I will fax and mail a copy of this request so
> that Bonham's will have my handwritten
> signature, on behalf of the estate, for your
> records.
> This message is copied to Mehreen Rizvi,
> Francesca Souza and Jeffrey S. Greener, Esq.,
> the estate's attorney.

61. On April 7, 2006, Bonhams sent Jaffri a copy of this email.

62. On information and belief, Defendant(s) also orally made

these same or similar defamatory statements to agents or

employees of Bonhams.

e. **Withdrawal Of Jaffri's Souzas From The March/April Auctions**

63. As a direct result of Defendants' communications to

Sotheby's, Christie's and Bonhams, Jaffri's Souzas were

17

withdrawn from their auctions.

64. On information and belief, several works by Souza consigned by other owners were sold during the auctions, and some sold for above their estimated sales prices.

65. On information and belief, Defendants' written and oral statements to Sotheby's, Christie's and Bonhams about the alleged lack of authenticity of Jaffri's Souzas works were false, and were made by Defendants with either knowledge of their falsity, or reckless disregard or gross irresponsibility for the truth or falsity of the statements.

f. **Jaffri's Additional Communications With Defendants**

66. On or about April 10, 2006 and on subsequent dates, Jaffri demanded that the Defendants withdraw their statements to Sotheby's, Christie's and Bonhams, but they have refused to do so.

67. During a meeting with Defendants, they offered to review Jaffri's Souzas for no fee if Jaffri waived all liability against the Estate. Jaffri did not accept the Estate's offer.

g. **Christie's South Kensington**

68. Jaffri had consigned two Souzas for auction in the October 14, 2005 Indian and Islamic Works of Art sale at Christie's in South Kensington, London. The consignment created a contractual relationship between Jaffri and Christie's.

18

69. The works were offered by Christie's as authentic works by Souza, but they did not sell at the October 2005 auction.

70. By letter dated July 11, 2006, Christie's South Kensington agreed to include Jaffri's two Souza in its October 12, 2006 auction. Jaffri's re-consignment of the two Souza works to Christie's for the October 2006 auction created a contractual relationship between Jaffri and Christie's.

71. By letter dated October 13, 2006, Alice Bailey, an Indian and Islamic Junior Specialist at Christie's South Kensington in London, wrote to Jaffri that Christie's would be unable to include these two works in the auction because: "In light of concerns raised by the Souza Estate in respect of the works consigned by you to Christie's New York . . . concerns have been expressed about the authenticity of the works consigned to South Kensington."

72. On information and belief, Defendants' communications with Christie's about Jaffri's Souzas caused Christie's to withdraw Jaffri's two Souzas from the October 2006 sale.

73. On information and belief, Defendants' written and oral statements to Christie's about the alleged lack of authenticity of Jaffri's consigned Souza works were false, and were made by Defendants with either knowledge of their falsity, or reckless disregard or gross irresponsibility for their truth or falsity.

19

F.    DEFENDANTS' OWN INTERESTS

74.    A purpose of Defendants' acts was to advance unlawfully
       their own interests.

75.    Upon information and belief, if Jaffri's collection was
       discredited, the value of Defendants' collection of Souzas
       would be increased.

76.    On information and belief, by destroying the economic value
       of Jaffri's collection, the Estate could control access to
       the art market by requiring owners of art by Souza to pay
       for Defendants' authentication, providing Defendants with
       the ability to control the market for Souza's works.

G.    PLAINTIFF'S DAMAGES

77.    Defendants' acts have caused Jaffri substantial economic
       loss, as well as emotional, physical and pecuniary harm in
       an amount to be determined at trial.

78.    Defendants' acts have caused Jaffri to suffer damages to his
       name and reputation, professional embarrassment,
       disappointment, anxiety and concern over the potential loss
       of his investments in Souza works and his entire collection
       of modern Asian art.

79.    Defendants' acts have interfered with Jaffri's ability to
       market his Souzas, and damaged his reputation in the eyes of
       the major art auction houses of the world. The provenance of
       Jaffri's Souzas is clouded such that he cannot readily sell

20

them in the international art market.

80.  On information and belief, because of Defendants' expressed
interest in the works of Souza, and contact with the
international art market with regard to the sales of works
by Souza, Defendants were in a position to know that their
statements were false, reckless or grossly irresponsible,
and to know the damage that such statements would cause to
Jaffri and his art collection, including his collection of
Souza works.  Defendants were also in a position to know
about the likely resulting enhancement of the value of their
collection and their position as "authenticators" of the
works of Souza as a result of their actions.

