# EXHIBIT O

## FRIEDMAN KAPLAN SEILER & ADELMAN LLP

BRUCE S. KAPLAN
EDWARD A. FRIEDMAN
GARY D. FRIEDMAN
BARRY A. ADELMAN
ERIC SEILER
ROBERT D. KAPLAN
ANDREW W. GOLDWATER
ROBERT J. LACK
GREGG S. LERNER
HAL NEIER
PHILIPPE ADLER
MATTHEW S. HAIKEN
PAUL J. FISHMAN
RICHARD M. HOFFMAN
SCOTT M. BERMAN
LANCE J. GOTKO
ROBERT S. LOIGMAN
KATHERINE L. PRINGLE
MERYL S. ROSENBLATT
DANIEL B. RAPPORT
DAVID I. TANENBAUM
HALLIE B. LEVIN
ANNE E. BEAUMONT
MARY E. MULLIGAN

1633 BROADWAY
NEW YORK, NY 10019-6708

TELEPHONE (212) 833-1100
FACSIMILE (212) 833-1250
WWW.FKLAW.COM

WRITER'S DIRECT DIAL
(212) 833-1112

WRITER'S DIRECT FAX
(212) 373-7912

E-MAIL
JCAHILL@FKLAW.COM

NORMAN ALPERT
MARC N. EPSTEIN
JOHN R. CAHILL
STUART R. GOLDFARB
SNEHA DEVADASON
COUNSEL

CRAIG J. CODLIN
MELISSA E. LONDON
EMILY A. STUBBS
KENT K. ANKER
AMY C. BROWN
MALA AHUJA HARKER
HEATHER WINDT
LISA S. GETSON
GAURAV I. SHAH
ASAF REINDEL
JOHN N. ORSINI
JEFFREY R. WANG
LAURENCE D. BORTEN
VANESSA RICHARDS
CHAD B. PIMENTEL
JENNY F. KAUFMAN
LEE D. VARTAN
JOSHUA D. JACOBSON
JONATHAN GOTTFRIED
BARBARA J. GRAVES
JONATHAN K. REGENSTEIN

20 July 2006

**BY FAX AND FIRST CLASS MAIL**

Anthony Motta, Esq.
130 William Street, #603
New York, NY 10038-5068

Re: <u>Threatened Action against the Souza Estate by Mr. Azhar Jaffri</u>

Dear Mr. Motta:

Our client, The Estate of F. N. Souza, and its representatives have, as best they can without any of the materials remaining before them, discussed the information and materials briefly presented to them by Mr. Jaffri at our offices on July 11, 2006. Because the meeting was for settlement purposes, we will not address any matters seen or discussed directly.

Rather, we can only say that our client continues to believe that it has done nothing wrong and should not be the subject of any lawsuit by your client. The Estate has every right—indeed has a fiduciary obligation—to ask questions and raise concerns about works of art attributed F. N. Souza. This is even truer, as was the case with the works consigned by Mr. Jaffri, when the Estate is encouraged to express any concerns. As we have previously advised you, we believe that any suit filed would be completely "without merit in law" and that the lack of any legal or factual basis should now be apparent to you. 22 N.Y.C.R.R. § 130-1.1.

The Estate remains willing to consider any additional information about the eight works that Mr. Jaffri recently attempted to offer at auction. The Estate would treat Mr. Jaffri no differently from any other person seeking authentication despite his

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

Anthony Motta, Esq.     - 2 -     20 July 2006

threats of a lawsuit. If Mr. Jaffri is interested, I have attached a copy of the Estate's standard form of agreement and requests for information in connection with an "Evaluation of Authorship." Please note that the Estate is willing to waive its usual fees as an accommodation.

Of course, the Estate remains open to hearing any other alternatives that you or Mr. Jaffri may propose. We would suggest that any such proposals be made in writing.

