EXHIBIT P

BELDOCK LEVINE & HOFFMAN LLP

99 PARK AVENUE

NEW YORK, N.Y. 10016-1503

ELLIOT L. HOFFMAN
MYRON BELDOCK
BRUCE E. TRAUNER**
PETER S. MATORIN
KATHERINE G. THOMPSON
ROBERT L. HERBST*
JONATHAN MOORE***
CYNTHIA ROLLINGS
KAREN L. DIPPOLD
JEFFREY A. GREENBERG
JONATHAN K. POLLACK
VERA SCANLON

TEL: (212) 490-0400
FAX: (212) 557-0565
WEBSITE: blhny.com

LAWRENCE S. LEVINE (1934-2004)

SPECIAL COUNSEL
MARJORY D. FIELDS
COUNSEL
MELVIN L. WULF
*    ALSO ADMITTED IN PENNSYLVANIA
**   ALSO ADMITTED IN FLORIDA
***  ALSO ADMITTED IN CALIFORNIA
REF:

WRITER'S DIRECT DIAL:

June 29, 2007

**BY E-MAIL AND FIRST CLASS MAIL**
John Cahill, Esq.
Lynn & Cahill LLP
500 Fifth Avenue, 14th Floor
New York, NY 10110

     Re:    Jaffri v. Souza, 07 Civ. 4086 (SAS)

Dear Mr. Cahill:

        We write in response to your letter of June 22, 2007, which sets forth arguments you may make in the Appearing Defendants' anticipated motion to dismiss. We do not believe that your clients have grounds to succeed on such a motion for the reasons outlined below.

        We respond to your points seriatim. We note that as to many of these claims, your objections appear to be based on your position that our client will not be able to prove his claims, not on the motion to dismiss standard which is whether he has properly alleged the claims. We, too, submit this factual and legal analysis solely for the purpose of complying with the Court's individual rules, and reserve all rights.

**Parties**
        Mr. Greener is an appropriate party in his official capacity because he is a co-administrator of the Estate. In this capacity, he is a co-equal with Shelley Souza, the other co-administrator; they are the legal representatives of the Estate and act on its behalf. As the Estate is responsible for most, if not all, of the claims alleged, Mr. Greener in his official capacity is a proper party. To our knowledge, in their personal capacities, both Mr. Greener and Ms. Souza were active communicators with the auction houses, as alleged in the complaint. At the very least, the allegedly "passive receipt" by Mr. Greener of letters signed by Shelley Souza indicates his knowledge and ratification of the wrongdoings, which he took no action to undo. It appears that the communications to the auction houses were made for the benefit of the co-administrators, which raises the possibility of liability in their personal capacities. Additionally, several counts involve malice, which often may only be attributed to an estate's representative in his or her personal capacity.

**Tortious Interference With Contractual Relations**
        A motion to dismiss must be based on the allegation in the complaint, not information beyond it. The complaint sufficiently alleges that the withdrawals of the Souzas from auction

BELDOCK LEVINE & HOFFMAN LLP

Page 2 of 4
June 29, 2007
Jaffri v. Souza

were based on defendants' actions, not as you suggest, based on an independent investigation. It alleges that the decisions not to include the Souzas in the auctions were based on defendants' communications and actions, including their insistence that if the works were included in the auctions, potential buyers would have to be told of the Estate's views and refusal to authenticate the Souzas. See Complaint ¶¶ 47 (letter from Robin Dean), 49, 50 (letter from Michael Dupin), 59, 63. The auction houses indicated to plaintiff that it was because of the communications from defendants that the Souzas were withdrawn from the sales. Id.

We are unclear of the analysis underlying your citation to McNally as to this claim, except to suggest that there is an absolute or qualified privilege that would defeat it. As set forth in the complaint, defendants acted with both gross irresponsibility and malice, which defeat these privileges. Additionally, the facts set forth in McNally are quite different from those in this case. For example, neither Ms. Souza nor Mr. Greener qualifies as an expert as to F.N. Souza's art; it appears that they did not conduct even the barest of investigations before making the defamatory and false statements; and their communications include facts that can be proved wrong.

