# EXHIBIT R

# Appendix 4-2

## *Christie's Standard Agreement*

Date:
Client No.:
Stock No.:

Commission Type:
MCC:

## CHRISTIE'S
### CONSIGNMENT AGREEMENT BETWEEN

"CONSIGNOR"          AND          "CHRISTIE'S"

NAME:
ADDRESS:
TELEPHONE:

CHRISTIE'S INC.
20 ROCKEFELLER PLAZA
NEW YORK, NY 10020
TEL: (212) 636-2000

Thank you for consigning your property to Christie's.
The terms and conditions of the consignment are as follows:

### 1.    CONSIGNMENT

You (the "Consignor") hereby consign to Christie's the property identified on the attached schedule, as amended from time to time, (the "Property") which Christie's, as the exclusive agent for Consignor, will offer for sale at public auction, unless otherwise agreed, subject to the provisions set forth below and Christie's standard Conditions of Sale and Limited Warranty in effect at the time of the auction. In the event of a conflict between the Conditions of Sale and Limited Warranty, on the one hand, and this Agreement, on the other hand, the terms of this Agreement shall control.

### 2.    COMMISSION

(a) In consideration of its services and subject to subparagraph (c), below, Christie's will receive and retain from the proceeds of the sale of the Property a commission from the Seller based upon the aggregate final bid price of all property (including, without limitation, the Property) sold by Seller at Christie's thus far during the calendar year as follows:

| TOTAL LOTS SOLD: | COMMISSION RATE: |
|---|---|
| $5,000,000 or more | As agreed |
| $2,500,000 - $4,999,999 | 2% of the final bid price |
| $1,000,000 - $2,499,999 | 4% of the final bid price |
| $500,000 - $999,999 | 5% of the final bid price |
| $250,000 - $499,999 | 7% of the final bid price |
| $100,000 - $249,999 | 8% of the final bid price |

**OR TRADE**

| TOTAL LOTS SOLD: | COMMISSION RATE: |
|---|---|
| $5,000,000 or more | As agreed |
| $2,500,000 - $4,999,999 | 2% of the final bid price |
| $1,000,000 - $2,499,999 | 4% of the final bid price |
| $100,000 - $999,999 | 5% of the final bid price |

**OR INSTITUTIONAL**

458 | ARF LAW

2

| TOTAL LOTS SOLD: | COMMISSION RATE: |
|---|---|
| $5,000,000 or more | As agreed |
| $1,000,000 - $4,999,999 | 2% of the final bid price |
| $100,000 - $999,999 | 4% of the final bid price |

(b) Subject to subparagraph (c) below, if the sum of the aggregate final bid price of all Property sold by Seller at Christie's thus far during the calendar year is less than $100,000, Christie's will receive and retain from the proceeds of sale a commission based upon the final bid price of each lot sold as follows:

| FINAL BID PRICE OF LOT: | COMMISSION RATE: |
|---|---|
| $7,500 - $99,999 | 10% of the final bid price |
| $2,000 - $7,499 | 15% of the final bid price |
| less than $2,000 | 20% of the final bid price |

**OR TRADE**

| FINAL BID PRICE OF LOT: | COMMISSION RATE: |
|---|---|
| $7,500 - $99,999 | 6% of the final bid price |
| $2,000 - $7,499 | 10% of the final bid price |
| less than $2,000 | 15% of the final bid price |

**OR INSTITUTIONAL**

| FINAL BID PRICE OF LOT: | COMMISSION RATE: |
|---|---|
| $7,500 - $99,999 | 10% of the final bid price |
| $2,000 - $7,499 | 15% of the final bid price |
| less than $2,000 | 20% of the final bid price |

(c) If Consignor has sold property through Christie's during the prior calendar year, the commission rate payable shall be the lesser of (i) the rate to be charged pursuant to subparagraph (a) or (b) above or (ii) the rate that would have been paid by Consignor during the prior calendar year under the commission scale outlined above.

    (d)      Christie's shall also receive a premium to be collected from the buyer of 20% of the final bid price up to and including $100,000, plus 12% of the final bid price above $100,000, or such other amounts as shall be published by Christie's from time to time.

(e) There will be a minimum commission charge of $100 per lot for each lot sold at Christie's main galleries.

