UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AZHAR A. JAFFRI,

                     *Plaintiff*,

       - against-

SHELLEY SOUZA, individually and as Co-
administrator of the Estate of Francis Newton
Souza; JEFFREY S. GREENER, individually
and as Co-administrator of the Estate of
Francis Newton Souza; FRANCESCA SOUZA,
individually; and THE ESTATE OF FRANCIS
NEWTON SOUZA,

                    *Defendants*.

No. 07 Civ. 4086 (SAS)

ECF CASE

---

## MEMORANDUM OF LAW IN SUPPORT OF
## APPEARING DEFENDANTS' MOTION TO DISMISS

LYNN & CAHILL LLP
500 Fifth Avenue, 14th Floor
New York, NY 11010
(212) 719-4400

*Attorneys for Defendants Shelley Souza,
Jeffrey S. Greener and the Estate of Francis Newton Souza*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 2

1. Background ........................................................................................................... 2

2. The Pertinent Transactions .................................................................................. 3

    a. Sotheby's ...................................................................................................... 3

    b. Christie's ...................................................................................................... 6

    c. Bonhams ...................................................................................................... 6

3. Jaffri's Lack of Evidence Concerning the Paintings ........................................... 6

ARGUMENT ............................................................................................................................ 7

I. THE DEFAMATION CLAIMS IN THE COMPLAINT ARE FATALLY DEFECTIVE .... 8

  A. Jaffri Was Not Defamed Personally ..................................................................... 8

    1. The Statements Are Not "Of and Concerning" Jaffri ................................... 9

    2. The Statements Are Simply Not Defamatory .............................................. 9

    3. Falsity and Malice ...................................................................................... 11

    4. The Allegations Of Slander Are Inadequate .............................................. 11

  B. Jaffri Fails To State A Claim For Product Disparagement ................................. 12

    1. The Complaint Fails To Plead Special Damages ....................................... 12

    2. The Statements Are Privileged ................................................................... 14

    3. Jaffri Must Not Be Permitted To Escape The Requirement Of
       Pleading Special Damages In The Guise Of A Claim For "Unfair Competition
       By Product Disparagement/Injurious Falsehood" ..................................... 15

II. JAFFRI'S TORTIOUS INTERFERENCE CLAIMS ARE NOT VIABLE ....................... 17

  A. Because The Auction Houses Did Not Breach Their Contracts With Jaffri,
    TheTortious Interference With Contract Claim Fails. ........................................ 17

B. The Allegations In The Complaint Defeat The Claim Of Tortious Interference With Prospective Contractual Relationships And With Business Relationship ........................ 19

III. JAFFRI'S REMAINING CLAIMS ARE MERITLESS ............................................. 21

A. The GBL 349 Claim Fails To Allege The Existence of Statements Addressed To Comsumers ............................................................................................................. 21

B. The Common Law Unfair Competition Claim Fails To Allege The Requisite Misappropriation of Skills, Expenditures Or Labor. ........................................... 23

C. The Claim Of Prima Facie Tort Is Belied By The Specific Allegations In The Complaint Itself. ..................................................................................................... 23

IV. BECAUSE THE COMPLAINT DOES NOT ALLEGE THAT GREENER COMMITTED ACTIONABLE CONDUCT, THERE IS NOT VALID BASIS FOR THE CLAIMS AGAINST HIM .................................................................................................. 24

CONCLUSION .......................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Centennial Ins. Co. v. Seguros La Republica, S.A.*,
   1996 WL 304436
   16 (S.D.N.Y. Jun. 5, 1996) ...................................................................................................... 20

*Angio-Medical Corp. v. Eli Lilly & Co.*,
   720 F.Supp. 269 (S.D.N.Y.1989).............................................................................................. 12

*Aronson v. Weirsma*,
   65 N.Y.2d 592
   493 N.Y.S.2d 1006 (1985)......................................................................................................... 10

*Bemben v. Fuji Photo Film U.S.A., Inc.*
   2004 WL 1052973
   7 (S.D.N.Y. May 10, 2004).......................................................................................................... 11

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
   59 N.Y.2d 314
   464 N.Y.S.2d 712 (1983).......................................................................................................... 24

*Byam v. Collins*,
   111 N.Y. 143
   19 N.E. 75 (1888)....................................................................................................................... 14

*Carvel Corp. v. Noonan*,
   350 F.3d 6 (2d Cir.2003)............................................................................................................ 19

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)......................................................................................................... 7

*Chapadeau v. Utica Observer-Dispatch, Inc.*,
   38 N.Y.2d 196
   379 N.Y.S.2d 61 (1975) ............................................................................................................... 9

*Charles Atlas, Ltd. v. Time-Life Books, Inc.*,
   570 F. Supp. 150 (S.D.N.Y. 1983)............................................................................................ 13

*Church of Scientology Int'l v. Behar*,
   238 F.3d 168 (2d Cir. 2001)......................................................................................................... 8

*Clark Consulting, Inc. v. Financial Solutions Partners, LLC*,
   2005 WL 3097892
   4 (S.D.N.Y. Nov. 17, 2005) ...................................................................................................... 16

*County Vanlines, Inc. v. Experian Information Solutions, Inc.*,
   317 F. Supp 2d 383 (S.D.N.Y. 2004)................................................................ 15

*Dairy Stores, Inc. v. Sentinel Pub. Co.*,
   516 A.2d 220 (N.J. 1986).............................................................................. 14

*Diehl & Sons, Inc. v. International Harvester Co.*,
   445 F. Supp. 282 (E.D.N.Y. 1978) ................................................................. 17

*Discover Group, Inc. v. Lexmark Int'l, Inc*,
   333 F. Supp. 2d 78 (E.D.N.Y. 2004) .............................................................. 17

*Diversified Mktg., Inc. v. Estee Lauder, Inc.*,
   705 F.Supp. 128 (S.D.N.Y.1988)................................................................... 23

*Drug Research Corp. v. Curtis Publishing Co.*,
   7 N.Y.2d 435
   199 N.Y.S.2d 33
   (1960) 166 N.E.2D 319................................................................................. 12

*Esser v. T-Mobile USA, Inc.*,
   2004 WL 2004 WL 1276839
   1 (S.D.N.Y. Jun. 8, 2004) ............................................................................. 14

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*
   1992 WL 170559,
   *4 (S.D.N.Y. July 2, 1992) ........................................................................... 16

*Foster v. Churchill*,
   87 N.Y.2d 744
   642 N.Y.S.2d 583 (1996)................................................................................ 9

<u>*Francis v. Zavadill*</u>,
   2006 WL 3103324,
   3 (S.D.N.Y. Oct. 30, 2006) ...........................................................… ……2

*Gebhardt v. Allspect, Inc.*,
   96 F. Supp. 2d 331 (S.D.N.Y. 2000).................................................................. 7

