Vera M. Scanlon (VS1522)
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiff*

United States District Court
Southern District of New York
-------------------------------------------------------X

AZHAR JAFFRI,

Plaintiff,

against                                              No. 07 Civ. 4086 (SAS)
                                                     **ECF Case**

SHELLEY SOUZA, individually
and as Co-Administrator of the
Estate of Francis Newton Souza;
JEFFREY S. GREENER, individually and
as Co-Administrator of the Estate of
Francis Newton Souza; FRANCESCA
SOUZA, individually; and the ESTATE OF
FRANCIS NEWTON SOUZA,

Defendants.
-------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>POINT I</u>

Plaintiff Adequately Pleaded Claims For Defamation . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Defendants' Defamatory Statements Were
              "Of And Concerning" Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Defendants' Written & Oral Statements To
              The Auction Houses Defamed Plaintiff And
              The Souza Paintings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    Defendants Committed Both Slander & Libel,
              Which Plaintiff Adequately Pleaded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      D.    Plaintiff Properly Pleaded A Claim For
              Product Disparagement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

             1.     Plaintiff Adequately Pleaded Special Damages . . . . . . . . . . . . . . . . . . . . 8

                    i.     Plaintiff Does Not Need To Identify Lost
                          Customers By Name To Plead
                          Adequately A Claim For Product
                          Disparagement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                    ii.    <u>Kirby v. Wildenstein</u> Is Not
                          Controlling And Was Decided On A
                          Motion For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 10

2.     Plaintiff Adequately Pleaded Defamation Per Se
And Unfair Competition By Disparagement,
Such That Special Damages Need Not Be Pleaded . . . . . . . . . . . . . . . . 11

     i.    Special Damages Need Not Be Pleaded For
A Claim Of Defamation Per Se . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     ii.    A Claim For Unfair Competition By Product
Disparagement Does Not Require A Pleading
Of Special Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

E.    Defendants' Defamatory Statements Are Not Privileged . . . . . . . . . . . . . . . . . . 12

1.    A Qualified Privilege Is Not Available To Defendants
Because They Had No Interest In The Souza Paintings
And No Corresponding Interest With The Auction Houses . . . . . . . . . 12

2.    If Any Qualified Privilege Were Available To
Defendants, It Would Have Been Lost Because
Of Their Malice Or Would Be Unavailable As To
Statements Of Fact Or Fact And Opinion . . . . . . . . . . . . . . . . . . . . . . . . 14

POINT II

Plaintiff Adequately Pleaded A Claim For Unfair Competition . . . . . . . . . . . . . . . . . . . . . . . . 16

POINT III

Plaintiff Adequately Pleaded Several Claims For Tortious Interference
With Business Relations, Both Contractual And Non-contractual . . . . . . . . . . . . . . . . . . . . . . 17

A.    The Law Governing Tortious Interference Claims Favors Plaintiff . . . . . . . . . . 17

B.    Plaintiff Need Not Plead A Breach Of Contract To Plead A Claim
For Tortious Interference With Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.    Plaintiff Has Adequately Pleaded Claims For Tortious Interference With Non-
contractual Relations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

-ii-

<u>POINT IV</u>

Plaintiff Adequately Pleaded A Claim For Prima Facie Tort . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>POINT V</u>

Plaintiff Adequately Pleaded A Claim Under GBL Sec. 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>POINT VI</u>

Mr. Greener May Be Held Liable For His Actions & Inactions Regarding Plaintiff . . . . . . . . . 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

105 East Second St. Assocs. v. Bobrow,
176 A.D.2d 483, 573 N.Y.S.2d 503 (1st Dep't 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Armstrong v. Simon & Schuster, Inc.,
85 N.Y.S.2d 373, 625 N.Y.S.2d 477 (N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bd. of Ed. of Farmingdale Union Free School Dist. v.
Farmingdale Classroom Teachers Ass'n, Inc.,
38 N.Y.2d 397, 380 N.Y.S.2d 635 (N.Y. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Boule v. Hutton,
138 F. Supp. 2d 491, 504 (S.D.N.Y. 2001),
 rev'd on other grounds, 328 F.3d 84 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Brignoli v. Balch Hardy & Scheinman, Inc.,
645 F.2d 1201, 1208 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Byam v. Collins,
111 N.Y. 143, 19 N.E. 75 (1888) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

Calvin Klein Trademark Trust v. Wachner,
129 F. Supp. 2d 248 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

Carvel Corp. v. Noonan,
3 N.Y.3d 182, 785 N.Y.S.2d 359 (N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20, 21

Carvel Corp. v. Noonan,
350 F.3d 6 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

Charles Atlas, Ltd. v. Time-Life Books, Inc.,
570 F. Supp. 150 (S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Clark Consulting, Inc. v. Fin. Solutions Partners, LLC,
2005 WL 3097892 (S.D.N.Y. Nov. 17, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Coclin v. Lane Press, Inc.,
210 A.D.2d 98, 620 N.Y.S.2d 41 (1st Dep't 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Colman v. Migdol,

207 A.D.2d 856, 616 N.Y.S.2d 757 (2d Dep't 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cromarty v. Prentice-Hall, Inc.,
72 A.D.2d 782, 421 A.D.2d 603 (2d Dep't 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.,
43 F.3d 1119 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Dairy Stores, Inc. v. Sentinel Pub. Co.,
516 A.D.2d 220 (N.J. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

DeMicco Bros., Inc. v. Con. Edison. Co. of N.Y., Inc.,
8 A.D.3d 99, 779 N.Y.S.2d 10 (1st Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Diehl & Sons, Inc. v. Int'l Harvester Corp.,
445 F. Supp. 282 (D.C.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Dior v. Milton,
9 Misc.2d 425, 155 N.Y.S.2d 443 (N.Y. County Sup. Ct.),
aff'd, 2 A.D.2d 278, 156 A.D.2d 996 (1st Dep't 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Drug Research Corp. v. Curtis Publishing Co.,
7 N.Y.2d 435, 199 N.Y.S.2d 33 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Duane Jones Co. v. Burke,
306 N.Y. 172, 117 N.E.2d 237 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Foster v. Churchill,
87 N.Y.2d 744, 642 N.Y.S.2d 853 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Geisler v. Petrocelli,
616 F.2d 636, 640 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

Golub v. Enquirer/Star Group,
89 N.Y.2d 1074, 659 N.Y.S.2d 836 (N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Gross v. Cantor,
270 N.Y. 93, 200 N.E. 592 (N.Y. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,
50 N.Y.2d 183, 428 N.Y.S.2d 628 (N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

Gucci Am., Inc. v. Duty Free Apparel, Inc.,
277 F. Supp. 2d 269 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

Harwood Pharmacal Co. v. Nat'l Broadcasting Co.,
9 N.Y.2d 460, 214 N.Y.S.2d 725 (N.Y. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

