UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AZHAR A. JAFFRI,

               *Plaintiff*,

- against -

SHELLEY SOUZA, individually and as Co-administrator of the Estate of Francis Newton Souza; JEFFREY S. GREENER, individually and as Co-administrator of the Estate of Francis Newton Souza; FRANCESCA SOUZA, individually; and THE ESTATE OF FRANCIS NEWTON SOUZA,

               *Defendants*.

No. 07 Civ. 4086 (SAS)

ECF CASE

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF APPEARING DEFENDANTS' MOTION TO DISMISS

---

LYNN & CAHILL LLP
500 Fifth Avenue, 14th Floor
New York, NY 10110
(212) 719-4400

*Attorneys for Defendants Shelley Souza,
Jeffrey S. Greener and the Estate of Francis Newton Souza*

## TABLE OF CONTENTS

I. DEFAMATION AND PRODUCT DISPARAGMENT .................................................. 1

    A. Plaintiff Has Confused The Nature Of The Torts Of Defamation And Product Disparagement And Has Failed to Allege the Existence Of Any Defamatory Statements .................................................................................................................. 1

    B. Because Jaffri Was Not Personally Defamed, He Must Plead Special Damages To Sustain His Product Disparagement Claim, And He Has Not Done So. ....................... 3

    C. The Statements Alleged In The Complaint Were Privileged And Made Without Malice .................................................................................................................. 6

II. TORTIOUS INTERFERENCE ................................................................................... 7

    A. Jaffri Must Not Be Rewarded For His Concealment Of His Contracts With The Auction Houses ................................................................................................... 7

    B. There Was No Tortious Interference With Prospective Contractual Relationships Or Business Relationships ........................................................................................ 8

III. CLAIMS AGAINST JEFFREY GREENER PERSONALLY ...................................... 10

IV. PLAINTIFF'S REMAINING CLAIMS ..................................................................... 10

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. Gelfand,*
  160 F. Supp. 2d 408 (E.D.N.Y. 2001) ...............................................................................3

*AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.,*
  2003 WL 21203503
  3 (S.D.N.Y. May 22, 2003)................................................................................................7

*Angio-Medical Corp. v. Eli Lilly & Co.,*
  720 F. Supp. 269 (S.D.N.Y. 1989) ....................................................................................6

*Boule v. Hutton,*
  138 F. Supp. 2d 491 (S.D.N.Y. 2001)
  rev'd, 328 F.3d 84 (2d Cir. 2003) .....................................................................................2

*Brignoli v. Balch Hardy and Scheinman, Inc.,*
  645 F. Supp. 1201 (S.D.N.Y. 1986) ..................................................................................5

*Carvel Corp. v. Noonan,*
  3 N.Y.3d 182
  785 N.Y.S.2d 359 (2004) ..................................................................................................9

*Charles Atlas, Ltd. v. Time-Life Books, Inc.,*
  570 F. Supp. 150 (S.D.N.Y. 1983) ....................................................................................4

*Church of Scientology Int'l v. Behar,*
  238 F.3d 168 (2d Cir. 2001) ..............................................................................................3

*Computech Int'l, Inc. v. Compaq Computer Corp.,*
  2002 WL 31398933
  6 (S.D.N.Y. Oct. 24, 2002) ...............................................................................................5

*Continental Air Ticketing Agency, Inc. v. Empire Int'l Travel, Inc.,* 5
  1 A.D.2d 104
  380 N.Y.S.2d 369 (3d Dep't 1976) ...................................................................................5

*County Vanlines, Inc. v. Experian Information Solutions, Inc.,*
  317 F. Supp 2d 383 (S.D.N.Y. 2004) ................................................................................7

*De Marco-Stone Funeral Home Inc. v. WRGB Broadcasting Inc.,*
  03 A.D.2d 78
  610 N.Y.S.2d 666 (4th Dep't 1994) ...................................................................................5