81.  Defendants knew or should have known that their statements
and actions would likely have these negative effects on
Jaffri and his collection.

82.  The special damages suffered by Jaffri by way of the
inability to sell the eight paintings at Sotheby's,
Christie's and Bonhams in March/April 2006 is an amount not
less than $726,000.

83.  The special damages suffered by Jaffri by way of the
inability to sell the two works by Souza at Christie's in
October 2006 is an amount not less than $20,000.

## COUNT I
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

84.  Plaintiff Jaffri repeats and alleges every paragraph above as if fully set forth herein.

85.  Defendants' statements and actions as described above constitute tortious interference with Jaffri's existing contractual relationships with Sotheby's, Christie's and Bonhams.

86.  Defendants knew of Jaffri's contractual relationship with Sotheby's, Christie's and Bonhams.

87.  Defendants intentionally and without justification induced Sotheby's and Christie's to breach their contracts with Jaffri.

88.  Defendants intentionally and without justification rendered performance of the contracts between Jaffri and Sotheby's, Christie's and Bonhams impossible because the auction houses would not sell works of questioned provenance.

89.  Defendants intentionally and without justification interfered with and prevented the fulfillment of Jaffri's contracts with Sotheby's, Christie's and Bonhams.

90.  Defendants lacked any privilege, or legal or economic justification, that would have permitted their interference with Jaffri's contracts with Sotheby's, Christie's and Bonhams.

91. Defendants' acts were made with malice, and defendants used wrongful means.

92. Defendants' acts were a substantial factor in causing Jaffri harm.

93. Jaffri suffered injury and damages, <u>inter alia</u>, pecuniary, economic and financial harm, as a result of Defendants' conduct.

## COUNT II
### TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIPS

94. Plaintiff Jaffri repeats and alleges every paragraph above as if fully set forth herein.

95. Defendants' statements and actions as described above constitute tortious interference with Jaffri's prospective contractual relationships with potential sellers and buyers of works by Souza owned by Jaffri.

96. Defendants knew of Jaffri's prospective contractual relationship with potential sellers and buyers of works by Souza owned by Jaffri because of Defendants' familiarity with the art auction house process and their communications with Sotheby's, Christie's and Bonhams.

97. Defendants intentionally, knowingly and by wrongful means interfered with these prospective contractual relations by inducing Sotheby's, Christie's and Bonhams not to include the works by Souza owned by Jaffri in their 2006 auctions.

98. Defendants intentionally, knowingly and by wrongful means

23

interfered with Jaffri's prospective contractual relations with potential buyers at the 2006 auctions.

99.  Defendants intentionally, knowingly and by wrongful means interfered with Jaffri's prospective contractual relations with future sellers of his Souzas.

100. If not for defendants' acts, Jaffri could have entered into contracts with sellers or buyers of his works.

101. Defendants' statements regarding Jaffri's works by Souza and Jaffri himself are false, misleading and deceptive, in particular in the suggestion that Jaffri knowingly and intentionally brought fake artworks to market.

102. Defendants' statements regarding Jaffri's works by Souza and Jaffri himself were made with actual knowledge of their falsity, or reckless disregard or gross irresponsibility for the truth or falsity of the statements.

103. As a result, Defendants' statements had the purpose of harming Jaffri and his Souzas and were wrongful means of achieving Defendants' unlawful goals.

104. Plaintiff Jaffri suffered injury and damages, inter alia, pecuniary, economic and financial harm, as a result of Defendants' conduct.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

105. Plaintiff Jaffri repeats and alleges every paragraph above as if fully set forth herein.

24

106. Defendants' statements and actions as described above constitute interference with Jaffri's existing and prospective business relationships.

107. Defendants knew, or should have known, of Jaffri's pre-existing relationship with Christie's for the sale of works by Souza owned by Jaffri because works owned by Jaffri were included in the May 2005 sale of works by Souza, among other artworks.

108. Defendants knew or should have known of Jaffri's existing relationship with Sotheby's, Christie's and Bonhams because of, inter alia, the inclusion of works by Souza owned by Jaffri in the March and April 2006 auctions and related publications.

109. Defendants knew or should have known of Jaffri's prospective business relations to sell works by Souza owned by Jaffri through the auction houses and international art market to individual and/or institutional collectors of works by Souza.

110. Defendants, without privilege or justification, intentionally and improperly interfered with and prevented Jaffri from both continuing existing relationships and entering into new business relationships with existing and prospective sellers buyers of his works by Souza.

111. Defendants, without privilege or justification, used

improper means to interfere with and prevent Jaffri from
both continuing existing relationships and entering into new
business relationships with existing and prospective buyers
of works by Souza owned by Jaffri.