Very truly yours,

John R. Cahill

# ESTATE OF F.N. SOUZA

20 July 2006

Mr. Azhar Jaffri
c/o Anthony Motta, Esq.
130 William Street, #603
New York, NY 10038-5068

Re: **Application and Agreement for Evaluation of Authorship**

Dear Mr. Jaffri:

The Estate of F. N. Souza (the "Artist") hopes to produce a catalogue raisonne of the works of the Artist. As part of that effort and to help promote a better understanding and appreciation of the Artist's works, the Estate is willing to opine on the authenticity of certain works of art attributed to Souza (each, a "Work") on the terms set forth in this Agreement.

To properly evaluate the Work, the Estate requires you to provide a complete and accurate account of all information known or available to you concerning the Work. At a minimum, this should include:

- The title;
- The medium (oil, watercolor, ink, etc.);
- The support (canvas, paper, Masonite, etc.)
- The dimensions;
- The existence and location of signatures;
- The existence and location inscriptions;
- Markings or labels on the reverse;
- All documents concerning the Work;
- A listing of all previous owners and the dates of their possession;
- A list of all exhibition in which the Work has appeared;
- A list of all publications in which the Work has appeared;
- A description of how and from whom the Work was acquired (including name, address, and telephone number if possible);
- A description of the Work's condition, including any damage or restoration to the Work, with details about how the Work was damaged or restored; and
- A transparency or other professional-quality image of the Work.

Based on this information, the Estate will use its reasonable best efforts to give you an opinion as to whether the Artist created the Work. It is possible that the Estate may need to see the Work or choose to reserve judgment on the Work. In any event, the Estate

# ESTATE OF F.N. SOUZA

20 July 2006

Mr. Azhar Jaffri
c/o Anthony Motta, Esq.
130 William Street, #603
New York, NY 10038-5068

**Re: Application and Agreement for Evaluation of Authorship**

Dear Mr. Jaffri:

The Estate of F. N. Souza (the "Artist") hopes to produce a catalogue raisonne of the works of the Artist. As part of that effort and to help promote a better understanding and appreciation of the Artist's works, the Estate is willing to opine on the authenticity of certain works of art attributed to Souza (each, a "Work") on the terms set forth in this Agreement.

To properly evaluate the Work, the Estate requires you to provide a complete and accurate account of all information known or available to you concerning the Work. At a minimum, this should include:

- The title;
- The medium (oil, watercolor, ink, etc.);
- The support (canvas, paper, Masonite, etc.)
- The dimensions;
- The existence and location of signatures;
- The existence and location inscriptions;
- Markings or labels on the reverse;
- All documents concerning the Work;
- A listing of all previous owners and the dates of their possession;
- A list of all exhibition in which the Work has appeared;
- A list of all publications in which the Work has appeared;
- A description of how and from whom the Work was acquired (including name, address, and telephone number if possible);
- A description of the Work's condition, including any damage or restoration to the Work, with details about how the Work was damaged or restored; and
- A transparency or other professional-quality image of the Work.

Based on this information, the Estate will use its reasonable best efforts to give you an opinion as to whether the Artist created the Work. It is possible that the Estate may need to see the Work or choose to reserve judgment on the Work. In any event, the Estate

413704.1

assumes no liability for any errors or omissions in any opinion issued by the Estate. By signing this letter agreement below, *you agree:*

- To make no claim against the Estate and to hold the Estate, its beneficiaries, agents, heirs, assigns, employees and representatives (the "Estate"), in their representative and individual capacities, harmless and to indemnify them from any claim, demands, and liabilities whatsoever (including costs and reasonable attorneys' fees) related in any way (i) to the communication of an opinion by the Estate or its decision, in its sole discretion to refrain from making a decision, and (ii) to loss or damage to the Work while it is in the care of the Estate or in transit to or from Estate authenticators;

- To deliver the Work to the Estate for review, and to insure the Work (for an amount equal to the value that you place on the Work) while it is in the care of the Estate, whether it is in the care of Estate authenticators or in transit to one or more of them;