## Tortious Interference With Prospective Contractual and Business Relations
This claim is not duplicative of Count One, as it addresses prospective relations, as compared to Count One, which addresses existing relations. For the reasons noted below, the defamation claim is likely to withstand the motion to dismiss, and may serve as a basis for this claim. See Walters v. Clairemont Sterilized Egg, Co., 242 N.Y. 521, 521 (1926) (plaintiff stated a tortious interference claim where defendant falsely and wrongfully stated that plaintiff's process was of no value).

As to the issue of malice and self-interest being pleaded in the same complaint, plaintiff may plead in the alternative, and is entitled to discovery to determine defendants' true motivation. We note that malice in this context does not necessarily mean ill will, but includes the intentional doing of a bad act without legal or social justification. See Hornstein v. Podwitz, 254 N.Y.S. 443, 448 (1930).

As to third parties, defendants deprived plaintiff of the opportunity to sell to buyers by forcing the auction houses to withdraw the paintings because they could not sell the paintings with defendants' insistence that the auction houses inform buyers of defendants' allegations. This course of conduct was directed in part at the art auction attendees. Additionally, defendants interfered with future transactions between plaintiff and the auction houses by falsely alleging to the auction houses that plaintiff retained their services to auction inauthentic Souzas.

We note that the Fonar case you cited was based on post-trial motions in which the plaintiff had not offered adequate proof of interference with a specific contract. Here, plaintiff is entitled to discovery to identify the lost customers (to the extent that is necessary at all), and future dealings with the auction houses.

## Product Disparagement/Injurious Falsehood
Plaintiff satisfactorily alleged special damages. He alleged that the eight paintings lost their market value by the amounts listed in the complaint. Additionally, there is a reasonable argument that the legal fees expended to correct defendants' disparaging statement may also be claimed as special damages. See Charles Atlas, Ltd. v. Time-Life Books, Inc., 570 F. Supp. 150, 156 (S.D.N.Y. 1983) (considering but not deciding that attorney's fees may be special damages). In any event, where the disparagement is of the plaintiff's integrity and business methods as well as his product, a plaintiff need not plead special damages. See, e.g., New York Soc. for the

BELDOCK LEVINE & HOFFMAN LLP

Page 3 of 4
June 29, 2007
Jaffri v. Souza

Suppression of Vice v. MacFadden Publications, Inc., 260 N.Y. 167, 169 (1932).

As to the loss of particular purchasers of plaintiff's Souzas, the Kirby court pointed to cases in which a plaintiff need not specifically identify customers to maintain this cause of action. See Charles Atlas, 570 F. Supp. at 156 (rejecting arbitrary rule that plaintiff could only identify lost sales by identifying specific customers who did not buy plaintiff's product). While some cases suggest that the Charles Atlas exception is applicable only where the disparaging statements were widely disseminated, as you suggest, the reasoning of the Charles Atlas case does not rest on this distinction. See Kaz, Inc. v. Metropolitan Broadcasting Corp., 27 Misc.2d 753, 755, 211 N.Y.S.2d 412, 413 (N.Y. County Sup. 1960); see also Teilhaber Mfg. Co. v. Unarco Materials Storage, 791 P.2d 1164, 1167-68 (Colo. App. 1989). Aside from purchasers, defendants' disparaging statements caused the auction houses to withdraw from offering plaintiff's Souzas for sale and to breach their contracts with him, causing plaintiff harm.

**Unfair Competition by Product Disparagement**
This tort exists in New York and differs from product disparagement in that it does not require proof of special damages. See Sadowy v. Sony Corp. of America, 496 F. Supp. 1071, 1077 (S.D.N.Y. 1980); Diehl & Sons, Inc. v. Int'l Harvester Co., 445 F. Supp. 282, 291-92 (E.D.N.Y. 1978). The Gucci case is not controlling.