3A. EXPENSES

Consignor agrees to pay all costs relating to:

(a) packing and shipping the Property to Christie's;

(b) packing and shipping the Property from Christie's if any Property is returned to Consignor;

(c) insurance, as provided in paragraph 4 below;

(d) transit insurance, as provided in paragraph 4 below;

(e) all applicable customs duties and customs user fees;

(f) catalogue illustration up to a maximum of $900 per lot for color illustration and $300 per lot for black and white illustration;

(g) restoration;

(h) framing;

3

(i) tests or procedures that Christie's deems necessary or desirable to verify authenticity, attribution or quality of any Property and any fees in connection therewith;

(j) any special marketing costs;

(k) storage of the Property after the sale, including in a third-party warehouse, as provided in paragraph 8(e) below;

(l) an unsold property charge in the event that any lot fails to sell, as provided in paragraph 8(e) below;

(m) such additional costs and expenses not set forth above as may be agreed to by Consignor.

Expenses incurred by Christie's for Consignor's account pursuant to this paragraph shall include a 10% service charge.

3B. Christie's agrees to pay all costs relating to:

(a) packing and shipping the Property to Christie's;

(b) packing and shipping the Property from Christie's if any Property is returned to Consignor;

(c) insurance, as provided in paragraph 4 below;

(d) transit insurance, as provided in paragraph 4 below;

(e) all applicable customs duties and customs user fees;

(f) catalogue illustration of the Property;

(g) restoration;

(h) framing;

(i) tests or procedures that Christie's deems necessary or desirable to verify authenticity, attribution or quality of any Property and any fees in connection therewith;

(j) any special marketing costs;

(k) storage of the Property after the sale, including in a third-party warehouse, as provided in paragraph 8(e) below;

(l) such additional costs and expenses not set forth above as may be agreed to by Consignor.

4.    CHRISTIE'S INSURANCE

(a)    Unless Christie's and Consignor agree otherwise, each lot of Property will be insured at Consignor's expense under and subject to the terms of Christie's insurance policy, as shall be in effect from time to time, from the time of receipt by Christie's until it ceases to be in Christie's custody for an amount equal to (i) the mean of the pre-sale estimates prior to sale, (ii) the amount of the final bid price if sold, or (iii) the amount of the reserve if unsold (in each case, the "Insured Value").

(b)    Insurance for Property received at Christie's auction premises will be charged to Consignor at a rate of 1.5% of the Insured Value for all Property other than breakables, such as porcelain or glass, and 2% of the Insured Value for all breakable property. Insurance for Property received at one of Christie's regional offices or at any location other than its auction premises will be charged to Consignor at an additional rate of 0.5% of the Insured Value to cover transit to Christie's auction premises. Whenever Consignor is responsible for packing and shipping charges, Christie's shall have no liability whatsoever to Consignor in connection therewith, even when Christie's has recommended a carrier.

(c)    Each lot of Property will remain insured until 30 days after the sale. If any such lot has not been sold, there will be an additional charge for insurance after that date.

(d)    Christie's liability to Consignor resulting from loss of or damage to any lot of Property shall not exceed the Insured Value of such Property. While Christie's undertakes to exercise reasonable care in handling the

410 | ART LAW

4

Property, we shall not be responsible for any damage to any Property caused by climatic or atmospheric conditions or for any damage to picture frames or to glass therein.

### 4.   CONSIGNOR'S INSURANCE

If Consignor has instructed Christie's not to insure the Property, it will be insured at Consignor's expense under Consignor's insurance policy from the time of receipt by Christie's until it ceases to be in Christie's custody. Christie's shall have no liability to Consignor whatsoever resulting from loss of or damage to any Property. Consignor shall execute and deliver to Christie's an insurance waiver letter in form and substance satisfactory to Christie's or shall deliver to Christie's a certificate of insurance naming Christie's as an additional named insured.