*Greco v. Levy*,
   257 A.D. 209
   12 N.Y.S.2d 470 (1st Dep't 1939)................................................................... 25

*Gucci America, Inc. v. Duty Free Apparel, Inc.*,
   277 F. Supp. 2d 269 (S.D.N.Y. 2003)......................................................... 13, 15

*Hall v. City of White Plains*,
  185 F. Supp. 2d 293 (S.D.N.Y. 2003)..................................................................... 24

*Hawkins v. City of New York*,
  2005 WL 1861855
  18 (S.D.N.Y. Aug. 4, 2005) .................................................................................... 11

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995)................................................................................... 20

*Ideal Toy Corp. v. Kenner Prods. Div. of General Mills Fun Group, Inc.*,
  443 F.Supp. 291 (S.D.N.Y.1977).......................................................................... 23

*Johns v. Town of East Hampton*,
  942 F. Supp. 99 (E.D.N.Y. 1996) ............................................................................ 8

*Kirby v. Wildenstein*,
  784 F. Supp. 1112 (S.D.N.Y. 1992)........................................................... 12, 13, 16

*Konikoff v. Prudential Ins. Co.*,
  234 F.3d 92 (2d Cir 2000)......................................................................................... 9

*Kramer v.  Pollock-Krasner Found.*,
  890 F. Supp. 250 (S.D.N.Y. 1995).......................................................................... 18

*Labajo v. Best Buy Stores, L.P.*,
  478 F. Supp. 2d 523 (S.D.N.Y. 2007)....................................................................... 7

*Maurizio v. Goldsmith*,
  230 F.3d 518 (2d Cir.2000)..................................................................................... 21

*McGill v. Parker*,
  179 A.D.2d 98
  582 N.Y.S.2d 91 (1st Dep't 1992) ........................................................................ 25

*Medical Soc. of State of New York v. Oxford Health Plans, Inc.*
  15 A.D.3d 206
  790 N.Y.S.2d 79 (1st Dep't 2005) ........................................................................ 21

*National Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  175 F. Supp. 2d 489 (S.D.N.Y. 2000)..................................................................... 20

*NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*,
  87 N.Y.2d 614
  641 N.Y.S.2d 581 (1996).......................................................................................... 17

*Nevin v. Citibank, N.A.*,
    107 F. Supp. 2d 333 (S.D.N.Y. 2000).................................................................. 24

*PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*,
    818 F.2d 266 (2d Cir.1987)............................................................................ 19

*Redeye Grill, L.P. v. Restaurant Opportunities Center of N.Y., Inc.*,
    2006 WL 2726823
    5 (Sup. Ct. N.Y. Co. Aug 16, 2006) ............................................................... 21

*Ruder & Finn, Inc. v. Seabord Sur. Co.*,
    52 N.Y.2d 663 N.Y.S.2d 858 (1981) .............................................................. 15

*Sadowy v. Sony Corp. of Am.*,
    496 F. Supp. 1071 (S.D.N.Y. 1980)................................................................ 17

*Schwartz v. Washington Mutual, Inc.*,
    2007 WL 1288070
    2 (E.D.N.Y. May 1, 2007) ................................................................................ 7

*Treppel v. Biovail Corp.*,
    2005 WL 2086339
    7 (S.D.N.Y. Aug. 30, 2005) .............................................................................. 9

*Trepple v. Biovail Corp.*,
    2005 WL 2086339 at *3 .................................................................................. 25

*Twin Laboratories, Inc. v. Weider Health & Fitness*,
    900 F.2d 566 (2d Cir. 1990).......................................................................... 23

*U-Neek, Inc. v. Wal-Mart Stores, Inc.*,
    147 F.Supp.2d 158 (S.D.N.Y. 2001).............................................................. 19

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ............................................................ 12

*Williams v. American Foreign S. S. Corp*,
    65 F. Supp. 900 (S.D.N.Y. 1945).................................................................... 25

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>APPEARING DEFENDANTS' MOTION TO DISMISS</u>

Defendants Shelley Souza, ("Shelley Souza"), Jeffrey S. Greener ("Greener"), and the

Estate of Francis Newton Souza (the "Estate") (collectively, the "Appearing Defendants")[1],

respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ.

P. 12(b) for dismissal of the Complaint of Plaintiff, Azhar A. Jaffri ("Jaffri").

## <u>INTRODUCTION</u>

The late Francis Newton Souza ("Souza"), who died in 2002 at the age of 77, is

renowned as one of the most famous and influential artists of Indian origin of the 20th century.

The Appearing Defendants are his Estate and the Estate's co-administrators (Greener and Shelley

Souza, who is one of Souza's daughters).  Another of Souza's daughters, Francesca Souza, is the

remaining defendant.

The Complaint alleges that in March 2006, upon learning that Jaffri had consigned for

auction a total of eight paintings that Jaffri believed were painted by Souza (the "Paintings"),

Shelley Souza contacted the auction houses on behalf of the Estate to state her concerns about

the authenticity of the Paintings.  The Complaint alleges that the auction houses refused to sell

the Paintings as a result of these communications.

Based on this series of events, the Complaint alleges ten causes of action, all intentional

torts, against the Defendants: (1) tortious interference with contractual relationships; (2) tortious

interference with prospective contractual relationships; (3) tortious interference with business

relationships; (4) product disparagement/injurious falsehood; (5) unfair competition by

disparagement/injurious falsehood; (6) libel and libel per se as to Jaffri personally ; (7) slander

---

[1] Defendant Francesca Souza has not been served with process in this action and is not a party to this motion.

and slander per se as to Jaffri personally; (8) violation of New York General Business Law § 349 ("GBL 349"); (9) common law unfair competition; and (10) prima facie tort. For the reasons set forth herein, none of these causes of action constitute a claim upon which relief can be granted.

Moreover, assuming for the sake of argument that one or more of the claims were sufficient to survive this motion to dismiss, the Complaint would nevertheless require dismissal as to Greener. That is because the Complaint fails to allege that Greener said or did anything that would render him liable for any of the ten claims of intentionally tortious conduct. In fact, the only time Greener's name is even mentioned in the Complaint (other than for purposes of identification) is as a passive recipient of some of the allegedly actionable communications.

## STATEMENT OF FACTS[2]

1.    **Background**

Souza was born in Goa, India in 1924. He died in Mumbai in 2002. "During his life and since his death, Souza has become one of the most venerated Indian artists of the 20th century. His career had a seminal influence on modern Indian artists." (Complaint ¶ 11.)

Shelley Souza is one of Souza's daughter's, and a beneficiary of the Estate, as well as its co-administrator. Greener is a partner in the law firm Rivkin Radler LLP in Uniondale, New York. He is a co-administrator of the Estate in his professional capacity and has no interest in the Estate. The Complaint does not allege otherwise.