Hoffman v. Landers,
146 A.D.2d 744, 537 N.Y.S.2d 228 (2d Dep't 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Karedes v. Ackerley Group, Inc.,
423 F.3d 107 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Kassner v. 2nd Ave. Deli. Inc.,
– F.3d –, 2007 WL 2119769 (2nd Cir. July 24, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Kelly v. Schmidberger,
806 F.2d 44 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Kevin Spence & Sons, Inc. v. Boar's Head Provisions Co.,
5 A.D.3d 352, 774 N.Y.S.2d 56 (2d Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Kirby v. Wildenstein,
784 F. Supp. 1112 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Lambert v. Edelman,
24 A.D.2d 562, 261 N.Y.S.2d 450 (1st Dep't 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Lee v. City of Rochester,
195 A.D.2d 1000, 600 N.Y.S.2d 564 (4th Dep't 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Louis Capital Markets, L.P. v. REFCO Group Ltd., LLP,
9 Misc.3d 283, 801 N.Y.S.2d 490 (N.Y. County Sup. Ct. 2005) . . . . . . . . . . . . . . . . . . . . . . 16

Maglio v. N.Y. Herald Co.,
83 A.D. 44, 82 N.Y.S. 509 (2d Dep't 1909) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Med. Soc. of State of N.Y. v. Oxford Health Plans, Inc.,
15 A.D.3d 206, 790 N.Y.S.2d 79 (1st Dep't 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mencher v. Chesley,

297 N.Y. 94, 75 N.E.2d 257 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mink Hollow Dev. Corp. v. State,
87 Misc.2d 61, 384 N.Y.S.2d 373 (N.Y. Ct. of Claims 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.,
215 A.D.2d 990, 628 N.Y.S.2d 408 (3d Dep't1995),
aff'd, 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,
87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

November v. Time, Inc.,
13 N.Y.2d 175, 244 N.Y.S.2d 309 (N.Y. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

NYU v. Continental Ins. Co.,
87 N.Y.2d 308, 639 N.Y.S.2d 283 (N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Pecue v. Collins,
204 A.D. 142, 197 N.Y.S. 835 (3d Dep't 1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pirre v. Printing Devs. Inc.,
432 F. Supp. 840 (D.C.N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Public Relations Soc. of Am. v. Road Runner High Speed Online,
8 Misc.3d 820,799 N.Y.S.2d 847 (N.Y. County Sup. Ct. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rice v. Manley,
21 Sickels 82 (N.Y. 1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Rosen v. Piluso,
235 A.D.2d 412, 652 N.Y.S.2d 104 (2d Dep't 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 15

Scutti Enters., LLC v. Park Pl. Entertainment Corp.,
322 F.3d 211 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

Silver v. NL Indus., Inc.,
1984 WL 228 (S.D.N.Y. Apr. 25, 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Snow v. Judson,
38 Barb. 210 (N.Y. 1862) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Sovik v. Healing Network,
244 A.D.2d 985, 665 N.Y.S.2d 997 (4th Dep't 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Stukuls v. State,
42 N.Y.2d 272, 397 N.Y.S.2d 740 (N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sydney v. MacFadden Newspaper Pub. Corp.,
242 N.Y. 208, 151 N.E. 209 (N.Y. 1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

Technon Contracting, Inc. v. Village of Lynnbrook,
5 Misc.3d 1005(A), 2004 WL 2339796 (N.Y. Sup. Nassau County Oct. 14, 2004) . . . . . . . . . 15

Teilhaber Mfr'g Co. v. Unarco Materials Storage,
791 P.2d 1164, 1167 (Colo. App. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Victor Safe & Lock Co. v. Deright,
147 F. 211 (8th Cir. 1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

White v. Delavan,
17 Wend. 49 (Sup. Ct. N.Y. Jud. 1837), rev'd on other grounds sub. nom
Ryckman v. Delavan, 25 Wend. 186 (N.Y. 1840) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Yammine v. DeVita,
— N.Y.S.2d —, 2007 WL 2198605 (3rd Dep't Aug. 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Zimmerman v. Pokart,
242 A.D.2d 202, 662 N.Y.S.2d 5 (1st Dep't 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Statutes & Rules**

N.Y. G.B.Ll. Sec. 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

N.Y. E.P.T.L. Secs. 11-3.1, 11-3.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Federal Rule of Civil Procedure 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Treatises**

Glen Banks, N.Y. Practice Series, N.Y. Contract L. Sec. 21:44 (2007) . . . . . . . . . . . . . . . . 20, 22

W. Prosser, Handbook of the Law of Torts Sec. 128 (4th ed. 1971) . . . . . . . . . . . . . . . . . . . . . . 9
Restatement (Second) of Torts, Sec. 595 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) of Torts, Sec. 599-605A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) of Torts, Sec. 624 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Restatement (Second) of Torts, Sec. 766B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Preliminary Statement**

Plaintiff Azhar Jaffri ("Plaintiff") submits this memorandum of law in opposition to the motion to dismiss of defendants Shelley Souza, Jeffrey S. Greener ("Mr. Greener") and the Estate of Francis Newton Souza ("the Estate") (collectively, "Defendants").[1]

**Factual Background**

Plaintiff is a collector and owner of art created by the late modern Indian artist Francis Newton Souza ("Souza") in the late 1980s and early 1990s. Complaint ("Com.") ¶¶ 5, 11-28. Plaintiff consigned eight of these works ("the Souza Paintings") for sale at Sotheby's, Christie's and Bonhams ("the Auction Houses") in March and April 2006. Com. ¶¶ 1, 31-37. Shelley Souza, a daughter of Souza, serves as co-administrator of the Estate of Souza with her co-administrator, Mr. Greener. Com. ¶¶ 6-8. In March 2006, Shelley Souza, allegedly on behalf of the Estate, wrote to and spoke with the Auction Houses, falsely informed them that the Souza Paintings consigned by Plaintiff were not made by Souza (although they were), and demanded that either the works be withdrawn from the auctions (which they were) or customers be informed that the Estate would not authenticate them. Id. ¶¶ 47-65. Later, two additional works consigned by Plaintiff to Christie's South Kensington were also withdrawn from auction as a result of the Estate's communications. Id. ¶¶ 68-73. When Plaintiff asked Defendants to withdraw their statements, they refused to do so. Com. ¶¶ 39-44, 66-67. Defendants thus rendered it impossible for Plaintiff to market his Souza artworks at auction, impairing if not destroying the value of his Souza collection, as well as harming his reputation. Id. ¶¶ 77-83.

The only relevant information in deciding this motion to dismiss is that contained in the

---

[1]Francesca Souza is not a party to this motion.

Complaint. Defendants' attempt to introduce materials through their attorney on this motion should be rejected as the materials were not incorporated into the Complaint by Plaintiff either directly or by reference. See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). Contrary to Defendants' suggestion, no notice, let alone judicial notice, can be taken of those materials on this FRCP 12(b)(6) motion. Moreover, the Court must consider the allegations in the Complaint in the light most favorable to Plaintiff. See Kassner v. 2nd Ave. Deli. Inc., – F.3d –, 2007 WL 2119769, at *3 (2nd Cir. July 24, 2007).