*Drug Research Corp. v. Curtis Pub. Co.*,
7 N.Y.2d 435
199 N.Y.S.2d 33 (1960) ...........................................................................................................4

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002) .....................................................................................................5

*Formulated Solutions, LLC v. CKD, Inc.*,
2005 WL 2413506
6 (E.D.N.Y. Sept 29, 2005) ....................................................................................................5

*Golub v. Enquirer/Star Group*,
89 N.Y.2d 1074
659 N.Y.S.2d 836 (1997) .......................................................................................................2

*Greenwood v. Koven*,
880 F. Supp. 186 (S.D.N.Y. 1995) .........................................................................................6

*Gucci Am. Inc. v. Duty Free Apparel, Inc.*,
277 F. Supp. 2d 269 (S.D.N.Y. 2003) ....................................................................................4

*Kelly v. Schmidberger*,
806 F.2d 44 (2d Cir. 1986) .....................................................................................................3

*Roe v. City of New York*,
2003 WL 22715832
3 (S.D.N.Y. Nov. 19, 2003) ...................................................................................................6

*Tin Pan Apple, Inc. v. Miller Brewing Co.*,
737 F. Supp. 826 (S.D.N.Y. 1990) .........................................................................................6

*U-Neek, Inc. v. Wal-Mart Stores, Inc.*,
147 F.Supp.2d 158 (S.D.N.Y. 2001) ......................................................................................9

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
309 F. Supp. 2d 401 (E.D.N.Y. 2004) ...................................................................................6

The Appearing Defendants[1] respectfully submit this reply memorandum of law in further support of their motion, pursuant to Fed. R. Civ. P. 12(b), for dismissal of the Complaint.[2]

The critical issue raised by this case is: Can an artist (or his estate) be sued for doing nothing more than raising issues about the authenticity of works of art attributed to him? Although we are still far behind much of the world in recognizing "moral rights", surely there is no legally valid cause of action arising out of an artist's estate's simple statement to an auction house that a work to be sold may not be the genuine work of the artist. The expression of such an opinion, in essence, is what is before the Court now. Both the Appearing Defendants and the rights of artists generally suffer if claims as flimsy as those found in the Complaint are permitted to proceed.

I.  **DEFAMATION AND PRODUCT DISPARAGEMENT**

    A.  **Plaintiff Has Confused The Nature Of The Torts Of Defamation And Product Disparagement And Has Failed To Allege The Existence of Any Defamatory Statements**

There is no question that Shelley Souza stated her belief to the auction houses that the Paintings were not genuine Souzas. The question whether those statements can support a claim

---

[1] All capitalized terms are as defined in the Memorandum of Law in Support of Appearing Defendants' Motion to Dismiss dated July 12, 2007 (the "Moving Mem."). Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss dated August 31, 2007 is referred to as "Opp. Br."

[2] Jaffri complains that the exhibits included with the Appearing Defendants motion papers are not subject to consideration on a Rule 12(b) motion. (Opp. Br. at 2). But Jaffri does not bother to identify the reasons each exhibit should be rejected. Surely, for example, Jaffri has no valid objection to Exhibit D, which is a reproduction of one of the Paintings specifically identified in the complaint. That is just one example. In the absence of anything more than a conclusory effort and blanket objection to the exhibits, the Appearing Defendants respectfully submit that all of the exhibits should be considered with respect to the motion.

for product disparagement is addressed below. But, notwithstanding the assertion that "Defendants' Written & Oral Statements To The Auction Houses Defamed Plaintiff And The Souza Paintings" (Opp. Br. at 3), the concept that the Paintings have a cause of action for defamation is alien to the law. Indeed, as Jaffri notes, a statement may be defamatory "if it tends to expose *a person* to hatred, contempt, or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community." *Golub v. Enquirer/Star Group*, 89 N.Y.2d 1074, 1076, 659 N.Y.S.2d 836, 837 (1997) (emphasis added). At the risk of belaboring the obvious, paintings are inanimate objects and have no standings as persons under the law.