112. Plaintiff Jaffri suffered injury and damages, _inter_ _alia_,
pecuniary, economic and financial harm, as a result of
Defendants' conduct.

### COUNT IV
### PRODUCT DISPARAGEMENT/INJURIOUS FALSEHOOD

113. Plaintiff Jaffri repeats and alleges every paragraph above
as if fully set forth herein.

114. In their communications with Sotheby's, Christie's and
Bonhams, and possibly others associated with the
international art world, Defendants have published
defamatory, false, misleading and deceptive statements
regarding the works of Souza owned by Jaffri.

115. Defendants' statements disparaged the authenticity, quality,
characteristics and value of the works of Souza owned by
Jaffri.

116. Defendants' statements regarding Jaffri's works by Souza
were reasonably understood by listeners and readers,
including but not limited to Sotheby's, Christie's and
Bonhams, to cast doubt upon the authenticity, quality,
characteristics and value of these works.

26

117. Defendants were motivated by actual malice.

118. Defendants' statements regarding Jaffri's works by Souza were made with actual knowledge of their falsity, or reckless disregard or gross irresponsibility for the truth or falsity of the statements.

119. Defendants' statements were made with the intent to interfere with Jaffri's interest and do him harm.

120. Defendants' statements were not privileged.

121. Defendants' statements were a substantial factor in causing Jaffri substantial damage and injury to his reputation, business and property, including but not limited to, his inability to readily sell his works by Souza.

122. As set forth above, as a result of Defendants' acts, Jaffri suffered damages, including special damages.

### COUNT V
### UNFAIR COMPETITION BY DISPARAGEMENT/INJURIOUS FALSEHOOD

123. Plaintiff Jaffri repeats and alleges every paragraph above as if fully set forth herein.

124. Defendants published false statements that were harmful to plaintiff.

125. Defendants intended to cause harm, including pecuniary harm, to plaintiff or defendants recognized, or should have recognized, that the statements were likely to cause harm to plaintiff and his artworks.

126. Defendants had knowledge that the statements were false or

27

acted with reckless disregard or gross irresponsibility as
to their truth or falsity.

127. Defendants' statements were not privileged.

128. As set forth above, as a result of Defendants' acts, Jaffri
suffered damages, including special damages.

## COUNT VI
### LIBEL & LIBEL PER SE

129. Plaintiff Jaffri repeats and alleges every paragraph above
as if fully set forth herein.

130. Defendants have published false statements regarding the
works of Souza owned by Jaffri to Sotheby's, Christie's and
Bonhams, and possibly others associated with the
international art world.

131. Defendants' statements regarding Jaffri's works by Souza
were reasonably understood by those who read them, including
but not limited to Sotheby's, Christie's and Bonhams, to
cast doubt upon the professional acumen, integrity and
reputation of Jaffri, in particular in the suggestion that
Jaffri knowingly and intentionally brought fake artworks to
market.

132. Defendants' statements regarding Jaffri's works by Souza and
Jaffri himself are defamatory, false, misleading and
deceptive.

133. Defendants' statements regarding Jaffri's works by Souza and
Jaffri himself were made with actual knowledge of their

28

falsity or reckless disregard and gross irresponsibility for the truth or falsity of the statements.

134. Defendants' statements were made in bad faith and with malice.

135. Defendants lacked an interest or duty relating to Jaffri's works by Souza and Jaffri himself.

136. Defendants' statements were not privileged.

137. Defendants' statements have caused Jaffri substantial damage to his reputation, damage and injury to his business and property, and emotional and psychological distress.

138. As set forth above, defendants' acts were a substantial factor in causing Jaffri damages, including special damages.

### COUNT VII
### SLANDER & SLANDER PER SE

139. Plaintiff Jaffri repeats and alleges every paragraph above as if fully set forth herein.

140. Defendants have made false statements regarding the works of Souza owned by Jaffri to Sotheby's, Christie's and Bonhams, and possibly others associated with the international art world.

141. Defendants' statements regarding Jaffri's works by Souza were reasonably understood by those who heard them, including but not limited to Sotheby's, Christie's and Bonhams, to cast doubt upon the professional acumen,

29

integrity and reputation of Jaffri, in particular in the suggestion that Jaffri knowingly and intentionally brought fake artworks to market.

142. Defendants' statements regarding Jaffri's works by Souza and Jaffri himself are defamatory, false, misleading and deceptive.

143. Defendants' statements regarding Jaffri's works by Souza and Jaffri himself were made with actual knowledge of their falsity or reckless disregard or gross irresponsibility for the truth or falsity of the statements.