- That your signature is permission to publish reproductions of the Work and information pertaining thereto in all editions of any catalogue raisonne with reference to you as an owner, unless you check this box ☐, in which case the Work will be described more generally, *e.g.*, as from a "private collection";

- To advise any subsequent persons or institutions to whom the Work is transferred that the Estate wishes to record the location of the Work for future curatorial and authentication purposes;

- That any opinion is issued to you and may not be (i) published or otherwise disseminated by you without the advanced written permission of the Estate (or any successor person or entity authorized to authenticate the Artist's works) or (ii) relied upon by any third persons to who obtain copies of any opinion or certificates;

The Estate will do its best to accommodate special requests, but you should allow a reasonable time for the Work to be evaluated. As a courtesy to you, the Estate is waiving its usual fee for this service. This letter agreement is governed by New York law (without regard to its choice of law principles), represents the complete understanding between you and the Estate (superseding all prior oral and written

413704.1

agreements), and cannot be changed except by a writing signed by the Estate.

Very truly yours,

*[signature: Shelley Souza]*

For the Estate of F. N. Souza


**I HAVE READ, UNDERSTAND, AND AGREE TO ACCEPT THE TERMS OF THIS AGREEMENT:**

_____

Azhar Jaffri
*Owner of Each Work Submitted for Evaluation*

## FRIEDMAN KAPLAN SEILER & ADELMAN LLP

1633 BROADWAY
NEW YORK, NY 10019-6708

TELEPHONE (212) 833-1100
FACSIMILE (212) 833-1250
WWW.FKLAW.COM

WRITER'S DIRECT DIAL
(212) 833-1112

WRITER'S DIRECT FAX
(212) 373-7912

E-MAIL
JCAHILL@FKLAW.COM

BRUCE S. KAPLAN
EDWARD A. FRIEDMAN
GARY D. FRIEDMAN
BARRY A. ADELMAN
ERIC SEILER
ROBERT D. KAPLAN
ANDREW W. GOLDWATER
ROBERT J. LACK
GREGG S. LERNER
HAL NEIER
PHILIPPE ADLER
MATTHEW S. HAIKEN
PAUL J. FISHMAN
RICHARD M. HOFFMAN
SCOTT M. BERMAN
LANCE J. GOTKO
ROBERT S. LOIGMAN
KATHERINE L. PRINGLE
MERYL S. ROSENBLATT
DANIEL B. RAPPORT
DAVID I. TANENBAUM
HALLIE B. LEVIN
ANNE E. BEAUMONT
MARY E. MULLIGAN

NORMAN ALPERT
MARC N. EPSTEIN
JOHN R. CAHILL
STUART R. GOLDFARB
SNEHA DEVADASON
COUNSEL

CRAIG J. CODLIN
MELISSA E. LONDON
EMILY A. STUBBS
KENT K. ANKER
AMY C. BROWN
MALA AHUJA HARKER
HEATHER WINDT
LISA S. GETSON
GAURAV I. SHAH
ASAF REINDEL
JOHN N. ORSINI
JEFFREY R. WANG
LAURENCE D. BORTEN
VANESSA RICHARDS
CHAD B. PIMENTEL
JENNY F. KAUFMAN
LEE D. VARTAN
JOSHUA D. JACOBSON
JONATHAN GOTTFRIED
BARBARA J. GRAVES
JONATHAN K. REGENSTEIN

10 August 2006

BY HAND

Anthony Motta, Esq.
130 William Street, #603
New York, NY 10038-5068

Re: Mr. Azhar Jaffri

Dear Mr. Motta:

We reply to your letter dated 28 July 2006.

The Estate ("the Estate") of F.N. Souza (the "Artist") was more than disappointed with the 11 July 2006 meeting held at our offices. We cannot imagine how Mr. Jaffri could have expected an "interchange" when he refused to provide the Estate with any information in advance of the meeting and continues to withhold materials from the Estate with no reasonable justification. Worse, Mr. Jaffri offered not a shred of paper or scintilla of information about any of the consigned works that brought us to that meeting in the first place. It is not our purpose here, however, to comment further on the meeting, to answer the queries in your letter about the Estate's rights and obligations (all of which are well-established by statute and common law), or to correct your ill-informed opinion of the expertise of those who viewed the works at issue here.