**Libel & Slander**
It is clear that the defendants' statements were likely to (and did) harm plaintiff's reputation because they would likely induce in the recipients the opinion that plaintiff was knowingly auctioning inauthentic works. Contrary to your letter, defendants unjustifiably did give a "hint that he [plaintiff] was attempting to perpetuate a fraud or otherwise engage in lawful activities," by their unfounded declarations of inauthenticity of eight Souzas owned and put up for auction by plaintiff in the same auction season. Defendants' statements went well beyond suggesting that plaintiff was mistaken as to the origins of his Souzas. For example, in a letter to Sotheby's, defendants suggested that plaintiff had been involved in falsely authenticating another Souza. In another letter, defendants described plaintiff's account of the titling of a work as "troubling" and suggested it was false. In a third letter to Sotheby's, they suggested that plaintiff was involved in selling numerous inauthentic Souzas by stating "[g]iven that the painting has been consigned by the same person who has a number of disputed works in the forthcoming auctions at Sotheby's Christie's and Bonham's at this time." Complaint ¶ 51. In a letter to Christie's, defendants made a similar statement about a Unicorn Gallery authentication. Complaint ¶ 55. Moreover, at the heart of the matter, defendants' statements that the Souzas were not in fact Souzas can be proved wrong, as will the fact that defendants made these statements without adequate knowledge.

As to your point that the litigation will bring negative press to our client, he was left with no other remedy as the defendants refused to correct their defamatory statements despite his request and their opportunity to do so.

**General Business Law Sec. 349**
This case does not involve a private dispute between defendants and plaintiff; rather, it involves plaintiff, defendants, the auction houses, the art buyers and the general public. A GBL claim may be brought "so long as some harm to the public at large is at issue." In re Houbigant, Inc., 914 F. Supp. 964 (S.D.N.Y. 1995), on reargument, 914 F. Supp. 997 (S.D.N.Y. 1996). Defendants' statements caused a palpable harm to the public interest and consumers in the creation, study and appreciation of the art of F.N. Souza and the historical period from which

BELDOCK LEVINE & HOFFMAN LLP

Page 4 of 4
June 29, 2007
Jaffri v. Souza

such work arose. Defendants' public dissemination of misinformation reduced the value of these
works of art, and effectively deprived the public of the opportunity to purchase, study, view and
appreciate these works. See City of New York v. Coastal Oil N.Y., No. 96 Civ. 8667, 1998 WL
82927 (S.D.N.Y. Feb. 25, 1998). Notably, in Boule v. Hutton, 328 F.3d 84 (2d Cir. 2003), the
Second Circuit held that as to this claim, the defendants' statement need not be proved false but
merely deceptive, making this claim relatively simple to prove here.

## Common Law Unfair Competition

Again, plaintiff may plead in the alternative even if as you suggest, the product
disparagement claim also describes defendants' wrongful conduct. In denigrating plaintiff's
Souzas, defendants took their value and increased the value of their own collection, in violation
of New York's unfair competition law.

## Prima Facie Tort

Again, plaintiff may plead in the alternative. He is entitled to discovery to determine
defendants' motivation–that is, whether it was personal malice or financial self-interest or some
other culpable and unjustified reason that drove defendants' actions.

As you can see from our response, the law is not squarely against our client; rather it
supports the view that he is entitled to damages for defendants' irresponsible and unjustified
actions. Nor are the facts against him. Based on all the information available to our client, the
Souzas are genuine and your clients did not have a factual basis to say otherwise, let alone to
force the auction houses to withdraw the paintings from the sales. No one asked for the
defendants' opinions, and their threats, including that of stating that the paintings were not
genuine and could not be included in the catalogue raissonne, when they lacked expertise or even
knowledge to make such statements, showed a reckless disregard for the truth at a minimum.

We believe we will be able to sustain the burden of proof in this action.

There is no fraud or attempt at fraud here by our client, and no reason to believe that our
client will face sanctions or that your clients will be entitled to any relief against him. Your
repeated suggestion that sanctions against our client may be at issue is not supported by the facts.

Please contact me to discuss a discovery schedule which we must prepare before the July
10th conference.

Sincerely,

Vera M. Scanlon