### 5.   CONSIGNOR'S REPRESENTATIONS AND WARRANTIES, COVENANTS AND INDEMNIFICATION

(a)   Consignor represents and warrants to Christie's that: (i) Consignor has the right and title to consign the Property for sale; (ii) the Property is, and until the completion of sale by Christie's will be, free and clear of all liens, claims and encumbrances of others or restrictions on Christie's right to offer and sell the Property; (iii) upon sale, good and marketable title and right to possession will pass to the buyer free of any such liens, claims, encumbrances or restrictions; (iv) Consignor has no reason to believe that any lot of Property is not authentic or is counterfeit; (v) the Property is not "confiscated Property" within the meaning of any United States federal or state laws; (vi) Consignor's consignment to and authorization of Christie's to sell the Property is in full compliance with all United States federal and state laws; (vii) the exportation, if any, of the Property from any foreign country has been in full conformity with the laws of such country and the importation of the Property into the United States has been or will be in full conformity with the laws of the United States; and (viii) there are not, and until the completion of sale by Christie's there will not be, any restrictions on Christie's right to photograph, reproduce photographs of or exhibit the Property.

(b)   Consignor agrees that such representations and warranties are for the benefit of Christie's and buyers of the Property and that such representations and warranties shall survive the completion of the transactions contemplated hereby. Consignor agrees to notify Christie's promptly in writing of any events or circumstances that may cause the foregoing representations and warranties to be inaccurate or breached in any way.

(c)   If Consignor is acting as an agent for a principal, Consignor and principal, jointly and severally, assume all of Consignor's obligations set forth in this Agreement.

(d)   Consignor grants to Christie's the right to illustrate and photograph the Property and to use such photographs, illustrations or images at any time before or after the sale and for such purposes as Christie's deems appropriate. Consignor agrees that all catalogue and other photographs, illustrations and descriptions of the Property created by or for Christie's are not "works made for hire" on behalf of Consignor under copyright law, and that Christie's shall own the exclusive copyright and all other rights relating to all such photographs, illustrations and descriptions.

(e)   Consignor shall defend, indemnify and hold harmless Christie's from and against any and all losses, damages, liabilities and claims, and all fees, costs and expenses of any kind related thereto (including, without limitation, reasonable attorney's fees), arising out of, based upon or resulting from (i) any act by or omission of Consignor or Consignor's agents (other than Christie's) or representatives relating to or affecting

5

the Property or (ii) any inaccuracy or alleged inaccuracy, asserted by Christie's or any third party in a court action, of any representation or warranty made by Consignor pursuant to this Agreement.

### 6.    SALE ARRANGEMENTS

(a)    Christie's shall have complete discretion as to (i) the place and date of sale and the manner in which such sale is conducted, including the Conditions of Sale then in effect, (ii) the illustration, if any, and the description of the Property in our catalogues and other literature, (iii) seeking the views of any expert, either before or after the sale, and (iv) the combination or division of the Property into such lots and/or separate auctions as Christie's in our sole judgement may deem appropriate.

(b)    Any written or oral appraisal, estimate or other statement of Christie's or our representatives with respect to the estimated or expected selling price of any lot of Property is a statement of opinion only and shall not be relied upon by Consignor or any third party as a prediction or guarantee of the actual selling price. Christie's makes no representations or warranties to Consignor with respect to the Property, its authenticity, attribution, condition or otherwise. Christie's shall not be liable for any errors or omissions in catalogue or other descriptions of the Property. Printed pre-sale estimates shall not include the buyer's premium or taxes.

(c)    No Property may be withdrawn from sale after the date of this Agreement without Christie's consent. If Christie's consents to a withdrawal, a lot of Property may be withdrawn upon payment of 20% of the reserve price or 20% of the mean of the pre-sale estimates if the reserve has not yet been set plus all out-of-pocket expenses incurred by Christie's.

(d)    Christie's reserves the right to withdraw any Property at any time before sale if in Christie's sole judgment (i) there is doubt as to its attribution or authenticity, (ii) there is doubt as to the accuracy of any of Consignor's representations or warranties set forth herein, (iii) Consignor has breached any provision of this Agreement or (iv) other just cause exists. There shall be no charge to Consignor, other than Christie's out-of-pocket expenses, for a withdrawal pursuant to clause (i) or (iv). In the event of a withdrawal pursuant to clause (ii) or (iii), Consignor shall be liable for the withdrawal charges and other expenses set forth in subparagraph (c) of this paragraph 6.

### 7.    CONDUCT OF THE SALE

(a)    *Reserves.* Unless otherwise agreed, each lot of Property will be sold subject to a reserve (the confidential minimum price below which such Property will not be sold) which shall not exceed the low pre-sale estimate therefor and shall not include the buyer's premium or taxes. Unless the reserve is mutually agreed upon and confirmed by Consignor in writing before the sale, the reserve will be determined by Christie's in our sole discretion. Any reserve set in an amount other than a bidding increment will be rounded down to the next bidding increment.