Jaffri alleges that he "is a collector of modern Asian art, including paintings and other works by Souza." (Complaint ¶ 4.)

---

[2] In accordance with the governing standard of review under Rule 12(b), all facts recited from this section are drawn from the Complaint (which is annexed to Declaration of John R. Cahill ("Cahill Decl." as Exhibit A), documents attached to or incorporated by reference in the Complaint and facts of which judicial notice may be taken. *Francis v. Zavadill*, 2006 WL 3103324, *3 (S.D.N.Y. Oct. 30, 2006).

2.    **The Pertinent Transactions**

a.    Sotheby's

In November 2005, Jaffri consigned three of the Paintings (catalogued as Lots 104, 106 and 111) to Sotheby's for auction in New York on March 29, 2006. (Complaint ¶ 31-32.)  At some point prior to the auction, Shelley Souza became aware of the anticipated sale.  Sotheby's had previously contacted the Estate for help in authenticating works allegedly created by Souza. (*See, e.g.,* Cahill Decl. Ex. B) (a Sotheby's e-mail of May 5, 2005 asking for Francesca Souza's opinion on a work.)   Upon reviewing the catalogue, including reproductions of the Paintings, looking at certain of the Paintings in New York, and discussing the Paintings with other beneficiaries familiar with Souza's work, the Estate determined that they were not authentic Souzas.

After contacting Robin Dean and/or Anu Ghosh-Mazumadar of Sotheby's, Shelley Souza confirmed her conclusion concerning Lot 111 in writing on March 24, 2006  as follows:

> Further to our meeting yesterday, I am writing to confirm that, in the opinion of the Estate of Souza, lot #111 in the forthcoming March 29, 2006 sale at Sotheby's in New York, which is attributed to Souza, was not made by him. As we discussed in front of the painting, the line, brushwork, composition and signature are not consistent with his work; while these elements varied over the 60 years he produced art, always remained recognizably and distinctly "Souza." This fact was highlighted by the surrounding paintings in the gallery, made by my father, spanning some 40 years: all of them demonstrated the consistency of image making I'm referring to. There is also the troubling "titling" of the painting. The consignor claims that my father named the painting as he was handing it over. But this is also not consistent with my father's personality. Souza was careful in titling his painting and the absence of a title is as significant as a work that has been titled. In the case of this painting, even if Souza had suddenly been inspired to name that painting as he was delivering it to the consignor, his impulsive nature would have compelled him to immediately pick up a brush or other writing instrument and inscribe the title on the back of the work.

> At this time, we must request that lot #111 be withdrawn from
> auction. If you choose to auction the work, potential buyers must
> be notified before its purchase that the estate will not authenticate
> this work. [Complaint ¶ 51.]

Lot 111, a work purportedly titled "Time Will Tell" (despite the lack of title on the

reverse, per Souza's usual practice) was particularly troubling, because there is an indisputably

genuine Souza painting with that title that is virtually identical to the Painting consigned by

Jaffri.  An image of the original "Time Will Tell" is Cahill Decl. Exhibit C.  The copy consigned

by Jaffri is Exhibit D.

Shelley Souza wrote similar letters with respect to lots 104 and 106.  (Complaint ¶ 51.)

With respect to lot 104, she had a particularly good reason to be concerned:  the Unicorn Gallery

in Karachi, Pakistan had asked the Estate in February 2006 to authenticate a replica of the lot,

but refused to provide the evidence necessary to do so.  (*See* Shelley Souza's March 28, 2006

letter to Sotheby's, Cahill Decl. Ex. E.)

 Four incontrovertible facts are apparent from the text of these letters and the

contemporaneous communications that the Complaint does not quote.  *First,* the Estate had a

solid basis for questioning the authenticity of the Paintings.  As the letter notes, there were other

works attributed to Souza that were up for sale at the auction—*nine* others in all, not including

the Paintings here—and she did not question the authenticity of any of them. (The relevant pages

from the Sotheby's catalogue are Cahill Decl., Ex. F.) The Paintings stand out because they

differed from the authentic works up for auction.[3]

*Second*, there is nothing in the letters that can be construed as a personal attack on Jaffri

(or anyone else).  They do not even identify the consignor.  They are dispassionate analyses of

the Paintings.  Crucially, at the time the allegedly defamatory communications were written,

---

[3] Likewise, the Paintings comprised three of the twenty five Souza works listed in the Christie's
catalogue and two of the ten listed in the Bonhams catalogue.  (Cahill Decl. Exs. G and H.)

4

neither Shelley Souza nor anyone connected with the Estate knew who the consignor was.
Several communications from Shelley Souza show that, in fact, she incorrectly believed the
consignor to be a man named Wahab Jaffer.   She did not learn about Jaffri's identity until at
least March 28, 2006.  (Cahill Decl. Ex. I.)

    *Third*, there is no allegation that the letters were disseminated more widely.  The
catalogue does not give any information about the reasons the Paintings were withdrawn, and no
information was provided elsewhere. The Complaint does not allege, except in a conclusory
fashion without factual basis, that any third-parties other than the Sotheby's employees ever saw
the e-mails or spoke to Shelley Souza about the Paintings.

    *Fourth*, there is nothing in the letters demanding that the auction houses withdraw the
Paintings from the auction.  The letters request that they do so, or in the alternative inform
prospective purchasers that the Estate would not authenticate the Paintings.  In fact, Shelley
Souza suggested to Sotheby's that it consult with a well-known conservator, Harriet Irgang, to
get an additional opinion.  (Cahill Decl. Ex. J.)  Sotheby's did in fact arrange to have Ms. Irgang
look at the Paintings.

    The significance of this point is highlighted by the letter from Robin Dean of Sotheby's
to Jaffri concerning the Paintings, which highlights the disclosure to potential bidders and not
any obligation to the Estate: "if we offer these works for auction then we would be legally
obligated to notify all potential buyers at the time of the auction that the estate will not
authenticate the work." (Complaint ¶ 48.)   Moreover, Sotheby's asked Jaffri for evidence
confirming the authenticity of the Paintings, and he was unable to do so.  (Complaint ¶ 50.)

        b.    <u>Christie's</u>

The pertinent auction at Christie's occurred on March 30, 2006.  As with Sotheby's, Shelley Souza first contacted Christie's concerning the Paintings on March 24, 2006, before she knew Jaffri's identity.  (Cahill Decl. Ex. K.)  As with Sotheby's, she suggested that Christie's obtain an independent opinion concerning the Paintings. (Cahill Decl. Ex. L) ("Because the authenticity of lot 115 is more difficult to interpret by myself, I suggest Christie's uses a trusted second opinion . . .")   Based on its internal review process, Christie's withdrew the Paintings in question (lots 115, 116 and 147) from the auction.  No information was provided to potential purchasers about the reasons the paintings were withdrawn.