**Argument**

**I.      Plaintiff Adequately Pleaded Claims For Defamation**

**A.      Defendants' Defamatory Statements Were "Of And Concerning" Plaintiff**

Defendants argue that their defamatory statements were not "of and concerning" Plaintiff based on their attorney's statement that they did not know of Plaintiff at the time those statements were made. Defendants' Memorandum of Law ("D. Mem.") at 9. This argument is unavailing. A plaintiff must be permitted to demonstrate that the publications were "of and concerning him" even where his name is not specifically stated, as long as he can be identified by the information in the defamatory statements or their context. See Harwood Pharmacal Co. v. Nat'l Broadcasting Co., 9 N.Y.2d 460, 464, 214 N.Y.S.2d 725, 728 (N.Y. 1961); Gross v. Cantor, 270 N.Y. 93, 96, 200 N.E. 592, 593 (N.Y. 1936); Sovik v. Healing Network, 244 A.D.2d 985, 987, 665 N.Y.S.2d 997, 1000 (4th Dep't 1997); see also Geisler v. Petrocelli, 616 F.2d 636, 640 (2d Cir. 1980). Even if Defendants admissible evidence were to demonstrate that Defendants lacked knowledge of Plaintiff, Defendants' communications defame the consignor of the Souza Paintings, see Com. ¶¶ 47-57, and, as the Complaint clearly states, Plaintiff was the consignor, id. ¶¶ 31-37, making the statements "of

and concerning" Plaintiff.

**B.      Defendants' Written & Oral Statements To The Auction Houses Defamed Plaintiff And The Souza Paintings**

Under New York law, "[w]here a plaintiff alleges that statements are false and defamatory, the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation."  Armstrong v. Simon & Schuster, Inc., 85 N.Y.S.2d 373, 380, 625 N.Y.S.2d 477, 481 (N.Y. 1995) (citation omitted).  "In making this determination, the court must give the disputed language a fair reading in the context of the publication as a whole."  Id. (citation omitted); see Karedes v. Ackerley Group, Inc., 423 F.3d 107, 114 (2d Cir. 2005).  Whether particular words were likely to be understood by an ordinary reader as defamatory when that is a reasonable reading of them is a jury question.  See Rosen v. Piluso, 235 A.D.2d 412, 412, 652 N.Y.S.2d 104, 105 (2d Dep't 1997); Hoffman v. Landers, 146 A.D.2d 744, 746, 537 N.Y.S.2d 228, 231 (2d Dep't 1989).  Thus, even if Defendants can successfully "spin" the communications to suggest they were not defamatory, to the extent the communications can be read or understood as defamatory, whether they were or not is a question of fact for the factfinder and cannot be decided by the Court, particularly on a motion to dismiss.

Generally, a statement may be defamatory "if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community."  Golub v. Enquirer/Star Group, 89 N.Y.2d 1074, 1076, 659 N.Y.S.2d 836, 837 (N.Y. 1997) (quoting Mencher v. Chesley, 297 N.Y. 94, 100, 75 N.E.2d 257 (1947)).  On a professional level, a defamatory meaning may attach to derogatory statements that would cause apprehension about a person's ability to conduct business.  Id.  "A written statement is libelous per se if it tends to 'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an

evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" Public Relations Soc. of Am. v. Road Runner High Speed Online, 8 Misc.3d 820, 823, 799 N.Y.S.2d 847, 851 (N.Y. County Sup. Ct. 2005) (quoting Foster v. Churchill, 87 N.Y.2d 744, 642 N.Y.S.2d 853 (1996)).

Defendants claim that their publications are not defamatory, D. Mem. at 9, but this is not so, as a reading of their statements makes clear, most importantly because the communications effectively state that the Souza Paintings are forgeries. For example, in the letter to Sotheby's about Lot 104, Defendants claim that the "work attributed to Souza" "was not made by him." Com. ¶ 51. That statement is followed by the statement that the consigner of Sotheby's Lot 104 also consigned two other works, which Defendants' two contemporaneous letters to Sotheby's also identified as not being by Souza. In the letter about Lot 104, Defendants wrote that the Estate believed the consignor to have "'authenticated'" another work, the use of quotations marks expressing that the authentication was improper. Defendants made similar statements about the lack of authenticity of Sotheby's Lot 111, and then described the naming of the painting as "'troubling'", again using quotations marks. The letter goes on to describe the consignor's account of the naming of the Painting but states that this account was inconsistent with Defendants' version of Souza's alleged titling practice, implying that the consignor's account was false. Defendants' letter about Sotheby's Lot 106 is similar, and it associates the consignor not only with the Sotheby's and Unicorn Gallery paintings, but with "disputed" works at Christie's and Bonhams.

Defendants' reference to the consignor or authenticator of nine "disputed works" or forgeries is defamatory, especially when communicated in the context of eight of those paintings for auction at the prestigious Auction Houses. See, e.g., Colman v. Migdol, 207 A.D.2d 856, 857, 616 N.Y.S.2d

757, 758 (2d Dep't 1994). The statements connote deceit, fraud, deception and misconduct and thus defamatory as to the consignor, i.e., Plaintiff. See Harwood Pharmacal Co., 9 N.Y.2d 460, at 214 N.Y.S.2d at 727; Boule v. Hutton, 138 F. Supp. 2d 491, 504 (S.D.N.Y. 2001), rev'd on other grounds, 328 F.3d 84 (2d Cir. 2003) (statements impugning the authenticity of art collectors' collection, implying that they had purchased, exhibited and offered for sale fraudulent works of art were injurious to the collection and collectors' reputations).

The content of the letters to Christie's and Bonhams is similar, stating that the Souza Paintings were "not made by Souza." Com. ¶¶ 53-62. For example, in the email and letter concerning Christie's Lots 116 and 147, Defendants state that the elements of the painting are "not consistent" with Souza's works, including others for sale at the Auction House, although the email fails to note that those other works were made largely during earlier periods of Souza's life when his style was quite different from that of the 1980s and 1990s. Id. ¶¶ 53-55. Defendants' letter about Christie's Lot 115 also discusses the person who "'authenticated'" a work for Unicorn Gallery, again using quotation marks. Id. ¶ 115. Defendants' letter to Christie's concerning Sotheby's Lot 104, implies that the consignor was involved with multiple fraudulent paintings at both Auction Houses. Id. ¶ 56. Similar accusations were made to Bonhams. Id. ¶¶ 60-62.

Defendants would have the Court believe that they simply expressed doubt as to the authenticity of the Souza Paintings, and nothing more, nothing defamatory. D. Mem. at 11. But this is not true: each of the more than ten detailed communications discussed at least one Painting as not being made by Souza, and in many cases, associated it with other Paintings at a particular Auction House or with other Souza Paintings at other Auction Houses about which Defendants made similar statements of inauthenticity. The additional details noted above about the consignor and

authentication also move these communications beyond mere expressions of doubt. Moreover, the import of these multiple communications is that the consignor, Plaintiff, was engaged in a concerted effort to sell numerous inauthentic paintings to multiple Auction Houses, a defamatory allegation. It is more than reasonable to understand that such words would wrongly "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." See Sydney v. MacFadden Newspaper Pub. Corp., 242 N.Y. 208, 211-12, 151 N.E. 209, 210 (N.Y. 1926). By these standards, Plaintiff has alleged sufficiently defamatory communications to withstand this motion to dismiss and to present the issues to a jury.