Accordingly, a statement that the Paintings are forgeries, even if it insults the Paintings *ipso facto*, cannot by itself sustain a defamation claim by Jaffri. It can be conceded, for the sake of argument, that a statement accusing Jaffri of *knowingly* trading in forgeries would support a defamation claim by him, but, as detailed in the Appearing Defendants' moving brief, no such statements are alleged. Jaffri states that the alleged statements at issue are defamatory, "as a reading of their statements makes clear, *most importantly because the communications effectively state that the Souza Paintings are forgeries.*" (Opp. Br. at 4 (emphasis added)). For example, in the letter to Sotheby's about Lot 104, Defendants claim that the 'work attributed to Souza' 'was not made by him.'" There is no real allegation that the Appearing Defendants accused Jaffri of knowingly trading in forgeries.

In contrast, knowingly trading in forgeries (*i.e.*, by continuing to trade in artworks after having been informed that they were forgeries) was precisely what was alleged in *Boule v. Hutton*, 138 F. Supp. 2d 491, 504 (S.D.N.Y. 2001), *rev'd*, 328 F.3d 84 (2d Cir. 2003), upon which Jaffri relies in this context. (Opp. Br. at 5).

Even under the liberalized pleading requirements of the Federal Rules of Civil Procedure, the questions whether the statements at issue were "of and concerning" the plaintiff and are likely to be understood as defamatory by the ordinary person "should ordinarily be resolved at the pleading stage." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). The Appearing Defendants respectfully submit that the statements alleged in the complaint at worst accused Jaffri of making a good faith mistake about the origin of the Paintings. There is no case holding that that type of statement can support a defamation claim, and Jaffri's brief fails to cite any.

Jaffri suggests that even if the statements pleaded in the complaint are inadequate to support his defamation claims, the vague reference to the existence of "the same or similar defamatory statements to employees and/or agents . . ." (Opp. Br. at 6) is sufficient to withstand a motion to dismiss and that he is entitled to discovery to uncover more allegedly defamatory statements. Jaffri is incorrect. *Kelly v. Schmidberger*, 806 F.2d 44 (2d Cir. 1986), which Jaffri cites, requires that the complaint identify "when the statements were made, and to which 'other employees' the statements were communicated." *Ahmed v. Gelfand*, 160 F. Supp. 2d 408, 416 (E.D.N.Y. 2001). The complaint in this action fails to meet that standard, and an inadequately pleaded complaint may not be sustained through a request to engage in a discovery "fishing expedition" in the hope that additional information will bolster it. *Id.*

**B.     Because Jaffri Was Not Personally Defamed, He Must Plead Special Damages To Sustain His Product Disparagement Claim, And He Has Not Done So**

Jaffri's opposition brief serves to clarify his position on the intersection between special damages and a claim of product disparagement. As detailed in the Appearing Defendants' initial brief, the complaint seemed to suggest that a plaintiff could dispense with the

requirement for pleading special damages simply by relabeling a product disparagement claim as one for "unfair competition by product disparagement." Now, Jaffri asserts that the reason he is freed from the obligation to plead and prove special damages is because of his assertions that the same alleged statements supporting the product disparagement claim were also defamatory *per se* as to him in his professional and business capacity. (Opp. Br at 11).

It is correct that a valid claim of defamation *per* se does not require a plaintiff to plead and prove special damages. But the question whether or not special damages are not required when the product disparagement also "directly maligns the character of the owner of the goods," *Gucci Am. Inc. v. Duty Free Apparel, Inc.*, 277 F. Supp. 2d 269, 277 (S.D.N.Y. 2003), is moot because, for the reasons already discussed, the statements regarding the origin of the Paintings did not defame Jaffri. Jaffri cites no cases that dispense with the requirement to plead and prove special damages with respect to a claim where, as here, the alleged disparagement was not accompanied by a defamatory statement directed at the owner of the goods.