144. Defendants' statements were made in bad faith and with malice.

145. Defendants lacked an interest or duty relating to Jaffri's works by Souza and Jaffri himself.

146. Defendants' statements were not privileged.

147. Defendants' statements have caused Jaffri substantial damage to his reputation, and damage and injury to his business and property, and emotional and psychological distress.

148. As set forth above, defendants' acts were a substantial factor in causing Jaffri damages, including special damages.

### COUNT VIII
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349

149. Plaintiff Jaffri repeats and alleges every paragraph above as if fully set forth herein.

30

150. Defendants' statements regarding Jaffri's Souza works were reasonably understood by listeners and readers, including but not limited to Sotheby's, Christie's and Bonhams, to cast doubt upon the authenticity and value of these works.

151. Defendants' statements were false, misleading and materially deceptive.

152. Defendants' statements were made with actual knowledge of their falsity or with reckless disregard for the truth or falsity of the statements.

153. Defendants' statements were likely to mislead a reasonable consumer acting reasonably under the circumstances.

154. Defendants' statements were made, _inter alia_, for the purpose of destroying the competition in the relevant market works by Souza from the late 1980s and early 1990s.

155. Defendants' statements were made, _inter alia_, for the purpose of arrogating to themselves a monopoly in the marketplace for "authenticating" works by Souza.

156. As a result of defendants' acts, the public, including prospective purchasers of the works of Souza, have been misled to believe that (a) there are fewer works of Souza from the 1980s and 1990s than there actually are, and (b) that they can only rely on authentications by the Defendants to establish the authenticity of works by Souza.

157. As a result of defendants' acts, prospective sellers of the

works of Souza in the international art marketplace, including Sotheby's, Christie's and Bonhams, have been and will be misled to believe that they must have Defendants "authenticate" their works before they attempt to sell them in the international art marketplace when in fact no such "authentication" is required.

158. Defendants' actions are deceptive acts or practices that have caused substantial injury to consumers, the public interest in the marketplace, and Jaffri's business and property.

## COUNT IX
## COMMON LAW UNFAIR COMPETITION

159. Plaintiff Jaffri repeats and alleges every paragraph above as if fully set forth herein.

160. Defendants' actions described above constitute unfair competition at common law.

161. As a direct, proximate and foreseeable result of Defendants' unfair competition, Plaintiff has suffered financial, economic and other damages.

## COUNT X
## PRIMA FACIE TORT

162. Plaintiff Jaffri repeats and alleges every paragraph above as if fully set forth herein.

163. Defendants intentionally harmed Jaffri.

164. Defendants caused Jaffri special damages as described above.

32

165. Defendants lacked any excuse or justification for their acts.

166. Under different circumstances, defendants' acts might have been lawful.

**WHEREFORE**, Plaintiff Jaffri requests that the Court enter judgment against all defendants for the following:

A.   A declaratory judgment stating that 1) the works consigned by Jaffri to the March/April 2006 sales at Sotheby's, Christie's and Bonhams were created by Francis Newton Souza and are authentic works by Francis Newton Souza; 2) the works consigned by Jaffri to the October sale at Christie's South Kensington were created by Francis Newton Souza and are authentic works by Francis Newton Souza; and 3) other works in Jaffri's collection acquired directly or indirectly from Francis Newton Souza were created by Francis Newton Souza and are authentic works by Francis Newton Souza;

B.   A permanent injunction restraining Defendants from stating or otherwise suggesting in writing or orally, directly or through any agent, that the works of Souza owned by Jaffri are not authentic or were not created by Souza or otherwise casting doubt on their authenticity;

C.   A permanent injunction restraining Defendants from making any statements in writing or orally, directly or through any agent, adverse to Jaffri;

D.   Compensatory damages, in an amount to be determined at trial;

E.   Special damages, in an amount not less than US$746,000, as requested above;

34

F.   Punitive damages, in an amount to be determined at trial;

G.   Reasonable attorney's fees, including but not limited to expenses and disbursements;

H.   The costs of this action;

I.   Interest;

J.   Such other and further relief as is just and proper.

**PLAINTIFF REQUESTS TRIAL BY JURY**

Dated: New York, New York
       March 23, 2007

BELDOCK LEVINE & HOFFMAN LLP

By: _____

Cynthia Rollings
Vera M. Scanlon
99 Park Avenue, Suite 1600
New York, NY 10016
(212) 490-0400
ATTORNEYS FOR PLAINTIFF

TO:
Shelley Souza
Jeffrey S. Greener
Francesca Souza
The Estate of Francis Newton Souza

35