Right now, the Estate has no reason to communicate further with any auction house concerning works apparently consigned by Mr. Jaffri. The Estate does not believe that it has committed a wrong, as you suggest in your letter, nor does it believe that expressing an opinion on the authenticity of a work of art gives rise to liability under these circumstances. We will, as you requested, spare you further reminders about the consequences of making unfounded legal claims.

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

Anthony Motta, Esq.           - 2 -           10 August 2006

       By contrast, the passing off of forgeries as authentic works by the Artist does expose those doing so to liability; such forgeries harm not only the market and the public about whom you inquired, but also the Artist and, by operation of law, the Estate. Your surmise that "there must be at least a question in the minds of the Administrators" about the opinions that they formulated of the works apparently consigned by Mr. Jaffri is incorrect. Indeed, the gravest of their concerns were not allayed. By way of example, we enclose a copy of a published article illustrating the original work (entitled *Time Will Tell* and signed "Souza 93") from which it appears that the work that Mr. Jaffri consigned to Sotheby's for its March 2006 sale was copied. The Estate provided Sotheby's with a copy of this article after it received the consignment from Mr. Jaffri.

       Could it have been copied by the Artist himself? Not likely. Putting aside the many troubling matters of style and substance that are totally unaccounted for by Mr. Jaffri, the Artist himself made very clear in his lifetime that he did not copy his own works, writing in 1996 that:

> *Every painting I do is a new one—something I've not done before—and for the life of me I cannot repeat it again or copy.*

(A copy of the Artist's handwritten essay, "Nothing New Under the Sun?," is also enclosed for your review.)

       In case our meaning is not plain, let us make it so. Should Mr. Jaffri subject himself to the jurisdiction of courts located here, he should be prepared to answer the claims of the Estate—of which those arising out of what appears to be the very blatant forgery cited above are but a few among many. Notwithstanding Mr. Jaffri's direct and indirect threats, the Estate will not give further consideration to any of the works allegedly consigned by Mr. Jaffri *or* initial consideration of any works that Mr. Jaffri claims were created by the Artist without an agreement to do so under established procedures. Nor will the Estate cease its efforts to keep damaging forgeries from coming to market.

       The Estate, in short, does not want a fight but it will not be bullied into expressing opinions it does not now hold. Mr. Jaffri should govern himself accordingly. Works may still be submitted pursuant to agreement, but further correspondence and discussion concerning these matters are not deemed productive and will not be responded to by me or by the Estate.

                                                       Very truly yours,

                                                        John R. Cahill

cc:     Ms. Shelley Souza and Jeffrey S. Greener, Esq.
        Administrators of the Estate of F.N. Souza (by electronic mail)

Those know-alls who ~~arrogantly~~ smugly say, "there's nothing new under the sun" could hardly be relied upon if they at all could differenciate between the mediocre, the commonplace, kitsch, banal, 'seen one, seen 'em all', it's so so, so, what else is new? — and that which is Original, modern, state of the art, avant garde, a notch above the rest, off the beaten path! Sure, there's always something new under the sun! After all, Evolution renews all, slowly but surely. Having eyes ye see not! "There's nothing new..." etc is in the tired eyes of the beholder. Every morning is a new day! Every painting I do is a new one — something I've not done before — and for the life of me I cannot repeat it again or copy. Each painting of mine is one of a kind, absolutely original — it's original because I have painted it and there's no one like me under the sun or for that matter, very

My drawing is ductile, like a wire drawn out thin, depending on the fine point of the pen. I also draw with a broad brush, violent action, with dark thick energy, stark! drawings In the nude, I follow the masculature, the contours of hills and vallies; landscapes with large breasts and vulvas. Naked mounds and gorges. Voluptuously drawn. Woman is ground in which myself is redrawn. Rain, lightening, soil, river, the sea lapping at land, earth and water, male and female. The thought which goes in my draughtmanship encompasses ubiquitous Nature. It's all there drawn between the lines! The linear captures the form of the intangible! My drawings are independent works of art. They are not sketches for paintings or projects. They are there, put and complete in themselves. No nonsense or erasures. No second thoughts. What I have drawn I have drawn. Tj ts down

from my brain through my arm to the pen drawing the thought! Clear, precise, sharp. Clarity is reality. I draw the _real_ from the "real."