(b)    *Selling Below Reserve.* Christie's may sell any lot below the reserve if Consignor receives the amount, less Consignor's commission and any sale-related expenses, which Consignor would have received had such lot been sold at the reserve.

(c)    *Christie's Acting to Protect Reserve.* As Consignor's agent, Christie's shall act to protect the reserve by bidding through the auctioneer.

6

(d) *No Bidding by Consignor.* Under no circumstances shall Consignor (as agent or principal), its representatives, employees or agents, if any (other than Christie's acting as Consignor's agent in accordance with paragraph 7 (c) above), enter or cause to be entered a bid on any lot of Property being offered for sale.

(e) *Limited Liability.* In no event shall Christie's be liable for the failure of any lot of Property to be sold at or within its estimate range or to reach the reserve.

## 8.   AFTER THE SALE

(a)   *Settlement of Account.* Provided Christie's has received payment in full from the buyer, and subject to the next sentence hereof, 35 calendar days after the sale (the "Settlement Date"), Christie's will pay Consignor the net proceeds (the final bid price less Consignor's commission payable to Christie's pursuant to paragraph 2 above, any reimbursable expenses and any other amounts due Christie's or any of our affiliates, whether arising out of the sale of the Property or otherwise) received and collected from the sale of the Property. Christie's will not make such payment if Christie's shall have received notice of the buyer's intention to rescind the sale or of any other bona fide claim relating to the Property or its sale prior to the Settlement Date. In the event that Consignor has agreed to arrangements for payment by the buyer which extend beyond the Settlement Date, such date and the amount payable to Consignor thereon shall be adjusted accordingly. Payment will be made in United States dollars unless Consignor instructs Christie's otherwise in writing. If Consignor requires payment other than in United States dollars, Christie's shall charge Consignor for any currency costs incurred, and shall retain such costs from the proceeds of the sale. Sale proceeds due will be calculated at the forward rate of exchange obtained by Christie's on the next working day after the date of the auction or, if applicable, the date of the post-auction sale, for value on the due date for payment.

(b) *Non-Payment by Buyer.* Christie's shall have no obligation to enforce payment by the buyer. However, in the event of non-payment by the buyer, Christie's in our sole discretion, as Consignor's agent or on our own behalf, may cancel the sale and return the Property to Consignor, enforce payment by the buyer or take any other actions permitted by law. Christie's shall not, under any circumstances, be liable for any consequential damages to Consignor as a result of non-payment by the buyer.

(c) *Rescission of Sale.* Christie's, as Consignor's agent, is authorized to accept the return and rescind the sale of any lot of Property at any time if Christie's in our sole judgment determines that the offering for sale of any Property has subjected or may subject Christie's and/or Consignor to any liability, including liability under warranty of authenticity or title. In such event, Christie's is further authorized to refund or credit to the buyer the purchase price of such returned Property. If Christie's has already remitted to Consignor any proceeds of the rescinded sale, Consignor forthwith shall pay Christie's upon request an amount equal to the remitted proceeds.

(d) *Post-Auction Sales.* If any lot is bought-in for failure to reach its reserve, Christie's as Consignor's exclusive agent is authorized for a period of 30 days following the auction to sell the lot privately for a price that will result in payment to Consignor of an amount at least equal to the amount, after deduction of Consignor's commission and Christie's reimbursable expenses, that Consignor would have received if the lot had been sold at the reserve, or for such lesser amount as Christie's and Consignor shall agree. In such event, all other provisions of this Agreement shall remain in full force and effect.