The Complaint alleges that Jaffri tried to consign two additional Paintings to Christie's in London for sale at an auction dated October 12, 2006.  Without any input from Shelley Souza or any of the Defendants, employees in Christie's London office contacted their colleagues in New York, and discovered the questions concerning the authenticity of the New York Paintings.  The London office decided on its own initiative to withdraw the Paintings. (Complaint ¶¶ 68-73.)

        c.    <u>Bonhams</u>

The pertinent auction at Bonhams in London occurred on April 6, 2006.  The communications with Bonhams followed the same pattern as with the other auction houses. Shelley Souza expressed her concerns about the Paintings.  (Cahill Decl. Ex. M.)  Bonhams determined that the Paintings should be withdrawn, and no information was provided to the public about the reasons for the withdrawal.

**3.**      **<u>Jaffri's Lack of Evidence Concerning the Paintings</u>**

The Estate offered to review information concerning the authenticity of the Paintings that Jaffri claimed to have.  (*See, e.g.*, letter of attorneys for the Estate to Jaffri's then-counsel dated

6

May 23, 2006, Cahill Decl. Ex. N.)  Jaffri agreed to meet but refused to provide any of his

"evidence" before the meeting for the Estate to evaluate.  In fact, he had *no* information bearing

directly on any of the Paintings consigned to the auction houses and now the subject of this

lawsuit.  (*See* Ex. O, letters from the Estate's counsel to Jaffri's then-counsel dated July 20 and

August 10, 2006.)

## ARGUMENT

 Although as a general matter, the well-pleaded allegations in a complaint must be

regarded as true on a motion to dismiss, that does not immunize the complaint from scrutiny.

For example, "'[c]onclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss.'"  *Gebhardt v. Allspect, Inc.*, 96 F.

Supp. 2d 331, 333 (S.D.N.Y. 2000) (quoting 2 James Wm. Moore et al., MOORE'S FEDERAL

PRACTICE § 12.34[1][b] (3d ed.1997)).

 For purposes of a Rule 12 motion, the complaint is deemed to include documents that are

attached or incorporated by reference, as well as matters that are subject to judicial notice.

*Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007).  In addition, "the

court may consider . . . 'documents either in plaintiff['s] possession or of which plaintiff[ ] had

knowledge and relied on in bringing suit.'"  *Schwartz v. Washington Mutual, Inc.*, 2007 WL

1288070, *2 (E.D.N.Y. May 1, 2007) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147,

153 (2d Cir. 2002)).  The Court is not required to accept allegations in the complaint that are

contradicted by such documents.  *Labajo*, 478 F. Supp. 2d at 528.  The complaint's failure to

quote or annex a particular document in this category does not prevent the Court's consideration

of it on a motion to dismiss:  "It is well established that when a 'plaintiff fails to introduce a

pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his

motion attacking the pleading.'" *Johns v. Town of East Hampton*, 942 F. Supp. 99, 104

(E.D.N.Y. 1996) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and

Procedure: Civil 2d § 1327, at 762-63 (2d ed.1990)).

The Complaint makes clear that Shelley Souza's allegedly defamatory statements are the

essence of every single one of Jaffri's claims for relief (including the claims for tortious

interference, common law unfair competition, violation of GBL 349 and prima facie tort.  As

addressed in detail below, a defamation plaintiff must plead, among other things, that the

statements in question were "of and concerning" him and are likely to be understood as

defamatory by the ordinary person.  These elements, in particular, "should ordinarily be resolved

at the pleading stage."  *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001).

According to Judge Robert Sack, "[t]he trial court may therefore at the earliest stages make

sound decisions as to issues relating to the communication of which complaint is made."  2

Robert D. Sack, Sack On Defamation, § 16.2.1, at 16-3 (3d ed. 2002).

I.    **THE DEFAMATION CLAIMS IN THE
      COMPLAINT ARE FATALLY DEFECTIVE**

There are four direct claims sounding in defamation in the Complaint.  Two of them

(Counts VI and VII) concern allegations that Jaffri was defamed personally.  The others (Counts

IV and V) allege product disparagement with respect to the Paintings.  For various reasons, none

of these claims is legally viable.

A.    **Jaffri Was Not Defamed Personally**

Jaffri appears to be alleging that he was defamed because the statements he cites in the

Complaint disparaged his basic professional character or integrity.  Indeed, such an allegation, if

well pleaded, could support a defamation claim.  *E.g. Treppel v. Biovail Corp.*, 2005 WL

2086339, *7 (S.D.N.Y. Aug. 30, 2005).  But Jaffri's claim fails because it does not plead several crucial elements adequately.

In order to state a claim for defamation, the plaintiff must establish that the statements in question were "(1) of and concerning [plaintiff], (2) likely to be understood as defamatory by the ordinary person, (3) false, and (4) published with actual malice, that is, either knowledge of falsity or reckless disregard of the truth."[4]  *Church of Scientology*, 238 F.3d at 173.  As noted above, the first two elements are particularly susceptible of resolution at the pleading stage.  *Id.*

1.    The Statements Are Not "Of and Concerning" Jaffri

By definition, the statements cannot be "of and concerning" Jaffri because the Appearing Defendants in general and Shelley Souza in particular either did not know who the consignor was or thought he was Wahab Jaffer and not Jaffri.  Indeed, Shelley Souza did not even know about Jaffri's existence at the time she made the statements.

2.    The Statements Are Simply Not Defamatory

In order to be defamatory, statements must '"expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'"  *Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 587 (1996) (citations omitted).

---

[4] The actual malice standard applies if Jaffri is a public figure.  If he is a private figure, the "gross irresponsibility" standard first articulated in *Chapadeau v. Utica Observer-Dispatch, Inc.,* 38 N.Y.2d 196, 199, 379 N.Y.S.2d 61, 64 (1975), applies. *Konikoff v. Prudential Ins. Co.*, 234 F.3d 92, 101-02 (2d Cir 2000).  It would appear that Jaffri considers himself at least a limited public figure in the realm of modern Indian art.  (Complaint ¶¶ 7, 21-22.)  But the distinction is not crucial for at least two reasons.  First, because his defamation claims fail for other reasons, there is no need for the Court to reach the issue.  Second, Shelley Souza (the only Appearing Defendant who is accused of making the statements), acted without actual malice or gross irresponsibility, satisfying both standards.

The Complaint alleges in conclusory fashion that the statements were defamatory (Complaint ¶ 131-32, 141-42), but fails to identify the allegedly defamatory words that would expose him to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and deprive him of their friendly intercourse in society. That failure is inevitable in view of the fact that there are no defamatory statements. Since the sole subject matter is the Paintings (as opposed to, say Jaffri's personal life or general business dealings), the only conceivable defamatory meaning he could even suggest is that the statements accuse him of deliberately trying to sell forgeries.