**C.    Defendants Committed Both Slander & Libel, Which Plaintiff Adequately Pleaded**

Defendants argue that Plaintiff did not adequately list the slanderous or oral defamatory statements they made. D. Mem. at 11. "[T]he mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P., which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate. The pleading of additional evidence is not only unnecessary, but in contravention of proper pleading procedure. Such additional information is now available through the liberalized discovery provisions." Geisler, 616 F.2d at 640; see FRCP 8; Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (citing Pirre v. Printing Devs. Inc., 432 F. Supp. 840 (D.C.N.Y. 1977)). "The central concern is that the complaint 'afford defendant sufficient notice of the communications complained of to enable him to defend himself.'" Id. (citation omitted). In the Complaint, Plaintiff quotes the text of the libelous letters, and as to each Auction House, states that Defendants "orally made these same or similar defamatory statements to employees and/or agents

of [Auction Houses]." Com. ¶¶ 47-62. Defendants' own letters indicate that these words were stated. <u>See</u> Com. ¶ 51 (Sotheby's Lot 111 letter: "[f]urther to our meeting yesterday" and "as we discussed"); ¶ 53 (Christie's Lot 116 email: "[a]s we discussed"; ¶ 55 (Christie's Lot 116 letter: "[a]s we discussed"). Plaintiff has thus sufficiently alleged slander.

### D.    Plaintiff Properly Pleaded A Claim For Product Disparagement

Plaintiff has a well-pleaded claim for product disparagement. New York applies the Restatement (Second) of Torts definition of this tort:

> One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused.

<u>Lambert v. Edelman</u>, 24 A.D.2d 562, 563, 261 N.Y.S.2d 450, 451 (1st Dep't 1965) (quoting Restatement (Second) of Torts, Sec. 624). According to <u>Lambert</u>, there are "untold examples" of this "class of case" in New York. <u>Id.</u> The measure of the damages under this tort is the "impairment of vendibility." <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>105 East Second St. Assocs. v. Bobrow</u>, 176 A.D.2d 483, 483, 573 N.Y.S.2d 503, 503 (1st Dep't 1991); <u>Mink Hollow Dev. Corp. v. State</u>, 87 Misc.2d 61, 63, 384 N.Y.S.2d 373, 375 (N.Y. Ct. of Claims 1976). For this tort, special damages must normally be pleaded unless the false disparagement directly maligns the character of the owner, such that <u>per se</u> damages are appropriate. <u>See</u> <u>Victor Safe & Lock Co. v. Deright</u>, 147 F. 211, 213 (8th Cir. 1906) (citing <u>White v. Delavan</u>, 17 Wend. 49 (Sup. Ct. N.Y. Jud. 1837), <u>rev'd on other grounds sub. nom</u>, <u>Ryckman v. Delavan</u>, 25 Wend. 186 (N.Y. 1840)). Plaintiff's complaint meets both tests.

1.    **Plaintiff Adequately Pleaded Special Damages**

i.    **Plaintiff Does Not Need To Identify Lost Customers By Name To Plead Adequately  A Claim For Product Disparagement**

Consistent with applicable law, Plaintiff adequately pleaded special damages by alleging that Defendants impaired the vendibility of his Souza Paintings, rendering them effectively unmarketable.  Com. ¶¶ 1, 78-82.  Defendants caused Plaintiff the loss of the market value of the Souza Paintings, which is to be determined by expert testimony but which is at least $726,000, the pre-auction price estimate for the eight Souza Paintings.  See id.

Defendants, in an attempt to narrow the scope of damages for which they are liable, invoke a line of cases relating to lost customers and argue that Plaintiff's pleading is inadequate for failing to name lost customers. D. Mem. at 12.  They rely on Drug Research Corp. v. Curtis Publishing Co., 7 N.Y.2d 435, 199 N.Y.S.2d 33 (1960), in which the court stated that lost customers should be named when the special damages alleged are lost sales, and on Kirby v. Wildenstein, 784 F. Supp. 1112 (S.D.N.Y. 1992), which applied the Drug Research rule to a product disparagement claim about a painting.

As the court stated in Charles Atlas, Ltd. v. Time-Life Books, Inc., 570 F. Supp. 150, 156 (S.D.N.Y. 1983), and contrary to Defendants' view, Drug Research did not hold that a plaintiff who itemizes special damages and alleges a specific amount representing lost sales cannot recover unless he names the persons who refused to purchase or ceased to be purchasers.  As the Charles Atlas Court observed, in Drug Research, special damages were not satisfactorily alleged because the plaintiff had not itemized his damages.[2]  See Charles Atlas, 570 F. Supp at 155 (discussing Drug

_____

[2]Defendants cite to Gucci Am., Inc. v. Duty Free Apparel, Inc., 277 F. Supp. 269 (S.D.N.Y. 2003), D. Mem. at 13, which is no more instructive because it merely cites to Drug Research.

Research, 7 N.Y.2d at 441, 199 N.Y.S.2d at 37-38 ("Such round figures, with no attempt at itemization, must be deemed to be a representation of general damages." (citation omitted))).  The Charles Atlas Court also rejected the application of the rule advocated here by defendants because it would be "grossly unfair" as the likely result of defendants' tortious acts was that the customers would have failed to order the product, "leaving no record of their identity."  The court rejected defendants' argument that customers had to be named as being an "arbitrary rule" and stated that its rejection gave a "result that comports with fairness and the modern case law."  Id. at 156. ("Starting with a few cases involving goods offered for sale at an auction, and extending to others in which there has been obvious impossibility of any identification of the lost customers, a more liberal rule has been applied, requiring the plaintiff to be particular only where it is reasonable to expect him to do so."  (quoting W. Prosser, Handbook of the Law of Torts Sec. 128, at 923-24 (4th ed. 1971))); see Teilhaber Mfr'g Co. v. Unarco Materials Storage, 791 P.2d 1164, 1167 (Colo. App. 1989).

Thus, the rule advocated by Defendants does not apply here because it does not capture the harm of impairment of vendibility.  Other New York cases support the non-applicability of this rule for the present case.  For example, in Maglio v. N.Y. Herald Co., 83 A.D. 44, 82 N.Y.S. 509, 511 (2d Dep't 1909), the court held that a statement that a property has depreciated in value because of a defendant's statements is an adequate statement of special damages.  See Cromarty v. Prentice-Hall, Inc., 72 A.D.2d 782, 783, 421 A.D.2d 603, 605 (2d Dep't 1979).  In the present case, because Defendants' acts resulted in the withdrawal of the Souza Paintings from the auctions, it is not possible for Plaintiff to identify potential customers, particularly before discovery.  Accordingly, Plaintiff need not name lost customers but only identify the losses suffered, which he has adequately

done.  Com. ¶¶ 1, 78-82.

## ii.    Kirby v. Wildenstein Is Not Controlling And Was Decided On A Motion For Summary Judgment

Defendants argue that customers could not have learned of the dispute because the defamatory communications were among the Auction Houses and Defendants, not with customers, and the catalogues did not mention the dispute, in that Plaintiff was not damaged, as was held in Kirby.  D. Mem. at 13.  Defendants also argue that with regard to special damages, this case is similar to Kirby.  D. Mem. at 13.  Both points are incorrect.

Defendants draw a false comparison between the present case and Kirby.  Most importantly here, Kirby was decided on a motion for summary judgment, not a motion to dismiss, after the parties had completed discovery.  In Kirby, "[t]he complaint did not specify the losses underlying the $250,000 [in special damages] figure or state the present value of the Painting, which the plaintiff still owns."   Id. at 1116.  In the present motion to dismiss, the complaint is more than adequate as to specific damages because it alleges that the Auction Houses valued the Souza Paintings with specific pre-sale estimates, not with a "round number" as in Kirby; and that the auction houses with drew the Souza Paintings from the sale because of Defendants' statements so that the paintings did not enter the market.  This differs markedly from the one alleged lost bidder in Kirby.  Here, because Defendants' actions were taken a few days before the Auction Houses' Indian art auctions in March and April 2006, the Souza Paintings were abruptly pulled from the auctions within days of the sale, after catalogues (and other publicity) had been disseminated.[3]  Com.