Jaffri also asserts that he satisfied the pleading requirements for special damages by specifying the alleged value of the Paintings ($726,000³) and making general allegations about the loss of unidentified customers, and is not obligated to identify the customers lost as a result of Defendants' alleged misconduct. (Opp. Br. at 8-9). To support this assertion, he relies principally on *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150 (S.D.N.Y. 1983).

With all due respect, *Charles Atlas* appears to be the only case to construe the seminal opinion from *Drug Research Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 199 N.Y.S.2d 33 (1960) as excusing the need to name the customers that are lost as a result of the defendant's conduct

---

³ The alleged value is based on the auction houses' "estimates," which are expressly stated not to be a "prediction of actual selling prices."

where, as here, allegedly lost sales are the basis of the special damages claim (Complaint ¶ 121). In contrast, the cases requiring the identification of actual customers (in addition to those cited in the Moving brief) are numerous. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002) (quoting *Drug Research Corp.*) ("Where loss of customers constitutes the alleged special damages, the individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized."); *Formulated Solutions, LLC v. CKD, Inc.*, 2005 WL 2413506, *6 (E.D.N.Y. Sept 29, 2005) (citations omitted) ("'If the special damage was a loss of customers ... the persons who ceased to be customers, or who refused to purchase, must be named.... [If] they are not named, no cause of action is stated.'"); *Computech Int'l, Inc. v. Compaq Computer Corp.*, 2002 WL 31398933, *6 (S.D.N.Y. Oct. 24, 2002) (citations omitted) (emphasis added) ("*The requirement of pleading and ultimately proving special damages 'goes to the cause of an action itself and not merely to the recovery.' ... Courts considering product disparagement claims have therefore applied this requirement strictly, granting motions to dismiss* or for summary judgment for failure to allege special damages with the requisite specificity." "[I]f the special damage was a loss of customers ... the persons who ceased to be customers, or who refused to purchase, must be named ... [I]f they are not named, no cause of action is stated."). *See also Brignoli v. Balch Hardy and Scheinman, Inc.*, 645 F. Supp. 1201, 1209 (S.D.N.Y. 1986); *De Marco-Stone Funeral Home Inc. v. WRGB Broadcasting Inc.*, 203 A.D.2d 780, 781 610 N.Y.S.2d 666, 668 (4th Dep't 1994); *Continental Air Ticketing Agency, Inc. v. Empire Int'l Travel, Inc.*, 51 A.D.2d 104, 108, 380 N.Y.S.2d 369, 372 (3d Dep't 1976) (Cardamone, J.).

Contrary to Jaffri's assertion in connection with his effort to distinguish *Kirby v. Wildenstein*, there is no need to wait until after discovery to hold him responsible for his inability

to identify lost customers. *Computech, supra*, was decided on a motion to dismiss, as was *Verizon Directories Corp. v. Yellow Book USA, Inc.* 309 F. Supp. 2d 401, 408 (E.D.N.Y. 2004), and *Tin Pan Apple, Inc. v. Miller Brewing Co.*, 737 F. Supp. 826, 839 (S.D.N.Y. 1990). Given that the requirement to identify customers is part of the cause of action itself rather than simply a fact that must be proved as part of the recovery, *Computech*, 2002 WL 31398933 at *6, it follows that dismissal at the pleading stage is amply warranted.

Finally, Jaffri has argued that even if he cannot satisfy the pleading requirements for special damages due to lost sales of the Paintings, he has alleged special damages in the form of attorneys' fees and other ancillary costs. Such ancillary costs, however cannot constitute special damages in a product disparagement claim in the absence of adequately pled lost sales. *Angio-Medical Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989). Accordingly, Jaffri's claim of product disparagement is entirely defective.