With my drawings of humans, heads, portraits, I take leaps in time, futuristic physionomies, faces of the facets of the future. Heads with tubes for noses, fangs for teeth, multiple eyes, compound like flies. The semblance of man to come. Afterall, evolution grows all sorts of distortions with a slight shift of the genes, DNA is actually the drawing of the growing form of the organism. Like DNA, my drawings of heads contain the message and the visage. The program is mapped out; my drawing of a futuristic head is the cartography for a voyage into the future. Fangs for teeth, multiple eyes, nozzles for noses and a number of etcetras et ceteras. Et cetera et cetera et ceton.

# From Time To

Eminent painter **Francis Newton Souza**, brushstrokes, elaborates on his conce





**DEBATE**

WHAT do you know about time? Time on your watch and calendar year? GMT, Greenwich Mean Time? Time to kill? Hurry up please it's closing time in the pub... Old age shows time wrinkled on the face. The tremor in the motor nerves, Alzheimer's disease, senility... Real Time is not separate from space, matter, energy, gravity, motion, evolution. Sir Isaac Newton believed all these to be separate and absolute... He was mistaken! Einstein knew better. He demonstrated relativity. But his universe was finite and therefore Time, according to Einstein, is finite. His universe had a beginning and an end. For Einstein believed in God, the 'Old One' as he called him; the ancient Hebrew god, Jehovah. Whereas for Newton, God was the First cause. For Newton, God's son, Jesus Christ, was God.

The Prophet Mohammad's God, Allah, says in the Koran: "Jesus is not my son! It doesn't behove me to have a son!" And Allah is none other than Jehovah from the Hebrew scripture, the Old Testament, who suddenly in the New Testament becomes God the Father; who, together with Christ and the Holy Ghost, becomes a Trinity!

"I do not come in 'threes'," Allah says in the Koran! The Old Testament was written in Hebrew; the New Testament in Greek; the Koran in Arabic. And yet, in these scriptures in three different languages, the scripture-hopping god is connected by monotheism and trinity.

Quite a theological rigmarole! Nobody seems to know what I have disclosed here. That's because the Jews and the Christians have never read the Koran. Men say 'God is One', a cliche really; but aside, they say, "It's my God that's the one!" The term 'comparative religion' exists, but no one has really done the study. Were there a study, it would come to light that religion is prejudice. And prejudice is a misjudgement induced by ignorance and malice.

So much for religion! But historical time in the Christian calendar is marked as BC and AD! Nietzsche was dead against Christianity. "God is dead," he wrote. He said the calendar should be changed to 'Before Nietzsche' and 'After Nietzsche'— BN and AN! But Nietzsche was mad. His sister Elizabeth was even madder: she interpolated his writings with vile anti-Semitic remarks. Hitler thought they were written by Nietzsche himself, and he proceeded to kill the Jews with his programme of the pogrom called the Final Solution. It never worked. Hitler's genocide of the Jews and those who survived it, resulted in Israel, the most hated enemy of the Palestinians and the Arabs.

In the Old Testament, the Israelites are constantly fighting the Philistines. In our time, the Israelis are constantly at war with the Palestinians, who are none other than the Philistines of the Old Testa... Ishma... desce... whom... Go... script... hoppi... gious... natura... nes th... religio... strong... eventu... believ... gods. ... man... believ... of hea... that it'... se whi... Ah, ... ledge! ... can die ... Logic