(e) *Unsold Property.* For each lot offered but not sold, Consignor shall pay Christie's a service charge of 5% of the reserve. Property remaining unsold following the auction or the expiration of the 30-day period

7

referred to in paragraph 8 (d) above and not reconsigned to Christie's for sale must be collected by Consignor at Consignor's expense within 35 days following the date on which Christie's offered such Property for sale. Thereafter, Consignor will incur a storage charge of $10 per day per lot. Consignor shall not be entitled to reclaim any unsold Property until all commission, expenses and other amounts owed to Christie's or any of our affiliates have been paid in full. In Christie's sole discretion, any Property not picked up or reconsigned for sale within 60 days following the date on which Christie's offered such Property for sale may be returned to Consignor at Consignor's expense, transferred to a third-party warehouse or sold at public auction by Christie's at Christie's standard commission rates and charges with a reserve, if any, set in Christie's sole discretion. The proceeds of such sale shall first be applied to the expenses of such sale, then to any indebtedness owing to Christie's or any of our affiliates and any excess shall be remitted to Consignor. In the event of transfer of any unsold Property to a third-party warehouse, Consignor shall bear all cost and risk thereof and shall be liable to such warehouse for the payment of storage and insurance charges of at least $10 per day per lot.

### 9.    ADDITIONAL CONSIGNMENTS

Christie's agrees that prior to December 31 of this calendar year, Christie's may, upon Consignor's request, offer for sale at appropriate auctions to be held during this calendar year any additional property of Consignor that Christie's considers suitable for sale at such auction. Such additional property will be offered for sale by Christie's upon the same terms and conditions as those which govern this Agreement. Christie's will mail to Consignor a property Schedule for such additional property. The return of such Schedule signed by Consignor shall be evidence of, and shall constitute Christie's and Consignor's agreement with respect to, the consignment to Christie's of the property listed on such property Schedule upon such terms and conditions. Such property shall thereupon constitute "Property" under the terms of this Agreement.

### 10.    OTHER MATTERS

(a)    This Agreement constitutes the entire agreement and understanding between the parties with respect to the transactions contemplated hereby and supersedes all prior agreements relating to the Property.

(b)    This Agreement shall be governed by and construed in accordance with the laws of the State of New York. In the event of any dispute hereunder, (i) the parties hereby consent to the exclusive jurisdiction of the courts of the State of New York and the Federal courts of the United States of America located in the Southern District of New York and (ii) neither party shall be liable to the other for any special, consequential or incidental damages.

(c)    This Agreement shall be binding upon Consignor's heirs, distributees, executors, legal representatives, successors and assigns.

(d)    Consignor may not assign its rights and/or obligations under this Agreement without the prior written consent of Christie's.

The parties agree to the foregoing by signing in the space provided below.

CHRISTIE'S INC.

By_____

Licensed by the New York City
Department of Consumer Affairs
Principal Auctioneer: Christopher J. Burge
License #761543

# Appendix 4-4

*Christie's Warranty and Disclosure in Its Auction Catalogs*

## CONDITIONS OF SALE

These Conditions of Sale and the Important Notices and Explanation of Cataloguing Practice contain all the terms on which Christie's and the seller contract with the buyer. They may be amended by posted notices or oral announcements made during the sale. By bidding at auction you agree to be bound by these terms.

### 1.   CHRISTIE'S AS AGENT

Except as otherwise stated Christie's acts as agent for the seller. The contract for the sale of the property is therefore made between the seller and the buyer.

### 2.   BEFORE THE SALE

(a)   Examination of property

Prospective buyers are strongly advised to examine personally any property in which they are interested, before the auction takes place. Condition reports are usually available on request. Neither Christie's nor the seller provides any guarantee in relation to the nature of the property apart from the Limited Warranty in paragraph 6 below. The property is otherwise sold "as is."

Our cataloguing practice is explained in the Important Notices and Explanations of Cataloguing Practice after the catalogue entries. All statements by us in the catalogue entry for the property or in the condition report, or made orally

in writing elsewhere, are statements of opinion and are not to be relied on as statements of fact. Such statements do not constitute a representation, warranty or assumption of liability by us of any kind. References in the catalogue entry or the condition report to damage or restoration are for guidance only and should be evaluated by personal inspection by the bidder or a knowledgeable representative. The absence of such a reference does not imply that an item is free from defects or restoration, nor does a reference to particular defects imply the absence of any others. Estimates of the selling price should not be relied on as a statement that this is the price at which the item will sell or its value for any other purpose. Except as set forth in paragraph 6 below, neither Christie's nor the seller is responsible in any way for errors and omission in the catalogue or any supplemental material.

(b)  Buyer's responsibility

Except as stated in the Limited Warranty in paragraph 6 below, all property is sold "as is" without any representation or warranty of any kind by Christie's or the seller. Buyers are responsible for satisfying themselves concerning the condition of the property and the matters referred to in the catalogue entry.