In reviewing a statement for allegedly defamatory meaning, "[t]he words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." *Aronson v. Weirsma*, 65 N.Y.2d 592, 594, 493 N.Y.S.2d 1006, 1007 (1985). But there is nothing in any of the statements that even suggests any such meaning. They are analyses of the Paintings, and the reasons Shelley Souza and the Estate did not believe them to be authentic Souzas. The statements do not suggest that Jaffri was acting other than in the good faith (although mistaken) belief that he was correct. As a result, the statements, as a matter of law, are not defamatory.

The Complaint alleges that Jaffri met Souza in Pakistan on several occasions in the late 1980s and early 1990s (Complaint ¶ 24), and that Souza gave him two drawings and a sketch as gifts (*id.* ¶ 27). But these works were not among the Paintings. He does not identify the provenance of the Paintings (*i.e.*, whether they were previously owned by galleries, individual collectors or otherwise). Accordingly, there is no issue concerning the nature of the works he allegedly received from Souza. The statements, as alleged in the Complaint, suggest that Jaffri

purchased works that turned out not to be authentic Souzas. There is nothing defamatory – or even unusual – in that suggestion.  The purchase and sale of forgeries that are mistakenly believed to be authentic is unfortunately all too common in the present-day art market.

### 3. Falsity and Malice

With respect to the claims of defamation against Jaffri (as opposed to the product disparagement claims) falsity is a non-issue.  As detailed immediately above, whether or not the Paintings are forgeries, there were no statements that Jaffri engaged in any sort of wrongdoing in connection with the Paintings.  Thus, there are literally no relevant statements concerning Jaffri's business character or integrity as to which the truth or falsity is at issue.  The same is true with respect to actual malice (or gross irresponsibility, as applicable).  The same is also true with respect to the Defendants' qualified privileges.  Because these issues are more relevant with respect to the alleged product disparagement, they are addressed there.

### 4. The Allegations Of Slander Are Inadequate

"Failure to state the particular person or persons to whom the allegedly slanderous or libelous comments were made as well as the time and manner in which the publications were made warrants dismissal."  *Hawkins v. City of New York*, 2005 WL 1861855, *18 (S.D.N.Y. Aug. 4, 2005).  *See also Bemben v. Fuji Photo Film U.S.A., Inc.* 2004 WL 1052973, *7 (S.D.N.Y. May 10, 2004).

After citing to the written communications that comprise the libel claim, the Complaint attempts to make out a slander claim by reciting in conclusory fashion that "[o]n information and belief, Defendants orally made these same or similar defamatory statements to employees and/or agents of Sotheby's."  (Complaint ¶ 52.)  It makes the same allegations concerning Christie's and Bonhams.  (Complaint ¶¶ 57, 62).  In other words, the Complaint fails to identify the time, place,

11

content and recipient(s) of the allegedly slanderous statements.  Accordingly, the slander claim is

not well pleaded, and warrants dismissal.  Of course, to the extent that the slander claim is

simply realleging the contentions concerning the libel claim, it is barred for the same reasons as

the libel claim.

       **B.**       <u>**Jaffri Fails To State A Claim For Product Disparagement**</u>

This Court has held that

> The phrase "product disparagement" refers to words or conduct
> which tend to disparage or reflect negatively on the quality,
> condition or value of a product or property.  *See* 44 N.Y.Jur.
> Defamation and Privacy § 175 at 189-90.   In order to prevail on
> his claim of product disparagement, plaintiff must establish the
> following four elements:  (1) the falsity of Wildenstein's
> statements; (2) publication to a third person; (3) malice; and (4)
> special damages.  *Angio-Medical Corp. v. Eli Lilly & Co.,* 720
> F.Supp. 269 (S.D.N.Y.1989) (applying New York law);  *Drug
> Research Corp. v. Curtis Publishing Co.,* 7 N.Y.2d 435, 440, 199
> N.Y.S.2d 33, 37, 166 N.E.2d 319, 323 (1960).

*Kirby v. Wildenstein*, 784 F. Supp. 1112, 1115 (S.D.N.Y. 1992).  Because the most

glaring defect in the Complaint in this respect is the failure to adequately plead special damages,

that issue will be addressed first.

       1.       <u>The Complaint Fails To Plead Special Damages</u>

"Special damages are an integral part of a product disparagement claim.  Special damages

are pecuniary losses (including loss of sales) resulting from a defendant's allegedly wrongful

conduct."  *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 406

(E.D.N.Y. 2004).  "Allegations of special damage 'must be fully and accurately stated. If the

special damage was a loss of customers ... the persons who ceased to be customers, or who

refused to purchase, must be named....'"  *Id.*  (quoting *Drug Research Corp.*, 7 N.Y.2d at 441,

199 N.Y.S.2d at 37).  "The rule articulated in *Drug Research*-that lost customers must be *named*

where the special damages claimed are lost sales-is well-entrenched and has been consistently

followed." *Kirby v. Wildenstein*, 784 F. Supp. at 1117 (emphasis in original).  It remains the

rule.  *Gucci America, Inc. v. Duty Free Apparel, Inc.*, 277 F. Supp. 2d 269, 277 (S.D.N.Y.

2003).[5]  There is no question that the harm alleged by Jaffri is lost sales.  (Complaint ¶ 121.)

Accordingly, the failure to identify a single lost customer is fatal to the claim.

> Not only is the Complaint unable to identify lost customers, it is unable to allege that any
potential consumers even learned about the dispute over the authenticity of the Paintings.  The
only communications identified in the Complaint were among the Defendants, Jaffri  and the
auction houses.  As noted, the catalogues in question did not identify the reasons the Paintings
were withdrawn from auction, and there is no allegation that the reasons were otherwise
disclosed to a wider audience.  The Court in *Kirby v. Wildenstein* relied on a remarkably similar
set of facts (the inability of the plaintiff to allege in more than a conclusory way that the
allegedly disparaging opinion about the condition of a work of art was disseminated beyond the
plaintiff, defendant and third party auction house) to dismiss a claim of product disparagement.
The failure to make the link between the disparaging remarks and the potential purchasers
"persuades us that plaintiff has failed to demonstrate that any losses he sustained were causally
related to the allegedly disparaging statements." 784 F. Supp. at 1118.  The same result is
dictated here.

---

[5] There appears to be one limited exception to the rule that lost customers must be named:  where the market is so broad and amorphous that identifying lost customers by name is impossible. The one time that exception has been applied under New York law was in a case now almost 25 years old that concerned a disparagement contained in a mass market book directed to devotees of Charles Atlas's bodybuilding products.  *Kirby v. Wildenstein*, 784 F. Supp at 1117 (citing *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150, 156 (S.D.N.Y. 1983).  Clearly the market for Souza's works – which sell in the tens of thousands of dollars and upwards – is far smaller and more discrete than the potential consumers of mass market bodybuilding products.