---

[3]To the extent the Kirby Court considered the causation of the failure of the painting to sell at auction, it did so on summary judgment.  In any event, the facts of Kirby were quite different from those of the present case.  For example, the owner of the painting in Kirby allowed a Christie's representative to contact the author of the catalogue raisonne of the artist's work, who was a recognized expert on the artist, as well as another expert who was named as a

¶¶ 47-57.

**2.    Plaintiff Adequately Pleaded Defamation <u>Per Se</u> And Unfair Competition By Disparagement, Such That Special Damages Need Not Be Pleaded**

**i.    Special Damages Need Not Be Pleaded For A Claim Of Defamation <u>Per Se</u>**

A defamatory statement that harms a man in his professional capacity is <u>per se</u> defamatory, and special damages need not be stated to allege sufficiently this cause of action.  See <u>November v. Time, Inc.</u>, 13 N.Y.2d 175, 178 244 N.Y.S.2d 309, 311-12 (N.Y. 1963); <u>Yammine v. DeVita</u>, — N.Y.S.2d —, 2007 WL 2198605, at *1 (3rd Dep't Aug. 2, 2007).  Defendants' statements constitute both defamation and defamation <u>per se</u>, the latter to the extent the statements defame Plaintiff in his business dealings.  Therefore, he need not plead special damages.  See <u>Sydney</u>, 242 N.Y. at 211-12, 151 N.E. at 210.

**ii.    A Claim For Unfair Competition By Product Disparagement Does Not Require A Pleading Of Special Damages**

Defendants argue that Plaintiff's unfair competition by product disparagement and product disparagement claims are the same claim and both require special damages.  D. Mem. at 15-16. Some cases hold that these are distinct torts, and that the former does not require special damages. In <u>Clark Consulting, Inc. v. Fin. Solutions Partners, LLC</u>, 2005 WL 3097892, at *6 (S.D.N.Y. Nov. 17, 2005), the court reasoned that special damages were not required where the "disparagement directly maligns the character of the owner of the goods."  See <u>Gucci Am., Inc. v. Duty Free Apparel, Inc.</u>, 277 F. Supp. 2d 269, 277 (S.D.N.Y. 2003).  Nothing in these cases supports

---

defendant.  See <u>Kirby</u>, 784 F. Supp. at 1113-14.  As set forth in the Complaint, Defendants are not Souza experts, and they contacted the Auction Houses without invitation.  Com. ¶¶ 10, 44-57.  While in <u>Kirby</u>, the plaintiff had not excluded issues of "quality and condition of the painting itself" which had been identified by both plaintiff's experts and defendants, <u>id.</u> at 1118, here, there has been no expert testimony offered that there are any problems with the Souza Paintings other than Defendants' non-expert statements.

Defendants' view, D. Mem. at 16, that the same statements cannot disparage both goods or products as well as their owner, as Defendants did.

**E.     Defendants' Defamatory Statements Are Not Privileged**

**1.     A Qualified Privilege Is Not Available To Defendants Because They Had No Interest In The Souza Paintings And No Corresponding Interest With The Auction Houses**

Defendants claim that their defamatory statements are privileged because they had a fiduciary duty to the Estate "to preserve and maximize its assets" and "a moral duty to call attention to forged works." D. Mem. at 14-15. There is no privilege available to Defendants to protect them from the adverse consequences of their wrongful actions. As an initial matter, a privilege such as that invoked by Defendants is only available to those with a particular interest in the subject matter, and when the words at issue are communicated to a party with a corresponding interest. See Rosen, 235 A.D.2d at 412, 652 N.Y.S.2d at 105. Defendants had no interest in the Souza Paintings, which are owned by Plaintiff and were to be sold by the Auction Houses. The interest that they allege–to protect the Estate's assets–does not correspond to any interest of the Auction Houses or Plaintiff.

As to the claim of a public and moral duty, in Byam v. Collins, 111 N.Y. 143, 19 N.E. 75 (1888), upon which Defendants rely, D. Mem. at 14, the court warned of the dangers of claims of such unbounded duty:

> But when the privilege rests simply upon the moral duty to make the communication, there has been much uncertainty and difficulty in applying the rule. The difficulty is to determine what is meant by the term 'moral duty,' and whether in any given case there is such a duty. * * *
>
> The rule as to privileged communications should not be so extended as to open wide the flood-gates of injurious gossip and defamation, by which private character may be overwhelmed, and irreparable mischief done; and yet it should be so administered as to give reasonable protection to those who make and receive communications in

which they are interested, of in reference to which they have a real, not imaginary, duty. Every one owes a moral duty not, as a volunteer in a matter he has no legal duty or personal interest, to defame another unless he can find a justification in some pressing emergency. In <u>Coxhead v. Richards</u>, 2 Man. G. & S. 569, 602, COLTMAN, J., said. 'The duty of not slandering your neighbor on insufficient grounds is so clear that a violation of that duty ought not to be sanctioned in the case of voluntary communications, except under circumstances of great urgency and gravity. It may be said that it is very hard on a defendant to be subject to heavy damages when he has acted honestly, and when nothing more can be imputed to him than an error in judgment. It may be hard, but it is very hard, on the other hand, to be falsely accused. It is to be borne in mind that people are but too apt rashly to think ill of others. The propensity to tale-bearing and slander is so strong among mankind; and when suspicions are inferred men are so apt to entertain them without due examination, in cases where their interests are concerned, that it is necessary to hold the rule strictly as to any officious intermeddling by which the character of others is affected.'

<u>Byam</u>, 111 N.Y.S. at 151, 19 N.E. at 76. Here, Defendants do not establish a common interest or duty to bring them within the privilege. Defendants do not identify a duty to the Souza Paintings–nor could they--but merely to a generalized financial fiduciary interest in the Estate and a moral duty. D. Mem. at 14; <u>see</u> <u>Stukuls v. State</u>, 42 N.Y.2d 272, 279-83, 397 N.Y.S.2d 740, 744-47 (N.Y. 1977). Nor do Defendants claim a right to enforce a "droît morale". Without basis in law or fact, they seek to arrogate to themselves the right to police the Souza art market because their financial interests might extremely indirectly be negatively affected by the sale of alleged forgeries. Such an attenuated claim of interest is insufficient to invoke a qualified privilege against defamation. <u>See</u>, <u>e.g.</u>, <u>Lee v. City of Rochester</u>, 195 A.D.2d 1000, 1002, 600 N.Y.S.2d 564, 565 (4th Dep't 1994). Nor can the obligations of the Auction Houses be taken to extend any protections to Defendants because the Auction Houses and Defendants had no relationship as to the Souza Paintings. Defendants' lack of a genuine protectible interest in the Souza Paintings is coupled with Defendants' lack of moral, intellectual or other authority with regard to authenticating Souzas. Moreover, there was no emergency requiring Defendants' communications that could have justified Defendants

acting beyond their sphere of interest.  See Byam, 111 N.Y.S. at 153, 19 N.E. at 76-77.