    C.    <u>The Statements Alleged In The Complaint Were Privileged And Made Without Malice</u>

The Estate of Francis Newton Souza stands in the shoes of Souza. *See, e.g., Roe v. City of New York*, 2003 WL 22715832, *3 (S.D.N.Y. Nov. 19, 2003). It is frankly ludicrous to suggest, as Jaffri does, that Souza had no protectable interest in speaking out in good faith against forgeries of his works. His Estate thus has the same interest. It is true that American law does not afford the same protections as the "droit moral" afforded under the law of France and other countries, pursuant to which, "after the death of an artist, an heir or designee by will is given authority to assert the artist's 'moral rights', including the right to authenticate which works are done by the artist." *Greenwood v. Koven*, 880 F. Supp. 186, 189 (S.D.N.Y. 1995). But it is a far cry to suggest, as Jaffri does, that an artist and his heirs lack a moral right even to voice their opinion about the *bona fides* of works put out under the artist's name.

With respect to the malice necessary to overcome a qualified privilege, the series of e-mail messages referenced in the complaint demonstrate that Shelley Souza did not even know who Jaffri was until after the allegedly defamatory statements were made. (Cahill Aff. Ex. I). Moreover, they fail to provide any basis whatsoever that she was motivated by anything other than a good faith concern that the Paintings were not genuine Souzas. Likewise, the complaint recites the word "malice" several times, but only in the most conclusory fashion. "A plaintiff does not make the requisite showing of malice simply by conclusorily labeling the defamation malicious." *County Vanlines, Inc. v. Experian Information Solutions, Inc.*, 317 F. Supp 2d 383, 390 (S.D.N.Y. 2004).

## II.    TORTIOUS INTERFERENCE

### A. Jaffri Must Not Be Rewarded For His Concealment Of His Contracts With The Auction Houses

In an action for tortious interference with a written contract, the contract at issue is integral to the complaint, and therefore is incorporated by reference therein. *Discover Group, Inc. v. Lexmark Int'l, Inc.*, 333 F.Supp.2d 78, 83 (E.D.N.Y. 1984); *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 2003 WL 21203503, *3 (S.D.N.Y. May 22, 2003). Because the Appearing Defendants are not parties to the executed contracts between Jaffri and the auction houses, they do not currently possess copies of them. They did, however, provide templates with the terms that likely are in those contracts (Cahill Aff. Exs. Q & R), coupled with a request that Jaffri provide the actual contracts if the material terms differ. Jaffri refused to do so, and now asserts that the Court should not decide the issue because it does not have the contracts before it. This tactic is akin to the proverbial boy who murdered his parents begging for mercy because he is an orphan. The Appearing Defendants respectfully submit that, because Jaffri deliberately refused

to provide copies of documents incorporated by reference in his own complaint, the terms of the template contracts as detailed at page 18 of their moving brief should be deemed to govern.

Relying on two cases from the 19th Century (Opp. Br. at 17-18), Jaffri appears to make the curious argument that a claim for tortious interference with contract can exist in the absence of a breach of the underlying contract. That argument is profoundly incorrect:

> There can be no recovery unless there was a valid and enforceable contract, *Durante Bros. Constr. Corp. v. College Point Sports Assoc., Inc.*, 207 A.D.2d 379, 615 N.Y.S.2d 455, 457 (App.Div.1994), **and plaintiffs must prove that the underlying contract has been breached**. *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir.1990) (Kearse, J.); *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492, 495 (N.Y.1996) (Kaye, C.J.); *Jack L. Inselman & Co., Inc. v. FNB Fin. Co.*, 41 N.Y.2d 1078, 396 N.Y.S.2d 347, 364 N.E.2d 1119, 1120 (N.Y.1977) ("***In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party.***").

*AIM Int'l Trading*, 2003 WL 21203503 at *4 (emphasis added). For the reasons detailed in the moving brief, there was simply no breach by the auction houses of their contracts with Jaffri.