## 3.  AT THE SALE

(a)  Refusal of admission

Christie's has the right, at our complete discretion, to refuse admission to the premises or participation in any action and to reject any bid.

(b)  Registration before bidding

A prospective buyer must complete and sign a registration from and provide identification before bidding. We may require the production of bank or other financial references.

(c)  Bidding as principal

When making a bid, a bidder is accepting personal liability to pay the purchase price, including the buyer's premium and all applicable taxes, plus all other applicable charges, unless it has been explicitly agreed in writing with Christie's before the commencement of the sale that the bidder is acting as agent on behalf of an identified third party acceptable to Christie's, and that Christie's will only look to the principal for payment.

(d)  Absentee bids

We will use reasonable efforts to carry out written bids delivered to us prior to the sale for the convenience of clients who are not present at the auction in person, by an agent or by telephone. Bids must be placed in the currency of the place of the sale. Please refer to the catalogue for the Absentee Bids Form. If we receive written bids on a particular lot for identical amounts, and at the auction these are the highest bids on the lot, it will be sold to the person whose written bid was received and accepted first. Execution of written bids is a free service undertaken subject to other commitments at the time of the sale and we do not accept liability for failing to execute a written bid for errors and omissions in connection with it.

(e)  Telephone bids

If a prospective buyer makes arrangements with us prior to the commencement of the sale we will use reasonable efforts to contact them to enable them to participate in the bidding by telephone but we do not accept liability for failure to do so or for errors and omissions in connection with telephone bidding.

(f)  Currency converter

At some auctions a currency converter may be operated. Errors may occur in the operation of the currency converter and we do not accept liability to bidders who follow the currency converter rather than the actual bidding in the saleroom.

(g)  Video or digital images

At some auctions there may be a video or digital screen. Errors may occur in its operation and in the quality of the image and we do not accept liability for such errors.

(h)  Reserves

Unless otherwise indicated, all lots are offered subject to a reserve, which is the confidential minimum price below which the lot will not be sold. The reserve will not exceed the low estimate printed in the catalogue. If any lots are not subject to a reserve, they will be identified with the symbol • next to the lot number. The auctioneer may open the bidding on any lot below the reserve by placing a bid on behalf of the seller. The auctioneer may continue to bid on behalf of the seller up to the amount of the reserve, either by placing consecutive bids or by placing bids in response to other bidders. With respect to lots that are

offered without reserve, unless there are already competing bids, the auction-
eer, in his or her discretion will generally open the bidding at 50% of the low
pre-sale estimate for the lot. In the absence of a bid at that level, the auctioneer
will proceed backwards in his or her discretion until a bid is recognized, and
then continue up from that amount. Absentee bids will, in the absence of a
higher bid, be executed at approximately 50% of the low pre-sale estimate or at
the amount of the bid if it is less than 50% of the low pre-sale estimate. In the
event that there is no bid on a lot, the auctioneer may deem such lot unsold.

(i)    Auctioneer's discretion

The auctioneer has the right at his absolute and sole discretion to refuse any
bid, to advance the bidding in such a manner as he may decide, to withdraw or
divide any lot, to combine any two or more lots and, in the case of error or dis-
pute, and whether during or after the sale, to determine the successful bidder,
to continue the bidding, to cancel the sale or to reoffer and resell the item in
dispute. If any dispute arises after the sale, our sale record is conclusive.

(j)    Successful bid and passing of risk

Subject to the auctioneer's discretion, the highest bidder accepted by the auc-
tioneer will be the buyer and the striking of his hammer marks the acceptance
of the highest bid and the conclusion of a contract for sale between the seller
and the buyer. Risk and responsibility for the lot (including frames or glass
where relevant) passes to the buyer at the expiration of seven calendar days from
the date of the sale or on collection by the buyer if earlier.

## 4.   AFTER THE SALE

(a)    Buyer's premium

In addition to the hammer price, the buyer agrees to pay to us the buyer's pre-
mium together with any applicable value added tax, sales or compensating use
tax or equivalent tax in the place of sale. The buyer's premium is 20% of the
hammer price on each lot up to and including $200,000 plus 12% of any
amount in excess of $200,000.