2.    The Statements Are Privileged

"Insofar as defenses to product disparagement are concerned, a qualified privilege should exist wherever it would exist in a defamation action." *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 516 A.2d 220, 226 (N.J. 1986).  Under New York law:

> A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contains criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation.

*Byam v. Collins*, 111 N.Y. 143, 150, 19 N.E. 75, 75 (1888).  *See also, e.g.*, *Esser v. T-Mobile USA, Inc.*, 2004 WL 2004 WL 1276839, *1 (S.D.N.Y. Jun. 8, 2004) (quoting and relying on *Byam v. Collins*).  Shelley Souza, as the co-administrator of the Estate, owes the Estate a fiduciary duty, which includes, among many other responsibilities, the duty to preserve and maximize its assets.[6]  All of the Defendants owe at least a moral duty to call attention to forged art works when they encounter them, especially where Souza is concerned.  The auction houses certainly owe a duty to art-buying public to spot and take action against forgeries.  Thus the statements are qualifiedly privileged.  Jaffri cannot seriously claim otherwise.  Forgery is universally recognized as a significant problem in the art industry, and persons who stick their necks out to point it out are doing a public service.

Although the privilege can be overcome by proof of malice, "[a] plaintiff does not make the requisite showing of malice simply by conclusorily labeling the defamation malicious." *County Vanlines, Inc. v. Experian Information Solutions, Inc.*, 317 F. Supp 2d 383, 390

---

[6] Greener owes the same duties, but since Shelley Souza made all of the relevant statements, the focus is on her.

(S.D.N.Y. 2004).  Because Jaffri's allegations of malice are conclusory, he cannot overcome the Defendants' privilege.

Moreover, it is clear that the Defendants acted without malice.  As detailed above, the Estate carefully considered the evidence submitted by Jaffri which was objectively inadequate. Jaffri was likewise unable to convince the auction houses based on that evidence that the Paintings were genuine.  He has only himself to blame for that failure.

      3.      Jaffri Must Not Be Permitted To Escape
                   The Requirement Of Pleading Special
                   Damages In The Guise Of A Claim For
                   "Unfair Competition By Product Disparagement/Injurious Falsehood"

The threshold question concerning Jaffri's claim of "unfair competition by product disparagement/injurious falsehood" is whether such a tort even exists.  Common law unfair competition and product disparagement/injurious falsehood are recognized causes of action, and Jaffri has pleaded both separately in addition to the hybrid.  The existence of a hybrid tort that has a life independent from its components is far less clear.

The Court in *Gucci America, Inc. v. Duty Free Apparel, Inc.*, 277 F. Supp. 2d 269 (S.D.N.Y. 2003), addressed that precise question.  Relying on the opinion of the New York Court of Appeals in *Ruder & Finn, Inc. v. Seabord Sur. Co.,* 52 N.Y.2d 663, 439 N.Y.S.2d 858 (1981), it held that an unfair competition claim requires the "'misappropriation of the business' organization or its expenditure of  labor, skill, and money.'"  277 F. Supp. 2d at 275 (citations omitted).  On the other hand, where, as here, "'the statement is confined to denigrating the quality of the business' goods or services,'" product disparagement, rather than unfair competition "is the proper cause of action."  *Id.* at 275-76 (citations omitted).

The distinction between a claim of product disparagement and a supposed claim of unfair competition by product disparagement is crucial.  The former has strict pleading requirements,

including malice, absence of privilege, and special damages. *E.g.*, *Kirby v. Wildenstein*, 784 F. Supp. at 1115. As demonstrated above, Jaffri has failed to plead adequately some or all of the elements of product disparagement. The only conceivable reason to plead a separate claim of product disparagement – ***based on the same statements*** – in the guise of unfair competition is as an end run around those pleading requirements. Otherwise, the claim of unfair competition by product disparagement should be dismissed simply because it is identical to the defective product disparagement claim.

Notably, the few cases other than *Gucci America* that have addressed that have referred to unfair competition by product disparagement (albeit without extended analysis) have not relaxed the pleading requirements for product disparagement, however designated. *See, e.g., Clark Consulting, Inc. v. Financial Solutions Partners, LLC*, 2005 WL 3097892, *4 (S.D.N.Y. Nov. 17, 2005); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.* 1992 WL 170559, *4 (S.D.N.Y. July 2, 1992).[7] Significantly, neither the *Clark Consulting* nor *Fashion Boutique* Courts were faced a pleading that alleged separate claims of product disparagement and unfair competition by product disparagement. Regardless of the taxonomy they used, they offer no support for the contention that the two are separate torts, at least when the claims are premised on the identical allegedly defamatory statements. Accordingly, this claim warrants dismissal.

In their pre-motion letter submitted pursuant to Judge Scheindlin's Individual Rules (Cahill Decl. Ex. P), Jaffri's attorneys stated quite candidly that they believe the tort of unfair competition by product disparagement (in contrast to the tort of product disparagement as such) does not require that special damages be pleaded. In view of the authorities cited above, they are

---

[7] *Cf. Boulé v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (unfair competition by disparagement is an alternative label for defamatory injury to business reputation. As addressed above, none of the statements at issue could conceivably have damaged Jaffri's business (or personal) reputation.

incorrect.  Morever, the two cases they cite do not support that conclusion.  One, *Sadowy v. Sony Corp. of Am.,* 496 F. Supp. 1071 (S.D.N.Y. 1980), did not concern a claim of product disparagement at all, but rather a claim by a former employee that his former employer had defamed him personally.  The other, *Diehl & Sons, Inc. v. International Harvester Co.*, 445 F. Supp. 282, 292 (E.D.N.Y. 1978), stated that while the complaint was "plainly deficient" in its failure to plead special damages, the plaintiff would be given leave to replead.  It certainly did not dispense with the requirement of pleading special damages in a claim sounding in product disparagement.

II.    **JAFFRI'S TORTIOUS INTERFERENCE CLAIMS ARE NOT VIABLE**

    A.    **Because The Auction Houses Did Not**
           **Breach Their Contracts With Jaffri, The**
           **Tortious Interference With Contract Claim Fails**

"In order to state a claim for tortious interference with contract under New York law, plaintiffs must demonstrate " the existence of a valid contract between the plaintiff[s] and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, ***actual breach of the contract***, and damages resulting therefrom.'" *Discover Group, Inc. v. Lexmark Int'l, Inc*, 333 F. Supp. 2d 78, 83 (E.D.N.Y. 2004) (emphasis added) (citations omitted).  *See also NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 620-21 641 N.Y.S.2d 581, 584 (1996). Jaffri's tortious interference claim fails because the auction houses did not breach their contracts with Jaffri.

The standard form contracts that Jaffri almost certainly signed with Christie's and Sotheby's are reprinted in 1 Ralph E. Lerner & Judith Bresler, ART LAW, pp. 399-431 (3d ed.