According to the Restatement (Second) on Torts Sec. 595, Defamation, whether a publication is legally privileged depends on whether either the publisher had a legal duty to publish or publication was within generally accepted standards of conduct.  In evaluating whether publication fell within such accepted standards, one of two relevant questions is whether "the publication is made in response to a request rather than volunteered by the publisher."  Defendants were not invited by either Plaintiff or the Auction Houses to comment on the Souza Paintings.  See Byam, 111 N.Y.S. at 153, 19 N.E. at 76-77 (citing cases).

Plaintiff's allegations defeat any claim that Defendants shared a particularized interest or duty with anyone adequate to convey upon them a qualified privilege, the burden of which rests on Defendants.

**2.    If Any Qualified Privilege Were Available To Defendants, It Would Have Been Lost Because Of Their Malice Or Would Be Unavailable As To Statements Of Fact Or Fact And Opinion**

Even if there were a privilege available to an artist's estate, a qualified privilege would not protect Defendants.  A qualified privilege may be abused and its protection lost by the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; by the publication of the defamatory matter for some improper purpose; by excessive publication; or by the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged.  See Restatement (Second) on Torts Secs. 599-605A, Defamation.  For example, according to Dairy Stores, Inc. v. Sentinel Pub. Co., 516 A.D.2d 220 (N.J. 1986), upon which Defendants rely, a qualified privilege protecting a statement "may be overcome, with the result that the publisher will be liable, if a publication of a defamatory statement was made with

-14-

'malice.'  Common-law malice, or malice-in-fact, has mean variously that the statement was published with an improper purpose or ill will, or without belief, or reasonable grounds to believe in its truth."  Id. at 225 (citations omitted); see id. at 232-33; Pecue v. Collins, 204 A.D. 142, 146, 197 N.Y.S. 835, 839 (3d Dep't 1923) (citing Byam, 111 N.Y. 143, 19 N.E. 75).  Whether malice to overcome a privilege exists is a jury question.  See Coclin v. Lane Press, Inc., 210 A.D.2d 98, 99, 620 N.Y.S.2d 41, 42 (1st Dep't 1994).  Plaintiff has alleged that Defendants acted with malice, see Com. ¶¶ 91, 117, 134, 144, thus defeating the privilege argument.

In Dairy Stores, on a summary judgment motion, the fair comment privilege protected the defendants' statements on a newspaper article about the health of drinking water, a matter of public concern; the court specifically did not decide the speech standards applicable to more prosaic or innocuous products.  Id. at 230-31, 235-36.  Thus, Dairy Stores does not help Defendants, and in fact, it highlights what their statements were not: they were not statements made in the public interest about a matter of great public concern, nor were they statements of pure opinion but rather, they relied on misstatements and were not part of a scientific and journalistic endeavor.

As to the protection of fact and opinion, the Dairy Stores Court stated that under federal constitutional law, it is the finder of fact who must determine whether the publication was made in good faith; a mere profession of belief in its truth when facts suggest otherwise will not protect a publisher.  New York law applies similar standards.  Moreover, statements of alleged fact are not protected by any privilege.  See Rosen, 235 A.D.2d at 412, 652 N.Y.S.2d at 105; see also Technon Contracting, Inc. v. Village of Lynnbrook, 5 Misc.3d 1005(A), 2004 WL 2339796, at *6-*7 (Nassau County Sup. Ct. Oct. 14, 2004).  Given that Defendants' statements are either statements of fact or mixed statements of fact and opinion, they are not protected by any privilege even if they were made

-15-

without malice.

## II.    Plaintiff Adequately Pleaded A Claim For Unfair Competition

Defendants argue that Plaintiff failed to plead adequately an unfair competition claim because Plaintiff did not allege the misappropriation of skills, expenditures or labor. D. Mem. 23. In New York, the tort of unfair competition is not so narrow. Rather, "'[a]n injury to a person's business by procuring others not to deal with him, or by getting away his customers, if unlawful means are employed, such as fraud or intimidation, or if done without justifiable cause, is an actionable wrong.'" Louis Capital Markets, L.P. v. REFCO Group Ltd., LLP, 9 Misc.3d 283, 288, 801 N.Y.S.2d 490, 494 (N.Y. County Sup. Ct. 2005) (quoting Duane Jones Co. v. Burke, 306 N.Y. 172, 190, 117 N.E.2d 237 (1953)). "In particular, New York courts have long ago recognized the common law tort for unfair business practices.    [T]he law of 'unfair competition' stresses the element of unfairness rather than the element of competition and the term is generally applied to any form of unlawful business injury; . . ." Id. (citation omitted); see Dior v. Milton, 9 Misc.2d 425, 431, 155 N.Y.S.2d 443, 451 (N.Y. County Sup. Ct.), aff'd, 2 A.D.2d 278, 156 A.D.2d 996 (1st Dep't 1956). In New York, courts have recognized the tort of unfair competition by disparagement. See Brignoli v. Balch Hardy & Scheinman, Inc., 645 F.2d 1201, 1208 (S.D.N.Y. 1986) (citing cases); Diehl & Sons, Inc. v. Int'l Harvester Corp., 445 F. Supp. 282, 291-92 (D.C.N.Y. 1978); see also Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc., 43 F.3d 1119, 1124 (7th Cir. 1994). Where Plaintiff alleged that Defendants engaged in unfair business practices by defaming him and the Paintings, as set forth in the Complaint ¶¶ 47-57, 123-128, Plaintiff adequately pleaded this cause of action. Such pleading in the alternative is permissible as acknowledged by Defendants. D. Mem. at 20.

**III.    Plaintiff Adequately Pleaded Several Claims For Tortious Interference With Business Relations, Both Contractual And Non-contractual**

**A.    The Law Governing Tortious Interference Claims Favors Plaintiff**

Defendants make two challenges to Plaintiff's tortious interference with business claims, neither of which is successful on this motion to dismiss.  First, they argue that Plaintiff did not set forth a claim for tortious interference with contract because the Auction Houses' contracts were not breached.  D. Mem. at 17-18.  Second, they argue that they did not act maliciously, dishonestly, unfairly or with improper means when they made their disparaging statements to the Auction Houses about the Souza Paintings, and that they acted with self-interest without criminal or fraudulent conduct. D. Mem. at 19.

These arguments lack merit.  Preliminarily, Defendants again breach the rule against looking beyond the four corners of the Complaint, asking the Court to consider facts about which Defendants cannot be certain and do not offer admissible evidence.  D. Mem. at 17-18.  Even if the Auction Houses contracts were incorporated into the Complaint by reference as Defendants suggest, Defendants have only offered sample contracts, not Plaintiff's contracts, so that the documents offered by Defendants are not even the actual contracts upon which Plaintiff makes his claim.  D. Mem. at 18.

As to Defendants' first argument that a breach of contract is necessary to establish an interference with contract claim, New York has clearly held that it is not necessary to establish a breach of contract for an interference claim when improper means are used in the interference.  For example, in Rice v. Manley, 21 Sickels 82 (N.Y. 1876), the court held that a plaintiff could maintain an action against a defendant who had falsely told a third party that the plaintiff did not want to buy the third party's goods, so that the third party sold the goods to defendant, rather than the plaintiff

as intended.  See Rice, 21 Sickels 82 ("What difference can it make that plaintiffs could not enforce

their agreement against [the third party]? The referee found that [the third party] would have

performed the agreement and that plaintiffs would have had the benefit of it but for the fraud of the

defendant. How, then, can it be said that plaintiffs were not damaged; that there was not both fraud

and damage, so as to satisfy the rule above laid down?"); Snow v. Judson, 38 Barb. 210 (N.Y. 1862);

see also Silver v. NL Indus., Inc., 1984 WL 228, at *3 (S.D.N.Y. Apr. 25, 1984).  As Plaintiff has

alleged that Defendants' means constituted the tort of defamation, inter alia, he has defeated this

defense.