Jaffri also suggests that if the auction house contracts were terminable at-will, there is no need to prove a breach of contract. (Opp. Br. at 19). That suggestion is intriguing; the Appearing Defendants did not contend that the contracts were terminable at will, but have no objection to that characterization. For purposes of legal analysis, allegations of tortious interference with at-will contracts are identical to allegations of tortious interference with non-contractual economic relations. *AIM Int'l Trading*, 2003 WL 21203503 at *5 n.12.

**B. There Was No Tortious Interference With Prospective Contractual Relationships Or Business Relationships**

There is of course no requirement that a plaintiff prove a breach of contract to sustain a claim of tortious interference with prospective contractual relationships or business relationships

(which Jaffri now appears to concede are the same thing). The plaintiff must, however, prove either that "the defendant's conduct amount[s] to a crime or an independent tort" or was undertaken "'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362 (2004) (citation omitted).

Clearly, defamation or product disparagement would satisfy the "independent tort" requirement had one or both of those claims been adequately pleaded. But, for the reasons set forth above and in the Appearing Defendants' moving papers, these torts were not adequately pleaded, and are subject to dismissal.

As a result, Jaffri must demonstrate that the Appearing Defendants acted solely to harm him. The complaint alleges that the Appearing Defendants were motivated at least in part by economic self-interest, and "if a defendant's interference is intended (at least partly) to advance its own interests, the claim will fail" *U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F.Supp.2d 158, 177 (S.D.N.Y. 2001). By definition, any economic self-interest will negate a claim that the sole intent was to harm the plaintiff.

Jaffri attempts to fashion a distinction between "legitimate" economic self-interest and "illegitimate" economic self-interest. (Opp. Br. at 21-22). In reality, this is a distinction found nowhere in the case law. It certainly is not present in *Carvel*, upon which Jaffri principally relies. The focus in that case is not on divining whether a defendant's profit motives are "good" or "bad", but on the means the defendant applied to further its self-interest. Where, as here, there were no threats or pressure applied by the defendants, there is no actionable tort. *Carvel*, 3 N.Y.3d at 192, 785 N.Y.S.2d at 364-65.

### III. CLAIMS AGAINST JEFFREY GREENER PERSONALLY

Jaffri's ceaseless and unfathomable efforts to hold Greener personally liable for acts he was not even accused of committing are malevolent, and speak volumes about the lack of merit of the action as a whole.

Jaffri's offhand and unsupported remark that "[a]s to [Greener's] personal liability, many of these same actions were taken on his behalf as the Estate's representative, but with malice, such that they are also attributable to him personally" is specious. Even assuming Shelley Souza acted with malice (and she certainly did not), what legal principle supports attributing her acts to Greener? There is none, and Jaffri cites none. Likewise, a person may be held responsible for a failure to act only when there is an affirmative duty to act. Greener never owed Jaffri any such duty, and Jaffri does not even bother to try to locate the legal basis for the duties that he claims Greener owes him.

### IV. PLAINTIFF'S REMAINING CLAIMS

Space limitations prevent the Appearing Defendants from replying in detail to Jaffri's arguments concerning his remaining claims: common law unfair competition, violation of GBL 349, and prima facie tort. The Appearing Defendants simply note here that they disagree wholeheartedly with those arguments, and stand on the arguments that they made in their moving papers.

### CONCLUSION

For all of the foregoing reasons and the reasons stated in their moving papers, the Appearing Defendants respectfully request that the Court dismiss the Complaint.

Dated: New York, New York
September 14, 2007

LYNN & CAHILL LLP

By: ____s/John R. Cahill_____
John R. Cahill (JC4229)
500 Fifth Avenue, 14th Floor
New York, NY 10110
(212) 719-4400

*Attorneys for Defendants Shelley Souza, individually and as Co-Administrator of the Estate of Francis Newton Souza, Jeffrey S. Greener, individually and as Co-Administrator of the Estate of Francis Newton Souza, and the Estate of Francis Newton Souza.*