(b)    Payment and passing of title

Immediately following the sale, the buyer must provide us with his or her name
and permanent address and, if so requested, details of the bank from which pay-
ment will be made. The buyer must pay the full amount due (comprising the

hammer price, buyer's premium and any applicable taxes) not later than 4.30 pm on the seventh calendar day following the sale. This applies even if the buyer wishes to export the lot and an export license is, or may be, required. The buyer will not acquire title to the lot until all amounts due to us from the buyer have been received by us in good cleared funds even in circumstances where we have released the lot to the buyer.

(c)   Collection of purchases

We shall be entitled to retain items sold until all amounts due to us, or to Christie's International plc, or to any of its affiliates, subsidiaries or parent companies worldwide, have been received in full in good cleared funds or until the buyer has satisfied such other terms as we, in our sole discretion, shall require. Subject to this, the buyer shall collect purchased lots within seven calendar days from the date of the sale unless otherwise agreed between us and the buyer.

(d)   Packing, handling and shipping

Although we shall use reasonable efforts to take care when handling, packing and shipping a purchased lot, we are not responsible for the acts or omissions of third parties whom we might retain for these purposes. Similarly, where we may suggest other handlers, packers or carriers if so requested, we do not accept responsibility or liability for their acts or omissions.

(e)   Export license

Unless otherwise agreed by us in writing, the fact that the buyer wishes to apply for an export license does not affect is or her obligation to make payment within seven days nor our right to charge interest or storage charges on late payment. If the buyer requests us to apply for an export license on his or her behalf, we shall be entitled to make a charge for this service. We shall not be obliged to rescind a sale nor to refund any interest or other expenses incurred by the buyer where payment is made by the buyer in circumstances where an export license is required.

(f)   Remedies for non payment

If the buyer fails to make payment in full in good cleared funds within the time required by paragraph 4(b) above, we shall be entitled in our absolute discretion to exercise one or more of the following rights or remedies (in addition to asserting any other rights or remedies available to us by law):

(i)   to charge interest at such rate as we shall reasonably decide;

(ii)    to hold the defaulting buyer liable for the total amount due and to commence legal proceedings for its recovery together with interest, legal fees and costs to the fullest extent permitted under applicable law;

(iii)   to cancel the sale;

(iv)    to resell the property publicly or privately on such terms as we shall think fit;

(v)     to pay the seller an amount up to the net proceeds payable in respect of the amount bid by the defaulting buyer;

(vi)    to set off against any amounts which we, or Christie's International plc, or any of its affiliates, subsidiaries or parent companies worldwide, may owe the buyer in any other transactions, the outstanding amount remaining unpaid by the buyer;

(vii)   where several amounts are owed by the buyer to us, or to Christie's International plc, or to any of its affiliates, subsidiaries or parent companies worldwide, in respect of different transactions, to apply any amount paid to discharge any amount owed in respect of any particular transaction, whether or not the buyer so directs;

(viii)  to reject at any future auction any bids made by or on behalf of the buyer or to obtain a deposit from the buyer before accepting any bids;

(ix)    to exercise all the rights and remedies of a person holding security over any property in our possession owned by the buyer, whether by way of pledge, security interest or in any other way, to the fullest extent permitted by the law of the place where such property is located. The buyer will be deemed to have granted such security to us and we may retain such property as collateral security for such buyer's obligations to us;

(x)     to take such other action as we deem necessary or appropriate.

If we resell the property under paragraph (iv) above, the defaulting buyer shall be liable for payment of any deficiency between the total amount originally due to us and the price obtained upon resale as well as for all costs, expenses, damages, legal fees and commissions and premiums of whatever kind associated with both sales or otherwise arising from the default. If we pay any amount to the seller under paragraph (v) above, the buyer acknowledges that Christie's

shall have all of the rights of the seller, however arising, to pursue the buyer for such amount.

    (g)   Failure to collect purchases

Where purchases are not collected within seven calendar days from the date of the sale, whether or not payment has been made, we shall be permitted to remove the property to a third party warehouse at the buyer's expense, and only release the items after payment in full has been made of removal, storage, handling, insurance and any other costs incurred, together with payment of all other amounts due to us.

    (h)   Selling Property at Christie's

In addition to expenses such as transport and insurance, all consignors pay a commission according to a fixed scale of charges based upon the value of the property sold by the consignor at Christie's in a calendar year. Commissions are charged on a sale by sale basis.