2005) and are attached as Exhibits Q and R to the Cahill Declaration.[8]  The preamble to the

Sotheby's consignment agreement states that the Standard Conditions of Sale and Terms of

Guarantee are incorporated by reference.  Paragraph 4 of the Conditions of Sale states that

Sotheby's "reserve[s] the right to withdraw any property before the sale and shall have no

liability whatsoever for such withdrawal."  Paragraph 10 of the consignment agreement adds that

Sotheby's "may withdraw any property at any time before sale if in our sole judgment (a) there is

any doubt as to its authenticity or attribution . . ."  "Sotheby's and Christie's have an independent

interest in not selling forgeries because of potential damage to their reputations, not to mention

legal liability." *Kramer v.  Pollock-Krasner Found.*, 890 F. Supp. 250, 256 (S.D.N.Y. 1995).

The Christie's consignment agreement also incorporates the Conditions of Sale.

Paragraph 3(i) of the latter states that the firm has the "absolute and sole discretion" to, among

other things, "withdraw or divide any lot."  Paragraph 6(d) of the consignment agreement

provides that "Christie's reserves the right to withdraw any property at any time before sale if in

Christie's sole judgment (i) there is doubt as to its attribution or authenticity . . ."

Neither Shelly Souza nor any of the other Defendants made any decisions for the auction

houses.  Sotheby's, Christie's and Bonhams each weighed the evidence before them and decided

not to sell the Paintings at auction.  The quoted contractual language makes clear that the auction

houses had the authority to do what they did, and more important, that their withdrawal of the

Paintings was *per se* not a breach of the consignment agreements with Jaffri.  In the absence of a

breach of contract, Jaffri's claim for tortious interference with contract fails as a matter of law.

---

[8] Of course, if the actual contracts are different, Jaffri is free to submit copies with his responsive papers.  In any event, the contracts are at issue on this motion because they are incorporated by reference in the Complaint.

**B.    The Allegations In The Complaint Defeat
The Claim Of Tortious Interference With Prospective
<u>Contractual Relationships And With Business Relationships</u>**[9]

The elements of tortious interference with prospective business or contractual relationships are: (1) that the plaintiff had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) that the defendant's interference caused injury to the relationship. *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir.2003). The key element for present purposes is the third: the requirement that the defendant acted solely out of malice or used dishonest, unfair, or improper means.

The New York Court of Appeals has recently held with respect to the "dishonest, unfair, or improper means" element that "the defendant's conduct must amount to a crime or an independent tort." *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362 (2004). The only allegedly tortious conduct pleaded in the Complaint are the statements by Shelley Souza, and, for the reasons addressed above, those allegations fail to state a claim for an actionable tort.

As an alternative to criminal or tortious conduct, a plaintiff may establish that the defendant acted solely from malice. Self-interest will defeat a claim of malice. *U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F.Supp.2d 158, 177 (S.D.N.Y. 2001) ("if a defendant's interference is intended (at least partly) to advance its own interests, the claim will fail unless the means employed include criminal or fraudulent conduct."). The Court need look no further than the factual allegations in the Complaint to determine that there is no viable tortious interference

---

[9] The Complaint pleads these as two different claims, but in fact they are merely different labels for the same claim. *See PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 269 (2d Cir.1987).

claim based on malice.  At Paragraph 74, it alleges that "a purpose of Defendants' acts was to advance unlawfully their own interests."  In the following paragraphs (*id.* ¶¶ 75-76), it elaborates that the interest was to enhance the value of their collection of Souza's works and/or to collect revenue from the practice of authenticating other Souza works.  These allegations clearly assert that the Defendants were motivated by self-interest.  They therefore defeat the tortious interference claim.

In their pre-motion letter (Cahill Decl. Ex. P), Jaffri's counsel asserts that they are merely pleading in the alternative, as permitted by the Federal Rules of Civil Procedure.  But that is not accurate.  A plaintiff may plead alternate theories of relief based on the same facts, but may not plead alternative *facts* that directly contradict each other.  *National Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 175 F. Supp. 2d 489, 492 (S.D.N.Y. 2000).  *See also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal of complaint based on allegations that were contradicted by "more specific allegations" in the complaint); *American Centennial Ins. Co. v. Seguros La Republica, S.A.*, 1996 WL 304436, *16 (S.D.N.Y. Jun. 5, 1996) ("Allegations are not well pleaded if they are 'made indefinite or erroneous by other allegations in the same complaint. . .'") (citations omitted).

Jaffri has pleaded without equivocation that the defendants were motivated by self-interest.  It is legally (and factually) impossible to base a claim on a set of facts that requires precisely the opposite.

III.     **JAFFRI'S REMAINING CLAIMS ARE MERITLESS**

A.     **The GBL 349 Claim Fails To Allege The
Existence of Statements Addressed To Consumers**

GBL 349 bars "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state ...."[10]  The elements of the claim that a plaintiff must allege are "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000) (per curiam).

Jaffri's claim of consumer harm is premised exclusively on the dissemination of allegedly false information to the three auction houses.  Within the past year, the New York County Supreme Court has held *per se* that the "dissemination of false information  . . . does not meet the standard for broad consumer protection required under the statute."  *Redeye Grill, L.P. v. Restaurant Opportunities Center of N.Y., Inc.*, 2006 WL 2726823, *5 (Sup. Ct. N.Y. Co. Aug 16, 2006).  But this Court need not go that far in order to dismiss Jaffri's GBL 349 claim.

The first element of a successful GBL 349 claim is that the alleged conduct be directed at consumers.  Here, the alleged false statements were not only not directed to consumers – they were directed to the auction houses – but there is no factual allegation that they even reached consumers.  To the contrary, the auction catalogues did not specify the reasons the Paintings were withdrawn from auction.  A conclusory allegation that consumers were harmed by statements of which they were unaware fails *ipso facto* fails to state a claim.  *Medical Soc. of State of New York v. Oxford Health Plans, Inc.* 15 A.D.3d 206, 207, 790 N.Y.S.2d 79, 80 (1st Dep't 2005) (conduct that is not directed to consumers cannot support GBL 349 claim).

------

[10] As a result, the Paintings that were consigned to Bonhams and to Christie's in London are outside the protection of the statute *per se.*

Ironically, the only way that the public has learned about Shelley Souza's statements is though Jaffri's publication of them in his publicly-filed Complaint.

Moreover, even if consumers heard through "word-of mouth" Defendants' assertions that the Paintings were not authentic, that would still not sustain Jaffri's claim. A claim of "a general loss of good will from consumers who may hear through word-of-mouth that [the Works] are inauthentic" is a claim of harm to Jaffri – rather than to consumers – and is subject to dismissal under Rule 12(b)(6). *Gucci America*, 277 F. Supp. 2d at 274.