As to Defendants' second argument, the federal and New York Courts of Appeals have

discussed the standards governing the nature of a defendant's conduct needed to give rise to these

torts.  The New York court has stated:

> [T]he degree of protection available to a plaintiff for a competitor's tortious
> interference with contract is defined by the nature of the plaintiff's enforceable legal
> rights.  Thus, where there is an existing, enforceable contract and a defendant's
> deliberate interference results in a breach of that contract, a plaintiff may recover
> damages for tortious interference with contractual relations even if the defendant was
> engaged in lawful behavior.  Where there has been no breach of an existing contract,
> but only interference with prospective contract rights, however, plaintiff must show
> more culpable conduct on the part of the defendant.

Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362 (N.Y. 2004) (quoting NBT

Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc., 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996)) (citation

omitted).  The Restatement (Second) of Torts Sec. 766B, cited in Carvel Corp. v. Noonan, 350 F.3d

6, 18 (2d Cir. 2003) (emphasis added in Carvel), states that as to interference with existing contracts,

liability will attach to one who "'intentionally and improperly interferes with the performance of a

contract . . . between another and a third person by inducing or otherwise causing the third person

not to perform the contract.'"  This view was adopted by New York in Guard-Life Corp. v. S. Parker

Hardware Mfg. Corp., 50 N.Y.2d 183, 197, 428 N.Y.S.2d 628, 636 (N.Y. 1980).  According to the Restatement (Second) of Torts Sec. 776B, factors to consider as to whether such interference is improper include "the nature of the defendant's conduct, the defendant's motive, the interests of both parties, the social interests in competition and the sanctity of contract, the degree to which the defendant's conduct caused the interference and the relationship between the parties."  Id.   In Guard-Life, 50 N.Y.2d at 194, 428 N.Y.S.2d at 634 (citations omitted), the Court gave examples of wrongful conduct including fraudulent representations.

According to New York's Carvel court, "Under NBT, where a suit is based on interference with a nonbinding relationship, the plaintiff must show that defendant's conduct was not 'lawful' but 'more culpable.' The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort." Carvel, 3 N.Y. at 190, 785 N.Y.S.2d at 362.  "An exception has been recognized where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" Id. (quoting NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc., 215 A.D.2d 990, 990, 628 N.Y.S.2d 408 (3d Dep't 1995), aff'd, 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996)).  In Carvel, the New York Court of Appeals specifically declined to decide if additional exceptions existed to this general rule.  See Carvel, 3 N.Y. at 191, 785 N.Y.S.2d at 363.  In New York, these standards apply both to interference with prospective contractual relations, and to interference with business relations.  See id. at 190, 362; Scutti Enters., LLC v. Park Pl. Entert. Corp., 322 F.3d 211, 216 (2d Cir. 2002).

**B.    Plaintiff Need Not Plead A Breach Of Contract To Plead A Claim For Tortious Interference With Contract**

In light of these standards, it is clear that Plaintiff properly pleaded a claim for tortious interference with contractual relations.  There were valid contracts between Plaintiff and the Auction

Houses, a fact that Defendants do not challenge. It is clear from Plaintiff's Complaint and

Defendants' own communications with the Auction Houses that their means were improper, as they

constituted defamation. See Glen Banks, N.Y. Practice Series, N.Y. Contract L. Sec. 21:44 (2007);

Calvin Klein Trademark Trust v. Wachner, 129 F. Supp. 2d 248, 253-54 (S.D.N.Y. 2001)

("defamation surely counts as an improper means by which to interfere in the business relations of

another"). Consideration of the Restatement factors regarding improper conduct confirms this

conclusion. The societal interest in free competition was not served by any of Defendants' actions;

thus, the Restatement factors favor Plaintiff.[4]  See Guard-Life, 50 N.Y.2d at 194, 428 N.Y.S.2d at

634 (there is no liability for breach of a voidable contract "absent employment of wrongful means,

unlawful restraint of trade, or lack of competitive motive" (emphasis added)). Defendants' conduct

was the sole reason the Auction Houses breached their contracts with Plaintiff, as seen in their

communications with him and their forwarding of Defendants' communications. Com. ¶¶ 47-57.

There was no relationship between Plaintiff and Defendants, or the Auction Houses and Defendants,

relating to the Souza Paintings, only a relationship between Plaintiff and the Auction Houses. In

contrast to the legitimate economic pressure in Carvel, which included the defendants' practice of

offering exactly the same products sold by plaintiffs in different venues at good prices, Defendants'

effort to exercise power in the Souza market was not legitimate because they did not offer

---

[4]Carvel was a case between competitors, although in dicta, the New York Court of
Appeals stated that the analysis for claims of tortious interference with economic relations would
not differ if the parties were not competitors. The concurrence argued that the Court should
adopt the analysis of the Restatement (Second) of Torts Sec. 766B, which distinguishes between
the actions of competitors and of non-competitors, and with regard to the latter, gives economic
self-interest less weight because concerns of free market competition are less central in non-
competitor interactions. See Carvel, 3 N.Y. at 195, 785 N.Y.S.2d at 366 (Graffeo, J., concurring
in result). Plaintiff argues that if presented with the present case, New York would follow Judge
Graffeo's analysis to make a distinction between competitors and non-competitors because the
same free market policy concerns addressed by the Carvel majority are not present here.

comparable products or services of any worth. See Carvel, 3 N.Y. at 191, 785 N.Y.S.2d at 363 ("Where the parties are not competitors, there may be a stronger case that the defendant's interference with the plaintiff's relationships was motivated by spite."). Thus, Defendants are not properly considered honest competitors of Plaintiff because they were not offering paintings similar to the Souza Paintings in the same sales. With their interference with Auction House contracts, Defendants interfered both with sales to customers, and prevented the marketplace from functioning by depriving Plaintiff of access to the most prestigious sales venues and depriving the Auction Houses (and their customers, the buying public) to the Souza Paintings.

In this same vein, Defendants argue that Plaintiff's allegation that they acted in their own self-interest defeats these claims. D. Mem. at 20. According to the New York Court of Appeals, the self-interest protection is only extended "as long as the defendant is motivated by legitimate economic self-interest." Id. (emphasis added). The self-interest alleged by Plaintiff in the Complaint was not legitimate self-interest: at best for Defendants, their interest was to distort the industry's standards for art authentication to require sellers to use their services, to bar individuals who refused such services from the marketplace, and to control which Souzas came to market even when they could not compete with similar products; at worst, it was motivated by a sheer exercise of power.[5] See Scutti Enters., 322 F.3d at 216-17 (improper economic pressure was applied to extinguish the plaintiff's business when the defendants attempted to include in a contract with a third party, a provision that the third party would not do business with the plaintiff). Discovery will be

---

[5]Defendants argue that the allegation that they acted in their self-interest, albeit an illegitimate self-interest, is an inconsistent fact with other aspects of the Complaint. D. Mem. at 20. "Self-interest" is both a factual and legal question that is not inconsistent with the other facts pleaded in the Complaint, and does not defeat the interference claims. As explained above, only legitimate economic self-interest when not advanced by wrongful or fraudulent means can serve as a defense, a standard Defendants do not meet.

relevant to motivation, and Plaintiff is entitled to the opportunity to engage in discovery. In any event, where the means used were wrongful and improper, the self-interest defense is unavailable.