## 5.   EXTENT OF CHRISTIE'S LIABILITY

We agree to refund the purchase price in the circumstances of the Limited Warranty set out in paragraph 6 below. Apart from that, neither the seller nor we, nor any of our officers, employees or agents, are responsible for the correctness of any statement of whatever kind concerning any lot, whether written or oral, nor for any other errors or omissions in description or for any faults or defects in any lot. Except as stated in paragraph 6 below, neither the seller, ourselves, our officers, employees or agents, give any representation, warranty or guarantee or assume any liability of any kind in respect of any lot with regard to merchantability, fitness for a particular purpose, description, size, quality, condition, attribution, authenticity, rarity, importance, medium, provenance, exhibition history, literature or historical relevance. Except as required by local law any warranty of any kind whatsoever is excluded by this paragraph.

## 6.   LIMITED WARRANTY

Subject to the terms and conditions of this paragraph, Christie's warrants for a period of five years from the date of the sale that any property described in headings printed in UPPER CASE TYPE (*i.e.*, headings having all capital-letter type) in this catalogue (as such description may be amended by any saleroom notice or announcement) which is stated without qualification to be the work of a named author or authorship, is authentic and not a forgery. The term "author" or "authorship" refers to the creator of the property or to the period,

culture, source or origin, as the case may be, with which the creation of such property is identified in the UPPER CASE description of the property in this catalogue. Only UPPER CASE TYPE headings of lots in this catalogue indicate what is being warranted by Christie's. Christie's warranty does not apply to supplemental material which appears below the UPPER CASE TYPE headings of each lot and Christie's is not responsible for any errors or omissions in such material. The terms used in the headings are further explained in Important Notices and Explanation of Cataloguing Practice. The warranty does not apply to any heading which is stated to represent a qualified opinion. The warranty is subject to the following:

(i) It does not apply where (a) the catalogue description or saleroom notice corresponded to the generally accepted opinion of scholars or experts at the date of the sale or fairly indicated that there was a conflict of opinions; or (b) correct identification of a lot can be demonstrated only by means of either a scientific process not generally accepted for use until after publication of the catalogue or a process which at the date of publication of the catalogue was unreasonably expensive or impractical or likely to have caused damage to the property.

(ii) The benefits of the warranty are not assignable and shall apply only to the original buyer of the lot as shown on the invoice originally issued by Christie's when the lot was sold at auction.

(iii) The original buyer must have remained the owner of the lot without disposing of any interest in it to any third party.

(iv) The buyer's sole and exclusive remedy against Christie's and the seller, in place of any other remedy which might be available, is the cancellation of the sale and the refund of the original purchase price paid for the lot. Neither Christie's nor the seller will be liable for any special, incidental or consequential damages including, without limitation, loss of profits nor for interest.

(v) The buyer must give written notice of claim to us within five years from the date of the auction. It is Christie's general policy, and Christie's shall have the right, to require the buyer to obtain the written opinions of two recognized experts in the field, mutually

acceptable to Christie's and the buyer, before Christie's decides whether or not to cancel the sale under the warranty.

(vi) The buyer must return the lot to the Christie's saleroom at which it was purchased in the same condition as at the time of the sale.

## 7.   COPYRIGHT

The copyright in all images, illustrations and written material produced by or for Christie's relating to a lot including the contents of this catalogue, is and shall remain at all times the property of Christie's and shall not be used by the buyer, nor by anyone else, without our prior written consent. Christie's and the seller make no representation or warranty that the buyer of a property will acquire any copyright or other reproduction rights in it.

## 8.   SEVERABILITY

If any part of these Conditions of Sale is found by any court to be invalid, illegal or unenforceable, that part shall be discounted and the rest of the conditions shall continue to be valid to the fullest extent permitted by law.

## 9.   LAW AND JURISDICTION

The rights and obligations of the parties with respect to these Conditions of Sale, the conduct of the auction and any matters connected with any of the foregoing shall be governed and interpreted by the laws of the jurisdiction in which the auction is held. By bidding at auction, whether present in person or by agent, by written bid, telephone or other means, the buyer shall be deemed to have submitted, for the benefit of Christie's, to the exclusive jurisdiction of the courts of that country, state, county or province, and (if applicable) of the federal courts sitting in such state.