Moreover, the alleged consumer "harm" is premised on purported deceptive statements that the Defendants did not even make. Specifically, the Complaint (¶ 156) accuses the Defendants of deceptively stating to the public that the Estate had the sole authority to authenticate Souza's works, and that "there are fewer works of Souza from the 1980s and 1990s than there actually are." But there are no alleged writings reflecting that either of these statements were made to the public (or to the auction houses, for that matter), and no allegations of oral communications between the Defendants and would-be purchasers of the Paintings. In fact, at each of the auctions from which the Paintings were withdrawn, Souza works owned by third parties were sold without a demand from the Estate that they be authenticated by the Estate. It is therefore obvious that the Defendants never insisted in words or by conduct that the Estate has a monopoly on authenticating Souza's works. The only right upon which the Estate insists is the right to opine when it believes in good faith that there is a question of authenticity concerning a particular work. That right, to the extent it concerns consumers, is in the public good.

**B.    The Common Law Unfair Competition Claim Fails To Allege
The Requisite Misappropriation of Skills, Expenditures Or Labor**

The governing standard concerning a claim of common law unfair competition in New

York was succinctly summarized in *Gucci America*, 277 F. Supp. 2d at 275 as follows:

> Under New York law as enunciated in *Ruder & Finn,* unfair
> competition "does not have boundless application as a remedy for
> unfair trade practices .... Rather, ... the primary concern in unfair
> competition is the protection of a business from another's
> misappropriation of the business' organization or its expenditure of
> labor, skill, and money." 439 N.Y.S.2d 858, 422 N.E.2d at 522
> (citations omitted; internal quotations omitted) . . . While the tort
> of unfair competition encompasses more than merely trying to pass
> off one's goods as those of another, ***it is still limited to
> "misappropriation of the skill, expenditures, and labor of
> another."*** *Weight Watchers,* 744 F.Supp. at 1283; *accord
> Diversified Mktg., Inc. v. Estee Lauder, Inc.,* 705 F.Supp. 128, 131
> (S.D.N.Y.1988); *Ideal Toy Corp. v. Kenner Prods. Div. of General
> Mills Fun Group, Inc.,* 443 F.Supp. 291, 305-09 (S.D.N.Y.1977).
> [emphasis added]

To describe the Complaint's substantive allegation of common law unfair

competition as "conclusory" would be generous. It states, "Defendants' actions described above

constitute unfair competition at common law." (Complaint ¶ 160.) Jaffri does not even bother to

try to apply the allegations in the Complaint to the governing legal standard, there is nothing in

the body of the Complaint identifying efforts by the Defendants to sell their goods as Jaffri's, or

of their misappropriation of his labor, skill or expenditures.

**C.    The Claim Of Prima Facie Tort Is Belied By
The Specific Allegations In The Complaint Itself**

The elements of a claim of prima facie tort under New York law are "(1)

intentional infliction of harm; (2) resulting in special damages; (3) without excuse or

justification; (4) by an act that would otherwise be lawful." *Twin Laboratories, Inc. v. Weider

Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990). "The touchstone is 'disinterested

malevolence', meaning that the plaintiff cannot recover unless the defendant's conduct was not

23

only harmful, but done with the **sole intent** to harm." *Id.* (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 721 (1983) (emphasis added). The Second Circuit has "held that motives other than disinterested malevolence, 'such as profit, self-interest, or business advantage' will defeat a prima facie tort claim." *Id.* (citations omitted). The same allegations of self-interest that defeat the malice element of the claim of tortious interference with prospective business or contractual relationships also defeats the prima facie tort claim. (*See supra* at 20; Complaint ¶¶ 74-76).

"Prima facie tort is a disfavored claim under New York law." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2003). "[i]t is well settled that any claim that is covered by a traditional tort cannot be the basis for a claim of prima facie tort-even if the traditional tort claims turn out not to be viable." *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000). In other words, there must be factual allegations over and above the ones in connection with traditional torts to support the claim. The Complaint here lacks such allegations, which provides another basis for dismissal of the claim.

## IV. BECAUSE THE COMPLAINT DOES NOT ALLEGE THAT GREENER COMMITTED ACTIONABLE CONDUCT, THERE IS NO VALID BASIS FOR THE CLAIMS AGAINST HIM

For all of the foregoing reasons, each of the claims in the Complaint warrants dismissal in its entirety. The inclusion of Greener as a defendant in this action, however, warrants separate attention. Greener is a trusts and estates attorney. He has no personal interest in the Estate, and acts as its principal outside counsel, as well as its co-administrator. One can search the Complaint in vain for an allegation of anything Greener said or did. After being identified in the introductory paragraphs (¶¶ 6-10), it only mentions him twice. In Paragraph 53, it identifies him

as having *received* an e-mail from Shelley Souza to Christie's. In Paragraph 60, it identifies him as having *received* an e-mail from Shelley Souza to Bonhams.

None of the allegations arising out of statements by the other co-administrator of the Estate can be imputed to Greener personally. A long-established principle of agency law is that an "agent is not liable to third persons for nonfeasance but only for affirmative acts of negligence or other wrong." *Greco v. Levy*, 257 A.D. 209, 211, 12 N.Y.S.2d 470, 472 (1st Dep't 1939). "An agent, moreover, does not become liable for the tortious acts of another agent of the same principal by reason of the relationship, unless he or she assists in the performance of the tortious act or directs or permits it." 2A N.Y. Jur. 2d, AGENCY, § 339 (citing *Williams v. American Foreign S. S. Corp*, 65 F. Supp. 900, 902 (S.D.N.Y. 1945)). Specifically, with respect to claims sounding in defamation, the "'mere receipt of an alleged libelous statement does not establish libel on the part of the person who receives the statement.'" *Trepple v. Biovail Corp.*, 2005 WL 2086339 at *3 (quoting *McGill v. Parker*, 179 A.D.2d 98, 106, 582 N.Y.S.2d 91, 96 (1st Dep't 1992)).

In short, an agent must do something in order to be liable for the alleged intentional torts of another. The Complaint fails to allege a single instance in which Greener "did" anything. As a result, it must be dismissed as to him. Indeed, it is one of many allegations so lacking in merit as to warrant sanction under Fed. R. Civ. P. 11. The failure of Jaffri and his attorneys to dismiss Greener voluntarily after the Defendants informed them of that lack of merit makes sanctions particularly appropriate.

## CONCLUSION

For all of the foregoing reasons, the Appearing Defendants respectfully request that the Court dismiss the Complaint.

Dated:  New York, New York
       July 12, 2007

LYNN & CAHILL LLP



_____
John R. Cahill (JC-4229)

500 Fifth Avenue
New York, NY 10110
(212) 719-4400

*Attorneys for Defendants Shelley
Souza, Jeffrey S. Greener and the
Estate of Francis Newton Souza*

26