Moreover, even if Defendants are correct about the particulars of the Auction Houses contracts insofar as the Auction Houses' having discretion over a sale, that does not mean that the Auction Houses did not breach those contracts but rather that they are protected from liability by another provision in the contracts. It would be a distortion of the contracts and the economics of contract law to extend to Defendants the benefit of a clause bargained for by the Auction Houses for their own protection from liability when Defendants' interference did not benefit the Auction Houses in any way. Defendants' related argument that causation is lacking because the breach was triggered solely by the Auction Houses acting under their contracts and not by Defendants is contradicted by the Complaint, which alleges that the Auction Houses acted because of Defendants' communications. See Calvin Klein Trademark Trust, 129 F. Supp. 2d at 253.

## C.    Plaintiff Adequately Pleaded Claims For Tortious Interference With Non-contractual Relations

If breach is required but not found, Plaintiff has still set forth a claim for the related claim of tortious interference with actual and prospective business relations, claims for which breach is not an element. See Glen Banks, N.Y. Practice Series, N.Y. Contract L. Sec. 21:44 (2007). With regard to these torts, Defendants claim that the requirement that they "acted solely out of malice or used dishonest, unfair, or improper means," Carvel, 350 F.3d at 17, has not been met. D. Mem. at 19-20. As explained above, Defendants' defaming of Plaintiff and the Souza Paintings satisfies this requirement. Contrary to Defendants' suggestion that their self-interest defeats the allegation of malice, this is not correct when the self-interest is an impermissible one such as engaging in unfair competition in order to distort a market, as discussed above.

-22-

**IV.    Plaintiff Adequately Pleaded A Claim For Prima Facie Tort**

Plaintiff pleaded prima facie tort as an alternative to the other torts set forth in the Complaint, which is entirely permissible.  See Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., 38 N.Y.2d 397, 405, 380 N.Y.S.2d 635, 644 (N.Y. 1975).  A plaintiff adequately pleads prima facie tort when he alleges the intentional infliction of harm without justification resulting in special damages by a series of acts that might otherwise be lawful.  See DeMicco Bros., Inc. v. Con. Edison. Co., 8 A.D.3d 99, 100, 779 N.Y.S.2d 10, 11-12 (1st Dep't 2004); Kevin Spence & Sons, Inc. v. Boar's Head Provisions Co., 5 A.D.3d 352, 354, 774 N.Y.S.2d 56, 58-59 (2d Dep't 2004).  In particular, Plaintiff carries his burden by alleging that Defendants' actions "stemmed from an intentional decision for no legitimate reason." DeMicco Bros., 8 A.D.3d at 100, 779 N.Y.S.2d at 11-12.  As described above, the actions taken by Defendants were motivated by wrongful interests and lacked a proper economic or social justification.  As Plaintiff has pleaded these facts adequately, this claim may not be dismissed.

**V.    Plaintiff Adequately Pleaded A Claim Under GBL Sec. 349**

Defendants argue that Plaintiff's claim under General Business Law Sec. 349 should be dismissed because Defendants' conduct was not directed at consumers, but at the Auction Houses, and that consumers were unaware of Defendants' defamatory statements.  D. Mem. at 21-22.  Firstly, and dispositively, Plaintiff is entitled to discovery to determine who besides the Auction Houses

learned of the defamatory statements.  Thus, Plaintiff's motion is premature.  Secondly, Defendants'

actions were more than "private contract disputes unique to the parties" which would not satisfy the

statute but were rather efforts to distort the regular function of the operations of three major auction

houses with regard to Souzas, with the result of depriving consumers of the opportunity to buy the

Souza Paintings.  See NYU v. Continental Ins. Co., 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290

(N.Y. 1995).  The case cited by Defendants does not hold that consumers need to know of a

defendants' conduct in order to be harmed by it.  See Med. Soc. of State of N.Y. v. Oxford Health

Plans, Inc., 15 A.D.3d 206, 207, 790 N.Y.S.2d 79, 80 (1st Dep't 2005).  Finally, contrary to

Defendants' argument, D. Mem. at 22, Plaintiff's claim is based on the defamatory communications

made by Defendants, not those cited by Defendants.

## VI.    Mr. Greener May Be Held Liable For His Actions & Inactions Regarding Plaintiff

Mr. Greener misdescribes his role both as a co-administrator and as a defendant in claiming

that he may not be held liable for wrongful conduct taken against Plaintiff by Shelley Souza,

allegedly on behalf of the Estate.  As a co-administrator, he embodies the Estate as a legal entity and

is co-responsible with Shelley Souza for its actions.  He is not an agent but a principal.  Mr. Greener

is thus an appropriate party because under New York law, an action against an estate may be brought

against its legal representative.  See N.Y. E.P.T.L. Secs. 11-3.1, 11-3.2; Zimmerman v. Pokart, 242

A.D.2d 202, 203, 662 N.Y.S.2d 5, 7 (1st Dep't 1997).  The Complaint is replete with allegations

about actions taken by the Estate, which are more than adequate to bring Mr. Greener into this suit.

As to his personal liability, many of these same actions were taken on his behalf as the Estate's

representative but with malice, such that they are also attributable to him personally.  At a minimum,

Mr. Greener ratified the actions of his co-administrator when with knowledge of her actions and then

of the Auction Houses' actions, he failed to act and to protect the Estate from liability.  Moreover,

the Complaint contains specific allegations relating to the co-administrators' actions and failure to

act when they had knowledge of the wrongdoing.   See, e.g., Com. ¶¶ 44-45 (Defendants failed to

act on information provided by Plaintiff); 65 (Defendants' statements led to Auction Houses'

actions); 66-67 (Plaintiff demanded that Defendants withdraw their defamatory statements but they

refused to do so).  To the extent that Mr. Greener did not do anything, D. Mem. at 25, this is not a

defense because he had an obligation to act to prevent harm to Plaintiff by the Estate.[6]

**Conclusion**

For the foregoing reasons, Plaintiff therefore requests that Defendants' motion to dismiss be

denied in its entirety.

Dated: New York, New York
        August 31, 2007

                                          Respectfully submitted,
                                          BELDOCK LEVINE & HOFFMAN LLP


                                  By:     ____/s/ Scanlon_____
                                          Vera M. Scanlon (VS1522)
                                          99 Park Avenue, Suite 1600
                                          New York, New York 10016
                                          (212) 490-0400
                                          *Attorneys for the Plaintiff*

*By ECF & United States Mail*

To:     John Cahill, Esq.
        Lynn & Cahill LLP
        500 Fifth Avenue, 14th Floor
        New York, New York 11010
        (212) 719-4400

_____

[6]Given these facts and New York's Estates law, the suggestion that the allegations
against Mr. Greener merit sanctions under Rule 11 is groundless.  D. Mem. at 25.  In any event,
Defendants have failed to move properly for such relief.